**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| **JANET AVILES, JAMIEKA BROWN,** | ) | |
| **STEPHANIE JACKSON, and KEL SHARPE** | ) | |
| **Individually and on behalf of others similarly** | ) | |
| **situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.: 2:13-cv-00418-AWA-TEM** |
| **v.** | ) | |
| | ) | |
| **BAE Systems Norfolk Ship Repair, Inc., and** | ) | |
| **BAE Systems Ship Repair, Inc.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
STRIKE ALL CLASS ALLEGATIONS**</u>

## I.   <u>INTRODUCTION</u>

On rare occasions the class allegations in a complaint are so clearly inadequate as a matter of law that no discovery is necessary before the Court can properly strike them from a case and clarify its individual contours.  This is such an instance.  In their First Amended Complaint, Plaintiffs set forth five purported class claims against BAE Systems Norfolk Ship Repair, Inc. and BAE Systems Ship Repair, Inc. (collectively "BAE Norfolk Ship Repair " or "Defendants"): disparate treatment in hiring, overtime, and promotion decisions; a sexually hostile work environment; and retaliation for complaining of alleged discriminatory conduct. Even if all of Plaintiffs' allegations are accepted as true, each of these claims fails, as a matter of law, to satisfy the commonality requirement of Rule 23(a).  Defendants therefore respectfully request that this Court strike the class allegations from Plaintiffs' First Amended Complaint.

The Supreme Court's decision in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), redefined the class action landscape.  *Dukes* recognized that any "competently crafted class complaint

literally raises common 'questions'" but that to warrant class-wide proceedings, the questions must be susceptible to common answers.  *Id.* at 2551.  In employment discrimination class actions, *Dukes* held, as a matter of law, there could be no common answers where decisions about promotion and pay were made by local managers, and the "policy" that the plaintiffs attacked about was a practice of affording those local managers discretion in their decision-making:

> [A] "policy] of allowing discretion by local supervisors over employment matters [is] [o]n its face . . . *just the opposite of a uniform employment practice that would provide the commonality needed for a class action*, it is a policy against having uniform employment practices.

131 S. Ct. 2541, 2554 (2011).  In this case, Plaintiffs' central thesis in each of their disparate treatment claims is that low-level managers in the individual craft shops at BAE Norfolk Ship Repair were given excessive discretion to make decisions regarding hiring, promotions, and overtime distribution.  *See* Am. Compl. ¶35, 46, 50.  Thus, the class allegations in Plaintiffs' First Amended Complaint commit them to a legal theory that is, by definition, "the opposite [of the sort of] uniform employment practice that would provide the commonality needed for a class action."  131 S. Ct. at 2554.  No discovery could help Plaintiffs in light of these legal deficiencies.  No case-specific proof can possibly transform something that is, as a matter of law, "the opposite . . . of commonality" into the requisite *proof* of commonality.  *Id.*

The lack of commonality in Plaintiffs' allegations is readily apparent from an examination of their individual claims.  For example, several of the current or former Plaintiffs admit that male "supervisors" sought to facilitate their promotions – a direct contradiction of Plaintiffs' theory that male supervisors uniformly discriminate against women.  In both Complaints, Plaintiff Sharpe states that she received a "strong letter of recommendation", but in

the Amended Complaint she conveniently omits the origin of the recommendation letter—her male supervisor, Walter Davis.  Plaintiff Brown also admits that her supervisor, Mr. Baker, used his discretion to request a raise for her and that she was thereafter promoted to Second Class Handyperson.  Am. Compl. ¶240.  Plaintiffs simply cannot hide the reality that male supervisors do not exercise discretion in a common way and do not uniformly discriminate against female employees on the basis of gender in promotions or other job actions.

Plaintiffs also assert improbable sexually hostile-work environment and retaliation class allegations.  Plaintiffs' theory is that their experiences with sexual harassment are "common" because every female employee at BAE Norfolk Ship Repair is allegedly the victim of similar comments and behavior.  There is, however, no collective or common way to prove this allegation.  To the contrary, there is nothing common about their work environment or work experiences.  The female employees in the putative class, including the Named Plaintiffs, work in numerous different buildings, ships and other structures, with different coworkers and different supervisors.  The type of harassment alleged, by its very nature, would be different in frequency, form, and severity for each individual, and inevitably, the reactions of those individuals would vary greatly as well.  Even if it were true that every single female employee at BAE Norfolk Ship Repair had experienced conduct that might constitute sexual harassment (which it is not), it would be impossible to assess whether that conduct violated Title VII without an individualized examination of each woman's work experience and her subjective reaction to the allegedly offensive behavior.  This is simply beyond the limits of class treatment.

Plaintiffs' class retaliation claims are similarly unsustainable.  The First Amended Complaint sets forth no facts that could possibly warrant class action status.  Instead, Plaintiffs set forth isolated and individualized allegations on behalf of only some of the Named Plaintiffs,

which involve different types of protected activity, different decision-makers, and different allegedly adverse employment actions.  Retaliation claims are "personal in nature" and "do not lend themselves readily to class treatment."   *Selwood v. Va. Mennonite Ret. Cmty.*, No. CIV.A.5:04 CV 00021, 2004 WL 1946379, at *3 (W.D. Va. Aug. 31, 2004) (internal citation omitted).  This is particularly true, where, as here, Plaintiffs have made no serious effort to identify an alleged retaliatory policy or practice that would affect the class as a whole.  Accordingly, these claims must be stricken.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Class Allegations in the Complaint

On July 29, 2013, nine current and former BAE Norfolk Ship Repair employees filed a putative class action under Title VII of the Civil Rights Act of 1964 ("Title VII") (the "Original Complaint").   On December 17, 2013, Plaintiffs filed their First Amended Complaint (the "Amended Complaint").   Plaintiffs claim that they amended the Original Complaint in order to "clarify the nature of the class claims and class definition, amend the list of Named Plaintiffs, and further specify the forms of relief sought in this action."  Am. Compl. ¶2.  The Amended Complaint dropped five of the named Plaintiffs from the Original Complaint (Ann Marie Cuttrell, Kimberly Davis, Alfreda Dupree, Sheila Fields, and Rita Hobbs).   These women are nevertheless still members of the putative class, which is defined as "all women who are or were employed at the BAE Norfolk Ship Repair Norfolk shipyard at any time during the class period."  Am. Compl. ¶100.   The Plaintiffs allege five claims on behalf of all female production and maintenance workers:

(1) that Norfolk Ship Repair maintains a policy or practice of discriminating against women in initial assignments upon hiring, Am. Compl. ¶35;

4

(2) that BAE Norfolk Ship Repair has a policy or practice of promoting women more slowly than men and denying women promotions for which they are qualified, Am. Compl. ¶50;

(3) that BAE Norfolk Ship Repair has a policy or practice of distributing more overtime work to men than women, Am. Compl. ¶46;

(4) that BAE Norfolk Ship Repair maintains a pattern, policy or practice of retaliating against class members for opposing sex discrimination, Am. Compl. ¶85; and

(5) that BAE maintains a hostile work environment.  Am. Compl. ¶285.[1]

Plaintiffs seek injunctive relief under Rule 23(b)(2) and monetary relief under Rule 23(b)(3), or, in the alternative, under Rule 23(c)(4). Am. Compl. ¶¶121, 123, 125.

### B.   The Organizational Structure of the Shipyard

BAE Norfolk Ship Repair operates a shipyard that occupies over 109 acres in Norfolk, Virginia.  Am. Compl. ¶19.  The shipyard is divided into 22 distinct "shops" or departments, physically spread throughout the shipyard, including alongside piers, in dry docks, and on board the vessels of BAE Norfolk Ship Repair's customers.[2]  Am. Compl. ¶25, 22.  Furthermore, the shops are divided by trade, and while employees "may be loaned out from time to time," they generally work in their specialized shop.  *See* Am. Compl. ¶31, 28.  Although Plaintiffs work in only four of the 22 shops, they claim to represent a group of all current and former BAE Norfolk Ship Repair female production and maintenance employees, including those who worked in the eighteen shops where Plaintiffs never worked:   Quality Assurance Department, Dock Department, Storeroom, Transportation Department, Crane Department, Environmental

---

[1] The sexual harassment hostile environment class purportedly encompasses "office workers" as well as production and maintenance employees, despite the fact that none of the Plaintiffs has ever worked as an "office worker" and there are virtually no allegations regarding the work experiences of "office workers" in the Amended Complaint.
[2] The facts set forth in this Motion are drawn exclusively from Plaintiffs' July 29, 2013 Original Complaint and their Amended Complaint.  BAE Norfolk Ship Repair does not admit the factual allegations, and relies on them solely for purposes of this Motion.

Department, Paint Shop, Carpenter Shop, Labor Department, Inside Machine Shop, Outside Machine Shop, Rigger Shop, Facilities Department, Boiler Shop, Welding Shop, Blacksmith Shop, NIE, and Sheet Metal Shop.  *See* Am. Compl. ¶25.

According to Plaintiffs, the management structure at BAE Norfolk Ship Repair has "clearly defined levels of authority."  Am. Compl. ¶ 20.  At the "Upper Management" level are Bill Clifford, whom Plaintiffs identify as BAE Norfolk Ship Repair's President, Russell Tjepkema, whom Plaintiffs identify as BAE Norfolk Ship Repair's Vice President and General Manager, and seven Craft Managers, each of whom oversees approximately three shops.  *See* Am. Compl., Fig. 1.  These are the only individuals identified by Plaintiffs with supervisory authority over more than one shop.  *See id.*  The rest of the supervisors at BAE Norfolk Ship Repair are exclusively affiliated with only one of the 22 shops.  *See id.*  The highest level supervisor in each of the 22 shops is the Craft Shop Supervisor.  *Id.*  Below the Craft Shop Supervisor, each shop has an Assistant Craft Shop Supervisor and Step 1 Supervisors.  *Id.* Below these individuals are the Step 2 and Step 3 Supervisors ("Leadpersons"), who are union employees with "quasi-supervisory" authority.  *See id.*  In their Amended Complaint, Plaintiffs make no allegations about any of the seven Craft Managers.  Furthermore, Plaintiffs make no allegations against any supervisor or "quasi-supervisor" in the eighteen shops where the Named Plaintiffs have not worked nor any specific allegation of wrongdoing in those eighteen shops.

BAE Norfolk Ship Repair maintains a non-Discrimination/Harassment Policy that strictly prohibits discrimination in the workplace and any verbal, visual, or physical conduct that creates an intimidating, offensive, or hostile work environment.  *See* Orig. Compl. Ex. 94.  The policy applies to all employees, subcontractors, vendors, and other visitors.  *Id.*

## III.     ARGUMENT

### A.      Plaintiffs' Class Allegations Should Be Stricken Under Rule 23(D)(1)(D).

Plaintiffs seek to certify a class for injunctive or declaratory relief under Federal Rule 23(b)(2) and for monetary relief under Rule 23(b)(3).  Am. Compl. ¶¶121, 123.  To proceed under either provision of Rule 23(b), however, Plaintiffs must first satisfy each of the four elements of Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  Additionally, to certify a class under Rule 23(b)(3),  Plaintiffs must also show that common questions of law or fact "predominate" over questions affecting individual members.  Fed. R. Civ. P. 23(b)(3).  It is clear on the face of Plaintiffs' Amended Complaint that they have not, *and cannot*, meet the commonality requirement of Rule 23(a)(2).  Plaintiffs' class allegations therefore should be stricken under Rule 23(d)(1)(D).[3]

The Court does not have to wait until Plaintiffs move for class certification in order to grant this relief.  *Ross-Randolph v. Allstate Ins. Co.*, No. 99-3344, 2001 WL 36042162 (D. Md. May 11, 2001); *see also Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06-6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008) (class allegations can be stricken as soon as it is clear that they are "untenable").  To the contrary, the plain language of Rule 23(c)(1)(A) instructs that whether a class can be maintained should be decided at "an early practicable time."  Fed. R. Civ. P. 23(c)(1)(A); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-41 (9th Cir. 2009) ("Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification."  "Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.")

---

[3] If Plaintiffs' class claims are stricken, their individual claims will remain in the suit.

Nor are Plaintiffs entitled to discovery prior to a ruling on class allegations. The Supreme Court has recognized that "[s]ometimes, the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982). Under such circumstances, where the pleadings, on their face, do not satisfy the Rule 23 class elements, it is wholly proper to strike the class allegations. Fed. R. Civ. P. 23(d)(1)(D); *see also Ross-Randolf*, 2001 WL 36042162, at *4 (granting defendant's motion to strike class allegations over plaintiffs' request for additional discovery where the claims "were riddled with individual inquiries" such that "additional discovery [would] not aid the plaintiffs"); *Lumpkin v. E.I. Du Pont De Numours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995) (granting defendant's motion to strike class allegations before it responded to any discovery requests because it was clear Plaintiffs could not satisfy Rule 23). Here, in light of *Dukes,* Plaintiffs' class allegations, *as a matter of law,* do not — and cannot — satisfy the requirements of Rule 23(a) or 23(b). There is no reason to postpone an order striking the class allegations.

Defendants' request also is consistent with the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In both *Twombly* and *Iqbal*, the Court expressed an underlying concern that lenient pleading standards can facilitate costly and abusive discovery practices. In *Twombly*, the Court noted that "when the allegations in a complaint . . . could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Similarly, in *Iqbal*, the Court cautioned that the Rule 8 pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and declined to relax the

pleading standards even over assurances of "minimally intrusive discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 685 (2009). Accordingly, it is incumbent on the Court to assess whether costly class discovery is appropriate at the earliest juncture—based on the allegations set forth in the Amended Complaint when they show the fatal flaws in Plaintiffs' claims.

### B.   Plaintiffs Lack Standing To Allege A Class Claim Of Discrimination In Hiring/Initial Job Placement.

The threshold question in any class action is whether the named plaintiffs have standing to assert the claims they plead in their case. *Drayton v. Western Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *3 (11th Cir. Mar. 2, 2011). The principles of standing require the plaintiff to allege and show that she personally suffered the alleged injury. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) ("even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"). In the class action context, "each claim must be analyzed separately," and a claim "cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Griffin*, 823 F.2d at 1483. Thus, for standing purposes, it is insufficient for unnamed members of the putative class to have suffered the alleged injury. *Zaycer*, 896 F. Supp. 2d at 409.

Plaintiffs allege that BAE Norfolk Ship Repair "has a policy and/or practice of assigning newly hired female employees to lower-level job classifications and ranks than equally or less qualified male employees." Am. Compl. ¶35. They allege that BAE Norfolk Ship Repair permits subjective discretionary decisions concerning initial classification, and then allege, without any facts to support this contention, that "bias against women is the common mode of exercising discretion in those initial assignments." Am. Compl. ¶37. Plaintiffs simply do not

have standing to assert this claim, however, because none of the four Named Plaintiffs asserts that she was discriminated against in initial hiring. Am. Compl. ¶¶194, 222-23, 126. They do not claim that their initial job placements were below their qualifications or that their supervisors discriminated against them in their initial job placement.[4]

Courts have routinely concluded that plaintiffs who have not experienced an alleged harm cannot bring claims on behalf of themselves or others. For example, in *Griffin,* 823 F.2d 1476, an African-American plaintiff alleged that his employer disciplined him and refused to promote him because of his race. He also alleged discrimination based on the employer's use of a written entry-level examination. The Eleventh Circuit determined, however, that he had no standing to challenge the written examination on behalf of a class because he had met the employer's educational and testing requirements and thus suffered no injury from its testing procedures. *Id.* Similarly, in *Tresvant v. Oliver*, No. 12–0406, 2013 WL 598333, at *4 (D. Md. Feb. 15, 2013), the district court concluded that the named plaintiff in a putative Title VII class action asserting claims of age discrimination and retaliation lacked standing to bring claims on behalf of other Union members where he had not personally suffered the alleged injuries. The court held that "[i]t simply is not enough for Plaintiff to stand in the shoes of his fellow Union members and to assert their legal rights. . . . Indeed, in any litigation, including a purported class action, the named plaintiff must allege and prove standing in his own right to bring the suit." *Id.* (internal citations omitted). *See also Harper v. ULTA Salon Cosmetics & Fragrance, Inc.,* No. 05CV1285, 2005 WL 3542482, at *1 (N.D. Ga. Dec. 23, 2005) (no standing for former employees to raise a claim of discrimination toward job applicants on behalf of a class, where, by

---

[4] Moreover, as set forth more fully in Defendants' Partial Motion to Dismiss, even if Plaintiffs had asserted these claims as to themselves in their Amended Complaint, the claims would be time barred and thus insufficient to support standing for class claims. *See* Memorandum of Law in Support of Defendants' Partial Motion to Dismiss at p. 13.

definition, they were not discriminated against in hiring).  Even if members of the putative class purportedly experienced discrimination in initial job placements, a class claim cannot be maintained because not one of the Named Plaintiffs alleges that harm.  *See Griffin*, 823 F.2d at 1483; *Tresvant*, 2013 WL 598333 at *4.  Thus, Plaintiffs' class allegation based on initial assignment discrimination must be stricken from the Amended Complaint.

## C.   Plaintiffs' Class Allegations Fail To Satisfy The Commonality Requirement Of Rule 23(a).

*Wal-Mart v. Dukes* is the leading case on the commonality requirement in Title VII class-action lawsuits.  In *Dukes,* the Court noted that the language of Rule 23(a)(2) is easily misread, since "any competently crafted class complaint literally raises common questions."  131 S. Ct. at 2550.  The Court found that it is not common questions, "even in droves," that are necessary for class certification, but rather, the possibility of common answers to those questions.  In the Title VII context, where an individual's claim turns on the "the reason for a particular employment decision," the potential for common answers as to the *reasons* for the decisions are crucial.  *Id.* at 2552.  "Without some glue holding the *reasons* for all those [employment] decisions together, it will be impossible to say that examination of all class members' claims for relief will produce a common answer to the crucial question:  *why was I disfavored." Id.*

The plaintiffs in *Dukes* alleged that Wal-Mart provided local managers with discretion in making pay and promotion decisions, and that these local managers, in turn, exercised their discretion disproportionately in favor of men.  The Supreme Court rejected—*as a matter of law*—the claim that this theory could satisfy the commonality requirement of Rule 23(a).  As the *Dukes* Court explained:

> [A] "policy] of allowing discretion by local supervisors over employment matters [is] [o]n its face . . . *just the opposite of a uniform employment practice that would*

*provide the commonality needed for a class action*, it is a policy against having uniform employment practices.

It is also a very common and presumptively reasonable way of doing business—one that we have said "should itself raise no inference of discriminatory conduct." . . . . [L]eft to their own devices most managers in any corporation—and surely most managers in a corporation that forbids sex discrimination—would select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all.  Others may choose to reward various attributes that produce disparate impact—such as scores on general aptitude tests or educational achievements . . . . And still other managers may be guilty of intentional discrimination that produces a sex based disparity.  *In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.  A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.*

131 S. Ct. at 2554.  Under the commonality standard of *Dukes*, each of Plaintiffs' class claims in this matter, which mirror the theory rejected in that case, fails as a matter of law.

## 1. <u>Plaintiffs' Disparate Treatment Claims Fail To Satisfy The Commonality Requirement.</u>

Plaintiffs allege that BAE Norfolk Ship Repair engaged in a pattern or practice of disparate treatment on the basis of sex in initial job placement at the time of hiring, overtime assignments, and promotions.  Am. Compl. ¶35; 46; 50.  To succeed on a pattern or practice claim, Plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's "standard operating procedure." *Int'l Bhd of Teamsters v. United States*, 431 U.S. 324, 336 (1977).  In the class action context, long before *Dukes*, the Supreme Court held that "the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified." *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 (1982).

In *Falcon*, the Supreme Court articulated a stringent commonality standard for alleged "pattern or practice" class actions.  *Id.* at 160.  Specifically, a discrimination "pattern or practice"

class can only be certified if the plaintiff actually demonstrates that a specific pattern or policy of discrimination affects all class members in a common way.  *Id.*  The *Falcon* Court observed that:

> "Conceptually there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claims will be typical of the class claims.  For respondent to bridge that gap, he must prove much more than the validity of his own claim."
> Id. at 157-58.

The gap identified in *Falcon* can only be bridged by showing the existence of a class of persons affected in the same way by a company policy, pattern, or practice of discrimination.  *Id.* at 158. *Dukes*, building on *Falcon*'s stringent commonality standard, held that a "policy" of granting discretion to local or low-level managers is "just the opposite of the uniform employment practice" necessary to find commonality in a pattern or practice case.  131 S. Ct. at 2554.

### a.     Plaintiffs' Class Promotion Claim Fails To Satisfy Commonality.

Plaintiffs allege that "all shops operate under a single set of personnel, human resources, and promotion policies."  Am. Compl. ¶26.  Although Plaintiffs attempt to allege a company-wide policy for promotions, on closer scrutiny it is obvious on the face of the Amended Complaint that the "policy" they attack, just as in *Dukes*, is decentralized and discretionary decision-making by low-level managers.  Plaintiffs claim that in order to seek a promotion, they must "approach [their] Craft Shop Supervisor," a manager who supervises only one of the 22 shops in the shipyard.  Am. Compl. ¶57.  For the Craft Shop Supervisor to consider the employee, however, the Plaintiff must first have a promotion recommendation from an even lower-level quasi-supervisor (a union member) in her department. Am. Compl. ¶76.  If, based on that quasi-supervisor's recommendation, the Craft Shop Supervisor decides that the employee

should be promoted, he sends notice to the Craft Manager who must approve the promotion.  *Id.*  The Craft Manager is the only one of these individuals who oversees more than one shop (overseeing three).   Promotion decisions are made on a shop (or departmental) level; two employees working in two separate shops would *never* have their promotion requests decided by the same individuals.   Indeed, "[t]he Collective Bargaining Agreement provides that after 90 working days, a Second Class Laborer shall be raised to First Class, **but does not set criteria for promotions** in the shops practicing a trade."  Am. Compl. ¶61 (emphasis added); "[Supervisor] recommendation may be based purely on subjective factors, since it need not be based upon job related criteria."  Am. Compl. ¶ 76.[5]  Thus, to the extent that Plaintiffs point to a specific policy that purportedly is discriminatory, it is the grant of discretion to lower-level supervisors.

Numerous other courts have concluded that this type of supposed "policy" is insufficient, certainly after *Dukes*, to establish commonality.  In *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012), the court stated:  "Wal-Mart tells us that local discretion cannot support a company-wide class no matter how cleverly lawyers may try to repackage local variability as uniformity."  The *Bolden* court provided examples of this lawyerly craftsmanship that mirror the allegations of Plaintiffs here: "1) Policy/Practice of allowing foremen and superintendents to assign work hours and overtime **without reference to any objective criteria**.  2) Policy/Practice of allowing foremen and supervisors to make promotion decisions **without reference to any objective criteria** . . . ."  *Id.*  The Seventh Circuit rejected this effort to repackage low-level discretion as a common policy and concluded there was no commonality.  *See also Brooks v.*

---

[5] The Amended Complaint's description of a promotion "policy" where managers are not required to use objective criteria is strikingly similar to the language of the failed Complaint in *Dukes*.  *See* Ex. B, *Dukes* Complaint, ¶29 ("[Defendant relies] upon unweighted, arbitrary and subjective criteria utilized by a nearly all male managerial workforce in making assignments, training, pay, performance review and promotional decisions . . . . ]"); *Dukes* Complaint, ¶23 ("Few objective requirements or qualifications for specific store assignments, promotions, or raises exist.").

*Circuit City Stores*, No. 95-3296, 1996 WL 406684, at *4 (D. Md. June 17, 1996), *reversed in part on other grounds*, 148 F.3d 373 (4th Cir. 1998) ("Plaintiffs do not and cannot allege that subjective decision making itself is a practice that discriminates. Rather, they can only allege that it allows a situation to exist in which several different managers are able to discriminate discretionally. The focus of the claim remains the individual employment decisions.") Judge Cacheris reached a similar conclusion in *Valerino v. Holder*, 283 F.R.D. 302, 315 (E.D Va. 2012). In *Valerino*, the plaintiffs challenged a multi-stage promotion process that provided for unfettered managerial discretion at several stages. Relying on *Dukes*, Judge Cacheris concluded that a subjective decision-making process conducted by numerous lower level managers across numerous departments simply failed to satisfy the commonality requirements of Rule 23(a). *Id.* In doing so, he noted that "[w]hatever the merits of Plaintiffs' individual claims of discrimination, Plaintiffs cannot simply aggregate their individual allegations to demonstrate commonality." *Id.* at 314.

The rationale for finding no commonality when personnel decisions are based on the judgment or discretion of low-level managers is simple. "Some managers will take advantage of the opportunity to discriminate while others won't." *Bolden*, 688 F.3d at 897. Thus, "[d]emonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Dukes*, 131 S. Ct. at 2554. Plaintiffs' own Amended Complaint illustrates this very point. Plaintiffs describe supervisors who, contrary to Plaintiffs' theory, opted to use their discretion in non-discriminatory ways. For example, Plaintiff Brown admits that her supervisor, Mr. Baker, used his discretion to request a raise for her and that she was thereafter promoted to Second Class Handyperson. Am. Compl. ¶240. So too, former Named Plaintiff Fields, who was dropped in the Amended Complaint but who remains a member of the

putative class, admits that one of her supervisors, Aaron Brown, wrote an email to her Craft Shop Supervisor describing her various accomplishments and recommending that she receive a promotion. Orig. Compl. ¶256. Plaintiff Sharpe states that she received a "strong letter of recommendation" in both Complaints, but conveniently dropped the origin of the recommendation letter in the Amended Complaint—her supervisor, Walter Davis. Orig. Compl. ¶272. Plaintiffs' allegations of discrimination by some supervisors fail to provide the "glue" for commonality. *See Dukes*, 131 S. Ct. at 2553-54; *see also Bolden*, 688 F.3d at 898 ("a given plaintiff's bad experience with one of the five supervisors we have named does not present any question about the conduct of Walsh's many other superintendents and foremen.")

Critically, Plaintiffs provide no facts to support their allegation that supervisors exercise their discretion in a common way when making promotion decisions. Instead, Plaintiffs merely identify separate, isolated incidents where their respective Craft Shop Supervisors denied them a promotion. For example, Aviles alleges that in 2011 she sought and was denied a promotion to Shipfitter Specialist in the Plate Shop. Am. Compl. ¶182.[6] In order to determine whether she was denied this promotion because of her sex, the Court would have to inquire into whether she was qualified for the position and the reasons for her Craft Shop Supervisor's denial. Stephanie Jackson alleges that in 2011 a supervisor in the Electrical shop denied her a promotion to the position of Apprentice Instructor, and instead promoted another individual who Jackson contends was less qualified.[7] Am. Compl. ¶206, 207. Jameika Brown alleges that one of her supervisors in the Pipe Shop, Eric Mallett, denied her a promotion to Third Class Mechanic because she failed to complete her trainee books or obtain a supervisor recommendation. Am. Compl. ¶246-

---

[6] Aviles was ultimately promoted to Shipfitter Specialist – one of the highest paid union positions at BAE Systems Norfolk Ship Repair - in 2012. Am. Compl. ¶192.
[7] In any event, both Aviles and Jackson's allegations concerning promotion denials in 2011 are time-barred. *See* Partial Motion to Dismiss.

48.   Finally, Kel Sharpe alleges that, because she was loaned out to the Labor Shop, she was unable to develop skills in her trade and therefore was denied promotions. Am. Compl. ¶275. The numerous factual inquiries necessary to resolve these challenges to very different types of promotion decisions, coupled with an utter failure to show a common thread across them, militates against class treatment of the claims.

The low level of the supervisors at issue and the lack of any "common way" in which promotion decisions are allegedly made readily distinguish this case from the Fourth Circuit's decision in *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013).  Although arguably *dicta* (the actual issue in *Scott* was the denial of a motion to amend plaintiffs' complaint),[8] *Scott* affirmed the district court's dismissal of plaintiffs' original complaint for failure to satisfy the commonality requirements of Rule 23(a).   That complaint claimed that "subjectivity and stereotyping" led to discrimination in compensation to female store managers and that the company generically engaged in "centralized control" of compensation.  *Id.* at 116.  The *Scott* plaintiffs' amended complaint, however, identified specific corporate policies about pay ranges and pay for lateral hires, that were established by upper management and which plaintiffs complained resulted in an adverse impact against women.  The *Scott* plaintiffs also alleged that corporate vice presidents and other senior managers made decisions in enforcing these policies that compounded their alleged disparate impact.  *Id.* at 117.  Unlike *Scott*, this case does not involve any disparate impact claims,[9] nor do plaintiffs challenge any formal corporate policies or decisions made by senior managers.  To the contrary, Plaintiffs' complaints in this case focus on the absence of policies and the discretion left to low-level supervisors and managers to make

---

[8] That *Scott's* discussion of *Dukes* is likely dictum is further underscored by the limited nature of the concurrence, which focuses on the narrow nature of the amendment issue.  *See Scott*, 733 F.3d at 119.

[9] Because they do not require proof of intent, disparate impact claims present different issues at class certification than pattern or practice claims.  Neither the charges of discrimination nor the Complaint assert any disparate impact claims in this case.

decisions without adequate standards or criteria.  Indeed, the Amended Complaint is replete with demands that the Court impose on the company a variety of new policies to eliminate the discretion exercised by low-level managers.

To try to plead around this fatal flaw, Plaintiffs identify a number of purported promotion "policies."  Examination of these allegations demonstrates that these so-called polices are nothing more than different ways of describing the discretion that is exercised by low-level managers.  Plaintiffs allege that BAE Norfolk Ship Repair:

- Has a "policy or practice" of requiring class members to meet standards or prove theyhave attained skills that are not required of men.  Am. Compl. ¶52.[10]

- Maintains a "policy or practice" of promoting class members through the job hierarchy more slowly than similarly or less qualified men, and/or denying them promotions for which they are qualified.  Am. Compl. ¶50.

- Has a policy and/or practice of "discouraging and deterring class members" from seeking promotions by "creating additional prerequisites for promotion." Am. Compl. ¶55.[11]

- Has a "policy" of loaning out female employees to the Labor Shop more frequently than men.  Am. Compl. ¶53.[12]

- Has a "policy or practice of giving class members fewer opportunities for training in the skills required to increase their eligibility for promotion."  Am. Compl. ¶55.[13]

As can be seen by these descriptions, there is simply no common way to prove that discretionary decision-making by the shop-level managers uniformly results in discrimination against female employees.  In light of *Dukes*, these "policies" cannot support a finding of commonality.

### b. Plaintiffs' Class Disparate Treatment Claim Regarding BAE Norfolk Ship Repair's Overtime Policy Also Fails to Satisfy Commonality.

---

[10] Only two of the four Named Plaintiffs complain of additional requirements, and only one of the four Named Plaintiffs has alleged facts that might support a disparate treatment claim.

[11] Curiously, none of the Plaintiffs sets forth any allegations that they were deterred or discouraged from seeking a promotion because of these additional prerequisites.

[12] Only one named Plaintiff, Sharpe, alleges she was "loaned out" and she fails to identify any male comparators in support of her claim.  *See* Compl. ¶¶261-282.

[13] None of the Named Plaintiffs even alleges that she was denied training opportunities, and the allegations of the one putative class member (Davis) mentioned in the Amended Complaint are time-barred.

Plaintiffs' class allegation that BAE Norfolk Ship Repair engaged "in a pattern or practice of distributing more overtime work to male than to female employees" suffers from the same fatal flaws as their promotion claims. *See* Am. Compl. ¶46. Under the collective bargaining agreement applicable to production and maintenance employees at BAE Norfolk Ship Repair, management is required to distribute overtime "as equally as possible, consistent with efficient operations." Orig. Compl. ¶108; Exh. 34. The overtime provision specifically allows managers to "consider the skill, ability and attendance records of the employees and the desirability of continuity on a particular job." Am. Compl. ¶47. The policy does not provide any further objective criteria, nor provide guidance as to how much weight managers should give each of the factors in determining overtime distribution. Rather, just as in *Dukes*, low-level managers are given discretion in how to distribute overtime in their respective shops, consistent with these criteria.

Only Janet Aviles alleges that she was discriminated against in overtime assignments. *See* Am. Compl. ¶188. She claims that Billy Wilkins, a union quasi-supervisor, would not grant her overtime requests, but would give male coworkers' overtime. *Id.* When she confronted Mr. Wilkins about his decisions regarding overtime, Mr. Wilkins allegedly responded that he provided overtime hours to individuals who could use power tools. *Id.* Aviles (who has been on medical restrictions for years) does not allege that she was able to utilize power tools during the time frame in question or that use of power tools was unnecessary. Even if Aviles had a valid claim for denial of overtime, however, Plaintiffs have alleged no facts to suggest that her experience is similar to those of members of the putative class who work in other shops with different supervisors, where the employees have different qualifications, schedules, and perhaps, even different levels of interest in receiving overtime. Any commonality is further undermined

by the fact that not one of the other Named Plaintiffs alleges discrimination in the grant of overtime opportunities.

### c. Plaintiffs' Disparate Treatment Claim Regarding Discrimination in Hiring Also Fails To Satisfy Commonality.

Plaintiffs claim that BAE Norfolk Ship Repair engages in a "policy or practice of assigning newly hired female employees to lower-level job classifications and ranks than equally or less qualified male employees."  Am. Compl. ¶ 35.  In explaining this "policy," Plaintiffs again allege facts that show that the initial hiring policy is one of discretionary decision-making by the individual supervisors at each of the shops.  Plaintiffs state that the collective bargaining agreement "does not provide criteria for nor govern the mode of assigning new hires" and thus, BAE Norfolk Ship Repair has a "policy/and or practice of permitting subjective discretionary decisions."  Am. Compl. ¶36, 37.  As discussed above, this is the opposite of a uniform policy under *Dukes* and thus fails to satisfy Rule 23(a)'s commonality requirement.  Moreover, as discussed in detail on pp. 9-11 above, not a single one of the Named Plaintiffs has pled any facts to support this allegation—further demonstrating that this alleged "practice" is not common to the putative class.[14]

### 2. Plaintiffs' Hostile Work Environment Claim Fails To Meet The Commonality Requirement of Rule 23(a)(2).

Plaintiffs' hostile work environment claim also fails to meet the commonality requirement as a matter of law.  Plaintiffs argue that the work environment at BAE Norfolk Ship Repair is replete with sex and gender-based comments and conduct.  When examined in light of the highly individualized allegations they make, these conclusory allegations cannot satisfy the high hurdle for hostile environment group claims.

---

[14] Plaintiffs also failed to assert this alleged discriminatory practice in their charges of discrimination and as such Defendants have moved to dismiss this claim entirely.  *See* Memorandum of Law in Support of Defendants' Partial Motion to Dismiss at p. 12.

In making a *prima facie* case of hostile work environment, Plaintiffs are required to show that the harassment was "sufficiently severe or pervasive [so as] to alter the conditions of employment and create an abusive atmosphere." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Whether harassing behavior objectively alters the conditions of employment is a "highly fact-intensive inquiry" that requires consideration of the frequency, severity, and nature of the conduct, including whether it was physically threatening or humiliating or a mere offensive utterance. *Elkins v. American Showa, Inc.*, 219 F.R.D. 214, 423-424 (S.D. Ohio 2002). Additionally, Plaintiffs will have to show that the victims of the hostile environment subjectively perceived the behavior to be abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Consequently, "hostile environment claims are extremely fact-intensive, and they require a showing of intentional discrimination after a consideration of the totality of the circumstances." *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 675 (N.D. Ga. 2001) (denying hostile-work environment class claim based on lack of commonality and typicality); *see also Oncale v. Sundowner Offshore Servs.*, Inc. 523 U.S. 75, 81-82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.") The highly individualized and fact-intensive inquiry necessary to resolve each of these claims is the precise reason that even prior to *Dukes*, courts have, time and again, refused to certify a class action alleging a hostile work environment.

In *Carson v. Giant Food Inc.*, for example, a putative class of African-American employees of Giant Foods alleged that they were subject to a racially hostile work environment. They set forth allegations of racist graffiti, racial epithets used by co-workers and supervisors, and the display of nooses at Giant's warehouses.  187 F. Supp. 2d 462, 468 (D. Md. 2002), aff'd, 68 F. App'x 393 (4th Cir. 2003).  The allegations, however, essentially involved "an aggregate of individual disparate treatment claims" that varied in severity and pervasiveness.  Based on the individualized nature of the allegations, and the varying degrees of severity, the court denied the motion for class certification.  *Id.* at 471.  *See also Elkins v. American Showa, Inc.*, 219 F.R.D. 414, 424 (S.D. Ohio 2002) (no commonality among a class of female employees in employer's production and assembly plant, where there were "variations in the frequency and the severity of the behavior to which different female workers were subjected.")

Here, the allegations of the Named Plaintiffs and the allegations of putative class members from the Original Complaint vary so greatly in frequency and severity that their claims alone could not possibly be resolved on a collective basis.  There are no common experiences that could give rise to uniform sexual harassment claims across the twenty two production and maintenance shops—let alone among the "office workers" whom Plaintiffs seek to shoehorn into this allegation (despite the fact that none of the Plaintiffs has ever been an office worker).  *Dukes* instructs that "quite obviously" the "mere claim" that employees suffered a Title VII injury is insufficient to establish commonality.  A review of the allegations demonstrates this point forcefully.

The Amended Complaint lumps together isolated and individualized incidents of alleged harassment against four production workers that vary with respect to the alleged harassers, the time and setting, and the severity and frequency.  For example, several of the putative class

members allege that offensive comments were either never directed at them or were only directed at them on a few isolated occasions. *See* Am. Compl. ¶195-196 (Jackson); Orig. Compl. ¶261 (Dupree)), while others allege that they were the targets of offensive sexual comments by co-workers, and that the comments occurred almost daily. Am. Compl. ¶224, 226 (Brown); Orig. Compl. ¶237 (Fields). The alleged harassers also vary. Putative class members Jackson, Dupree, and Fields allege the offensive comments were made by coworkers and contractors, while Brown, Davis, and Sharpe allegedly heard offensive comments from their union-member supervisors as well. The only allegations against a high-level manager are that the Vice President allegedly made offensive comments to individual women on a few isolated occasions. *See* Am. Compl. ¶64.[15] There are no allegations against any Craft Managers and only one timely allegation against a Craft Shop Supervisor. *See* Am. Compl. ¶135.

Even the Named Plaintiffs who work in the same shop do not make similar allegations. For example, Cutrell, Hobbs, and Jackson allege strikingly different treatment in the Electrical Shop. *Compare* Orig. Compl. ¶194 (Jackson alleges overhearing offensive comments from male coworkers based on gender stereotypes) *with* Orig. Compl. ¶331-364 (Cutrell alleges inappropriate comments by the Vice President and harassment by a government contractor with whom Cutrell had a personal relationship) *and* Orig. Compl. ¶ 301 (Hobbs alleges being cornered and sexually touched by one coworker, and receiving sexual advances from another coworker). Given the wide variation in their claims, there can be no finding of commonality among the Named Plaintiffs or with the broader putative class.

---

[15] The sole basis for Plaintiffs' claim that "office workers" should also be included in this class is the allegation that Vice President TJ Tjepkema purportedly told female employees in an office area that "everyone knows that you are the two most beautiful women in the room." Am. Compl. ¶64. This limited allegation is insufficient to even support a claim of harassment—let alone to justify the expansion of the putative class to dozens of other female employees who are part of a different supervisory structure and who are not members of the collective bargaining unit. Am. Compl. ¶21, 27.

### 3.     Plaintiffs' Class Claim Of Retaliation Fails To Satisfy Commonality.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove three elements:  (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and (3) that a causal link exists between the protected activity and the adverse employment action.  *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).  To establish the causal connection, the plaintiff must prove that the protected activity preceded the adverse action and that the employer *knew* the employee engaged in protected activity.  *Causey v. Balog*, 162 F.3d 795, 803-04 (4th Cir. 1998) ("[k]nowledge of a charge is essential to a retaliation claim").  Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext.  *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 657 (D. Md. 2010).  The inquiries at each stage of the litigation are "fact-intensive," and to succeed the plaintiff must prove intentional retaliation.  *Reid v. Lockheed Martin Aeronautics,* 205 F.R.D. 655, 658 (N.D. Ga. 2001).  Accordingly, courts have routinely concluded that retaliation claims are not conducive to class-wide adjudication.  *See Selwood v. Va. Mennonite Ret. Cmty, Inc.*, No. 04 CV 00021, 2004 WL 1946379, at *3 (W.D. Va. Aug. 31, 2004) (internal citation omitted) (denying Plaintiffs' request to seek "class" discovery prior to her certification motion, and finding that retaliation claims "are generally personal in nature.  They do not lend themselves readily to class treatment since they usually involve facts and circumstances unique to the claim of the person against whom retaliation is directed."); *Elkins v. America Showa, Inc.*, 219 F.R.D. 414, 425 (S.D. Oh. 2002) (denying class certification of retaliation claim based on a lack of commonality where the plaintiffs had not identified any issues underlying their retaliation claims that could be resolved on a class-wide basis); *Reid*, 205 F.R.D. at 676 (same).

Here, Plaintiffs' Amended Complaint fails to set forth any policy of alleged retaliation that would make Plaintiffs' individual claims susceptible to class-wide proof.  In fact, Plaintiffs themselves state that "several of the Class Representatives and other female employees" complained about sex discrimination and that only "some" have allegedly experienced retaliation.  ¶114, 115.  Moreover, with respect to the "some" who allegedly experienced retaliation, Plaintiffs merely restate their underlying discrimination claims in alleging adverse consequences of complaining.  There is, however, no commonality to these individual allegations.

For example, Plaintiffs allege that two putative class members were retaliated against for complaining of sex discrimination when they were suspended on suspicion of falsifying documents.  Am. Compl. ¶87-93.  Plaintiffs claim that these two class members were treated differently from two male employees against whom BAE Norfolk Ship Repair had made the same accusation, but who allegedly were not suspended until BAE Norfolk Ship Repair had communications with their legal counsel.  Am. Compl. ¶88-90.  Resolution of these two retaliation claims would require highly specific factual inquiries into the degree to which BAE Norfolk Ship Repair suspected that the four individuals had falsified documents, the types of documents involved, the timings of the suspensions, and factual differences between the circumstances of the men and women involved.  *See* Am. Compl. ¶87-93.

Plaintiffs, however, do not even allege that resolution of this retaliation claim would make it any more likely that other women have suffered similar retaliation at BAE Norfolk Ship Repair.  *Dukes* mandates that a class action cannot be maintained unless the claims depend upon a common contention, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  131 S. Ct. at 2551.

The other retaliation allegations are equally unique to each of the Named Plaintiffs and would have to be resolved case by case. Janet Aviles alleges that "in retaliation for her complaints" of sex discrimination, her car was vandalized on two occasions, and another co-worker cut down her lines while she worked. Am. Compl. ¶153, 156, 305. To establish a *prima facie* case, Aviles would have to prove that the employees who engaged in the vandalism *knew* about her complaints of sex discrimination and engaged in retaliatory acts because of them.[16] Meanwhile, *none* of the other Named Plaintiffs alleges retaliation. Plaintiffs have made no factual allegations of a policy or common type of retaliation that is regularly carried out throughout the shipyard, and as a result this claim must be stricken from their Amended Complaint.

### D. The Monetary Relief Class For The Hostile Work Environment Claim Does Not Meet The Predominance Standard Of Rule 23(b)(3) Because It Would Require Individual Damages Calculations.

Plaintiffs' hostile work environment claim fails to satisfy the predominance requirement of Rule 23(b)(3) because it would require individual calculations as to damages that would overwhelm any possible questions common to the class—even if they existed, which they do not.[17] In *Comcast Corp. v. Behrend*, the Supreme Court held that a class could not be certified

---

[16] It is not even clear that co-worker harassment can be part of a retaliation claim in the Fourth Circuit. *See Caldwell v. Jackson*, No. 1:03CV707, 2009 WL 2487850, at *8 (M.D. N.C. Aug. 11, 2009) ("[T]he Fourth Circuit does not appear to have addressed co-worker harassment as part of a retaliation claim").

[17] Indeed, all of Plaintiffs' claims fail to meet the predominance requirement of Rule 23(b)(3). In order to certify a class under Rule 23(b)(3), the Plaintiffs must not only meet the requirements under Rule 23(a), but must additionally show that that "[common] questions of law or fact . . . predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1977). The Supreme Court has held that the predominance standard of Rule 23(b)(3) is similar to, but more demanding than, the commonality standard of Rule 23(a)(2). *Id.* at 624; *see also Lienhart v. Dryvit Sys.*, 255 F.3d 138, 147 (4th Cir. 2001) ("[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is subsumed under, or superseded by the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions"). In *Dukes*, after the Court found no commonality under Rule 23(a)(2) it addressed, and then quickly dismissed, the Plaintiffs' allegations under Rule 23(b)(3): "The defects in Plaintiffs' allegations of commonality are if anything **even more glaring** against the rigorous requirement of Fed. R. Civ. P. 23(b)(3)." *Dukes*, 131 S. Ct. at 2552 (emphasis added). So too, in *Valerino v. Holder*, the court recognized that if the Plaintiffs could not establish commonality under Rule 23(a), then "*a fortiori*" they could not satisfy the "more stringent requirements of Rule 23(b)" 283 F.R.D. 302, 310 (E.D. Va. 2012). Plaintiffs' allegations fail to meet the

under Rule 23(b)(3) unless the plaintiffs proposed a model that could calculate damages through common proof.  133 S. Ct. 1426, 1433-34 (2013).  In other words, the same standard required in assessing liability issues—can class treatment provide answers to all claims in one stroke—applies at the damages phase and requires a formula that can derive damages without individualized litigation.  "Without presenting another methodology, respondent cannot show Rule 23(b)(3) predominance:  Questions of individual damages calculations will inevitably overwhelm questions common to the class."  *Id.  See also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification.").

*Comcast* requires Plaintiffs to present a unitary way to measure damages for every member of the putative class that is attributable to the common policy or practice that they are challenging.  This common method of calculation cannot, however, abridge the employer's statutory right under Title VII, expressly recognized by the Supreme Court in *Dukes,* to individualized determination of each employee's right to damages.  *See Wal-Mart v. Dukes*, 131 S. Ct. at 2550.  Reading *Comcast* and *Dukes* together, Plaintiffs must present a damages model that is susceptible to class-wide proof without vitiating the employer's right to individualized hearings for damages.  *See Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 595 (S.D. N.Y. 2013) ("*Comcast* brings damages to the forefront of the class certification inquiry—a holding that, when combined with *Dukes*' discussion of trial by formula, suggests that where individualized damages questions so predominate over damages questions capable of classwide proof, certification is inappropriate and raises due process concerns for defendants.").

---

commonality standard set forth in Rule 23(a)(2), and are therefore insufficient under the more rigorous 23(b)(3) standard as well.

Although all of Plaintiffs' claims raise serious issues regarding the need for individualized damages proceedings, this is particularly true of Plaintiffs' hostile work environment claims.  As discussed at length on pages 19-22 above, hostile work environment claims are predicated on the severity of each individual's personal experiences and reactions.  In most instances, there are no lost wages that can be determined through review of documents or data.   To the contrary, damages are based on individual emotional distress claims to compensatory damages.  No model can predict whether a class member suffered emotional distress, much less determine its nature and extent.  *See Berndt v. California Dep't of Corr.*, No. C 03-3174, 2012 WL 950625, at *13 (9th Cir. Mar. 20, 2012) ("While it is often true that damages calculations alone cannot defeat certification, that principle may not be applicable here, where the emotional distress damages as to every class member depend on the individual incidents, and on the kind and extent of [harassing] behavior they were exposed to, as well as the promptness and efficacy, or lack of efficacy, of defendants' response to any complaints they may have made.") (internal citation omitted); *Thompson v. Merck*, No. C.A. 01-1004, 2004 WL 62710, at *4 (E.D. Pa. Jan. 6, 2004) (denying class certification under 23(b)(2) and 23(b)(3) in part because harassment plaintiffs' claims for mental anguish and pain and suffering are "uniquely dependent on the subjective and intangible differences of each class member's individual circumstances.").  Without a common mechanism for assessing damages, the Court would have to undertake individualized fact inquiries for each member of the putative class to determine her damages.  *See Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003) (individual issues predominate over class issues in alleged hostile work environment class action).  As a result, individual issues inherently predominate over class issues for this type of claim.

### E.      Rule 23(c)(4) Does Not Rescue Plaintiffs' Class Claims.

Plaintiffs allege that if certification is not appropriate under Rule 23(b)(3), then the Court

should, in the alternative, certify "common" issues under Rule 23(c)(4).  Rule 23(c)(4) states that

"[w]hen appropriate, an action may be brought or maintained as a class action with respect to

particular issues."   Rule 23(c)(4), however, provides Plaintiffs no assistance in this case.   The

Fourth Circuit has opined that:

> [S]ubsection 23(c)(4) should be used to separate "one or more" claims that are
> appropriate for class treatment, provided that within that claim or claims (rather
> than within the entire lawsuit as a whole), the predominance and all other
> necessary requirements of subsections (a) and (b) of Rule 23 are met.

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003).  As discussed at length

above, none of Plaintiffs' claims in this case can satisfy the commonality requirement of Rule

23(a) and the more stringent predominance requirement of Rule 23(b)(3).  Accordingly, there is

no claim or issue to be isolated for certification under Rule 23(c)(4).

## IV.      CONCLUSION

Plaintiffs have identified a variety of individual experiences that they claim constitute

gender discrimination.   Although no single policy or practice ties these various incidents

together, Plaintiffs have attempted to meld them into a common experience for all female BAE

Systems Norfolk Ship Repair employees by claiming that all are driven by excessive discretion

given to lower level managers.  Specifically, Plaintiffs claim that these lower level managers are

given excessive discretion and that they all happen to exercise this excessive discretion in ways

that discriminate on the basis of gender—in direct contravention of company policies prohibiting

gender discrimination.  This exact same theory was rejected by the United States Supreme Court

in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011).  *Dukes* compels the same result in this case—the

dismissal of Plaintiffs' class action claims.

Date:  February 21, 2014                    Respectfully submitted,


                                            /s/  *Carson H. Sullivan*
                                            Carson H. Sullivan (Va. Bar. No. 45466)
                                            Barbara Berish Brown (motion for admission *pro*
                                            *hac vice* pending)
                                            PAUL HASTINGS LLP
                                            875 15th Street, N.W.
                                            Washington, D.C. 20005
                                            Telephone: (202) 551-1700
                                            Facsimile: (202) 551-1705
                                            carsonsullivan@paulhastings.com
                                            barbarabrown@paulhastings.com

                                            William C. Barker (motion for admission *pro hac*
                                            *vice* pending)
                                            PAUL HASTINGS LLP
                                            1170 Peachtree Street N.E.
                                            Suite 100
                                            Atlanta, GA 30309
                                            Telephone: (404) 815-2400
                                            Facsimile: (404) 815-2424
                                            corybarker@paulhastings.com

                                            *Counsel for Defendants BAE Systems Norfolk*
                                            *Ship Repair, Inc. and BAE Systems Ship Repair,*
                                            *Inc.*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 21st day of February 2014, I electronically filed Memorandum of Law in Support of Defendants' Motion to Strike Class Allegations with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Jennifer Abby Reisch | Joshua Friedman |
| Keasara Maree Williams | Giselle Brianceschi Schuetz |
| Equal Rights Advocates | Rebecca Houlding |
| 180 Howard Street | Law Offices of Joshua Friedman PC |
| Suite 300 | 1050 Seven Oaks Lane |
| San Francisco, CA  94105 | Mamaroneck, NY 10543 |
| Telephone:  (415) 575-0672 | (888) 369-1119 |
| Fax:  (415) 621-6744 | josh@joshuafriedmanesq.com |
| jreisch@equalrights.org | giselle@joshuafriedmanesq.com |
| kwilliams@equalrights.org | rebecca@joshuafriedmanesq.com |

James Harrell Shoemaker, Jr**.**
Jason Eric Messersmith
Patricia Ann Melochick
Patten Wornom Hatten & Diamonstein LC
12350 Jefferson Ave
Suite 300
Newport News, VA 23602
(757) 223-4500
jshoemaker@pwhd.com
jmessersmith@pwhd.com
tmelochick@pwhd.com

       I hereby certify that on the 21st day of February 2014, I hand delivered the Memorandum of Law in Support of Defendants' Motion to Strike Class Allegations to the following:

James Harrell Shoemaker, Jr**.**
Jason Eric Messersmith
Patricia Ann Melochick
Patten Wornom Hatten & Diamonstein LC
12350 Jefferson Ave
Suite 300
Newport News, VA 23602
(757) 223-4500

                                          /s/ *Carson H. Sullivan*
                                              Counsel for Defendants