**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

|  |  |
|---|---|
| JANET AVILES, JAMIEKA BROWN, STEPHANIE JACKSON, and KEL SHARPE, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>BAE SYSTEMS NORFOLK SHIP REPAIR, INC., and BAE SYSTEMS SHIP REPAIR INC.,<br><br>        Defendants. | CASE NO.: 2:13-cv-00418 (AWA) (TEM) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO STRIKE ALL CLASS ALLEGATIONS**

## I.    INTRODUCTION

Defendants BAE Systems Norfolk Shipyard, Inc. and BAE System Shipyard, Inc. (collectively, "BAE") seek to strike all of Plaintiffs' class allegations as contrary to the class certification standards set forth in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011) ("*Đukes*").  BAE's Motion is extremely premature and without merit, and should be denied in its entirety.

BAE's motion to strike relies on a long-disfavored defense strategy of trying to preemptively litigate class certification before plaintiffs have an opportunity to submit evidence supporting class treatment.  Defendants urge this Court to pre-judge facts not yet before it and to assume how evidence and arguments for certification will be presented.  An evaluation of questions related to class certification will be possible only after the Court has reviewed Plaintiffs' class certification motion, supporting expert reports, and additional accompanying evidence, none of which has been obtained since discovery has not yet been authorized.  At this

stage, the allegations in Plaintiffs' First Amended Complaint ("FAC") are clearly sufficient to support classwide claims of gender discrimination and retaliation, and BAE's motion should be denied as premature.

Contrary to BAE's arguments, Plaintiffs' allegations are entirely consistent with the certification standards set forth in Dukes, which did not address class action *pleading* standards under Rule 12 and therefore has little bearing on Plaintiffs' burden at this procedural juncture in the case. Moreover, this case is worlds away from *Dukes* in several material ways. To begin with, the size and scope of the proposed class pales in comparison to the one at issue in *Dukes*. The *Dukes* class consisted over 1.5 million women who worked in different positions at over 3,400 stores across the country, reporting to hundreds (if not thousands) of different managers. Here, Plaintiffs are seeking to represent a class of approximately 100 women who have all been employed at the same Norfolk facility, working in one of the well-defined positions within BAE's production and maintenance department, and reporting to a small, easily identifiable group of (*entirely male*) managers that is responsible for implementing and enforcing a uniform set of employment policies which applies to the entire class. *See* FAC ¶¶ 12, 19-21, 23-28, 32-33, and Fig. 1. Thus, the scope of the proposed class is far more limited and focused that the one in *Dukes*.[1]

Furthermore, rather than merely attacking the use of subjectivity in a "corporate culture" that was *vulnerable* to gender bias, as the *Dukes* plaintiffs did, Plaintiffs here challenge specific employment practices and pervasive, top-down, overt bias and hostility towards women that is

---

1 The difference in class size alone is significant to the commonality inquiry because, while sheer class size has no *per se* bearing on whether common questions exist, "it is reasonable to suspect that the larger the class size, the less plausible it is that a class will be able to demonstrate a common mode of exercising discretion." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 509 (N.D. Cal. 2012); *see also Chen-Oster*, 877 F. Supp. 2d at 119, ("The Supreme Court suggested (when not explicitly stating) that the sheer size of the [*Dukes*] class and the vast number and diffusion of challenged employment decisions was key to the commonality decision. This makes a great deal of sense when the purpose of the commonality enquiry is to identify 'some glue holding the alleged reasons for all of [the challenged] employment decisions together.'") (quoting *Dukes*, 131 S. Ct. at 2552) (emphasis omitted).

carried out through specific employment practices and policies which create and perpetuate unequal and adverse conditions for female employees in the production and maintenance department at Defendants' Norfolk shipyard.  These employment practices are systemic, affect all class members, and are best challenged on a classwide basis.  In short, the proposed class here is worlds away from the one decertified in *Dukes*.

BAE's motion fundamentally misapprehends *Dukes'* holding and reach, and compounds the problem by misstating the claims in this case.  Defendants also misread *Dukes* and other *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) to preclude class certification any time Plaintiffs present damages claims for certification under Rule 23(b)(3).  To the contrary, Plaintiffs may pursue certification of injunctive and declaratory relief claims under Rule 23(b)(2) and/or Rule (c)(4) while also seeking to certify claims for monetary damages under Rule 23(b) (3), and they have adequately pled allegations in support of such an approach.

For all of the reasons set forth below, BAE's motion should be denied.

## II.   STANDARD OF REVIEW

Motions to strike are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 247 (4th Cir. 2007) (motions to strike under [Federal Rule of Civil Procedure] 12(f) "are to be granted infrequently"). Motions to strike class allegations are "*even more disfavored* because [they] require[] a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) (emphasis added; internal quotation marks and citation omitted) (denying motion to dismiss and/or strike class claims in Title VII sex discrimination case).

When evaluating a motion to dismiss or strike all claims under Federal Rules of Civil

Procedure 12(b)(6) or 12(f), courts "view the pleading under attack in a light most favorable to the pleader," *Global Hub Logistics v. Tamerlane Global Servs.*, 2013 U.S. Dist. LEXIS 46410, at *9 (E.D. Va. Mar. 29, 2013) and draw all reasonable inferences in the plaintiff's favor.  *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175 (4th Cir. 2000); *see also Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 (CRB), 2012 U.S. Dist. LEXIS 135554, *10 (N.D. Cal. Sept. 21, 2012) ("A court must deny a motion to strike if there is any doubt whether the allegations in the pleadings might be relevant to the action.")  The question before the court is whether the plaintiffs have articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In employment discrimination cases, a complaint "need not plead a prima facie case of discrimination;" instead, the plaintiff must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).  The Fourth Circuit has expressly held that this pleading standard still applies post-*Twombly. See Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010) (in the employment discrimination context, "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss."); *accord Dawling v. Shamrock Envtl. Corp.*, 2012 U.S. Dist. LEXIS 87700, at *11 n.5 (M.D.N.C. June 25, 2012).

## III.   ARGUMENT

### A.   Defendants' Motion Should Be Denied as a Premature Attempt to Litigate Class Certification.

Motions to strike class allegations are, as Defendants acknowledge, reserved for "rare occasions."  Def. MOL at 1; *see Dukes v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 135554 at *4 (denying Wal-Mart's motion to dismiss amended class claims after remand and noting that, "With rare exceptions, the appropriate vehicle for testing the sufficiency of class allegations is a motion for class certification").  Courts generally look upon such motions with disfavor, unless they "address issues separate and apart from the issues that will be decided on a class

certification motion." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *accord Calibuso*, 893 F. Supp. 2d at 383. As a result, motions to strike and other motions attempting to preempt class certification are routinely denied as premature.[2]  Indeed, defense counsel in this case have brought – and lost – motions to preemptively dispose of class claims in at least two other gender discrimination cases that were based on arguments strikingly similar to those advanced here.  *See Chen-Oster*, 877 F. Supp. 2d at 116-18; *Schaefer v. Gen. Electric Co.*, No. 07-CV-0858, 2008 U.S. Dist. LEXIS 5552, at *9-10 (D. Conn. Jan. 22, 2008).

Defendants' reliance on *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, No. 06 Civ. 6198, 2008 U.S. Dist. LEXIS 2932 (S.D.N.Y. Jan. 16, 2008), to justify their premature motion is misplaced, as the court in *Rahman* unequivocally held that class certification "may not be circumvented by utilizing a motion to strike . . . where the issues raised in the motion to strike are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." *Rahman*, 2008 U.S. Dist. LEXIS 2932, at *11-12.  The court in *Rahman* allowed defendants' motion to proceed in that case because it sought only to remove the portion of the class claims that allegedly had not been exhausted before the EEOC, an issue "separate and apart from the issues that will be decided on a class certification motion."  *Id.*

Here, in contrast, BAE's motion does not primarily address issues "separate and apart"

---

2 *See, e.g.*, *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (denying motion to strike class claims as premature); *Grogan v. Holder*, 2012 U.S. Dist. LEXIS 179057, at *14 (D.D.C. Sept. 27, 2012); *Barghout v. Bayer Healthcare Pharms.*, 2012 U.S. Dist. LEXIS 46197 (D.N.J. Mar. 30, 2012) (same); *Rogers v. Capital One Servs.*, LLC, No. 10-398, 2011 U.S. Dist. LEXIS 17064, at *24 (D. Conn. Feb. 19, 2011) (same); *Kazemi v. Payless Shoesource, Inc.*, 2010 U.S. Dist. LEXIS 27666, at *11 (N.D. Cal. Mar. 16, 2010) (same); *Velasquez v. HSBC Fin. Corp.*, 2009 U.S. Dist. LEXIS 5428, at *14 (N.D. Cal. Jan. 16, 2009) (same); *Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *Rios v. State Farm Fire and Cas. Co.*, 469 F. Supp. 2d 727, 740-41 (S.D. Iowa 2007) (same); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-cv-715, 2006 U.S. Dist. LEXIS 88988, at *10 (N.D. Cal. Nov. 28, 2006) (same); *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005) (same).

from the issues that would be decided on a class certification motion, as evidenced by the fact that it relies almost entirely on cases arising at the class certification stage.[3] *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-cv-715, 2006 U.S. Dist. LEXIS 88988, at *3 (N.D. Cal. Nov. 28, 2006) (finding motion to strike class claims "procedurally inseparable" from a determination whether to certify a class where "the bulk of Defendants' arguments in favor of its motion are actually arguments against class certification.")  Defendants' motion effectively asks the Court to perform a full Rule 23 analysis in the absence of any evidence and before Plaintiffs have had the opportunity to conduct *any* discovery.[4]  As the district court noted in *Chenensky v. N.Y. Life Ins. Co.*, No. 07-cv-11504, 2011 U.S. Dist. LEXIS 48199, "the harsh remedy of denial of class certification at this early stage, prior to any class discovery, is premature . . . [and] would be based on assumptions of fact rather than on findings of fact." *Id.* at *10 (internal quotation marks omitted).[5]  *See also Grogan v. Holder*, No. 08-1747 (BJR), 2012 U.S. Dist. LEXIS 179057 (D.D.C. Sept. 27, 2012), at *12 ("Plaintiffs must have an opportunity to set forth the facts that they have gleaned from class discovery in an appropriate motion for class certification.")  At the appropriate time—after the parties have exchanged initial disclosures, conducted written discovery and taken depositions, and exchanged data and information that will be analyzed by

---

3 Indeed, Defendants' entire argument with regard to Rule 23(a)(2) commonality relies on cases at the class certification stage.  Def. MOL at 12-26.

4 In fact, Defendants have filed a motion asking this court to stay all "class discovery" pending the outcome of the instant motion and their pending Motion for Partial Dismissal of Plaintiffs' Claims [*see* Dkts. 32, 33].  Plaintiffs' opposition to that motion is forthcoming.

5 This is especially true here, where many of Defendants' arguments are based on portions of Plaintiffs' now-superseded Original Complaint.  *See, e.g.,* Def. MOL at 5 n.2 (acknowledging reliance on allegations in Original Complaint); *id.* at 6, 16, 19, 22, 23 (relying on allegations in Original Complaint).  Because "an amended pleading ordinarily supersedes the original and renders it of no legal effect," *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (internal quotation marks and citation omitted), Defendants' reliance on the Original Complaint is improper.  Defendants also inappropriately rely on factual assertions not found in *either* of Plaintiffs' complaints or the documents attached thereto.  *See, e.g.*, Def. MOL at 14 (relying on facts not alleged to make arguments regarding BAE's promotion process).  The court should disregard those of BAE's arguments that rely on factual assertions that lack any basis in the operative pleadings and matters of which the court may take judicial notice.

experts—Plaintiffs will present a developed factual record to the Court in support of their motion for class certification.  Now, however, it is far too early in this case for the Court to determine whether Plaintiffs will be able to satisfy the elements of Rule 23.

### B.     Plaintiffs' Class Allegations Satisfy Rule 23.

Determining whether class certification is appropriate under Rule 23 calls for a two-step analysis.  First, courts look to whether plaintiffs have satisfied each of Rule 23(a)'s four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).[6]  After evaluating whether each of Rule 23(a)'s requirements is met, the court then assesses whether plaintiffs satisfy at least one provision of Rule 23(b).  *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 459 (4th Cir. 2003).  In this case, Plaintiffs will seek to certify their claims for injunctive and declaratory relief under Rule 23(b)(2) and/or 23(c)(4), and will rely on Rule 23(b)(3) to certify their claims for monetary damages, FAC ¶¶ 120-125, Prayer for Relief ¶ 1, precisely as *Dukes* instructed.  *See Dukes*, 131 S. Ct. at 2562 (*quoting Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361-62 (1977)).[7]

---

6 Because Defendants' Rule 23(a) argument focuses entirely on "commonality," Rule 23(a)'s other requirements—numerosity, typicality, and adequacy—are not now at issue.  *See Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 n.3 (4th Cir. 2013) (addressing only commonality).  Plaintiffs have adequately alleged, and will be prepared to brief and meet those other requirements at the class certification stage.  *See* FAC ¶¶ 100-103, 112-119.

7 This hybrid approach to class certification in the Title VII context has been endorsed by a host of courts since the time *Dukes* was decided.  *See, e.g., McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 338 (2012) (affirming certification of claims for injunctive relief in Title VII race discrimination case under Rule 23(b)(2) and holding that issue certification under Rule 23(c)(4) is an appropriate vehicle to adjudicate common issues related to company-wide employment practices in civil rights class actions), *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) (certifying class claims under Rule 23(b)(2) and (b)(3) in gender discrimination case); *United States v. City of New York* ("*Vulcan Society II*"), No. 07-cv-2067, 2011 U.S. Dist. LEXIS 73660 (E.D.N.Y. July 8, 2011), at *35 ("[E]ven where class plaintiffs file a complaint seeking non-incidental individual monetary relief, the classwide liability questions raised by their disparate impact and pattern-or-practice disparate treatment claims are properly certified under Rule 23(b)(2) and (c)(4).")

### B.1.     Plaintiffs Adequately Allege Commonality Under Rule 23(a)(2).

To sustain their class claims, Plaintiffs ultimately must show that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *see Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) ("A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern or practice of unlawful discrimination against a class of its employees.").  In *Dukes*, the Supreme Court considered Rule 23's commonality requirement and determined in that case—which involved a class of 1.5 million Wal-Mart employees in 3,400 different locations at various positions bringing pay and promotion claims—that the plaintiffs failed to provide adequate proof of commonality in support of their motion for class certification.  *See Dukes v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 135554 at *16 (finding that "the Supreme Court's decision [in *Dukes*] rested not on a total rejection of plaintiffs' theories, but on the inadequacy of their proof.") (citing *Dukes*, 131 S. Ct. at 2553).

Critically, the *Dukes* Court engaged in a fact-intensive class certification analysis, observing that "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," and that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Dukes*, 131 S. Ct. at 2551-52 (internal quotation marks omitted).  The sort of fact-based inquiry the *Dukes* Court espoused and engaged in, while required at the class certification stage when the court is armed with a full class certification record, has no place in a motion to strike.  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (emphasizing that at the motion to dismiss or strike stage "the relevant question is not, as it was in *Dukes*, whether Plaintiffs have 'prove[d] that there are in fact . . . common questions of law or fact, etc.,' for purposes of Rule 23." (quoting *Dukes*, 131 S. Ct. at 2551)); *see also Grogan v. Holder*, 2012 U.S. Dist. LEXIS 179057, at *10 (disagreeing with defendant's interpretation of *Dukes* as to plaintiffs' burden at the pleading stage and denying motion to dismiss or strike class claims); *Johnson v. Flakeboard Am. Ltd.*, No. 4:11-2607-TLW-KDW, 2012 U.S. Dist. LEXIS 83702, at *15 (D.S.C.

Mar. 26, 2012) (denying a *Dukes*-based motion to strike and/or dismiss class allegations in a case alleging racially hostile work environment and race-based promotion discrimination claims on behalf of African-American employees at two of defendant's plants).[8]

Instead, the relevant question at this stage is "whether, based on the allegations in the [complaint], 'it is plausible that plaintiffs will come forth with sufficient evidence at the class certification stage to demonstrate commonality.'" *Kassman*, 925 F. Supp. 2d at 464 (quoting *Dukes*, 131 S. Ct. at 2551)); *see also Grogan*, 2012 U.S. Dist. LEXIS 179057, at *13 (denying motion to strike class claims, explaining that "the Amended Complaint *plausibly* states that there *may be* a common mode of exercising discretion . . . [and that] the policies and practices that Plaintiffs challenge . . . *could conceivably be* company-wide policies and practices." (emphasis added)).

Here, Plaintiffs more than adequately allege questions of law and fact that are common to the class and will drive the resolution of this litigation.  The common questions raised by the allegations in Plaintiffs' Amended Complaint include, *inter alia*:

  (a) whether BAE has engaged in a pattern or practice of gender discrimination against female employees in production and maintenance positions at its Norfolk facility;

  (b) whether BAE's assignment, compensation and/or promotion policies and practices have had an adverse impact on female employees in production and maintenance positions at the Norfolk facility;

  (c) whether BAE has engaged in a pattern or practice of perpetrating and/or tolerating a hostile work environment for women at the Norfolk facility;

8 Many courts have already rejected defendants' attempts to use *Dukes* as a form of blanket immunity against class certification or liability where the claims at issue differ from those in *Dukes*.  *See*, *e.g.*, *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 356 (E.D.N.Y. 2011) (certifying a prevailing wage class action and finding that *Dukes* did not warrant a deviation of the standard application of the Rule 23 criteria to the specific facts of the case); *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169-70 (S.D.N.Y. 2011) (denying defendants' motion to decertify in light of *Dukes*); *Vulcan Society II*, 2011 U.S. Dist. LEXIS 73660 (denying motion to decertify Title VII liability-phase class in light of *Dukes*); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 975 (9th Cir. Cal. 2011) (rejecting argument that Title VII gender discrimination case is not certifiable post-Dukes, and remanding to the district court, which then certified the class, 285 F.R.D. 492, 545 (N.D. Cal. 2012)); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 95379, at *13-14 (W.D. Mo. Aug. 25, 2011) (certifying wage and hour Rule 23 class action and FLSA collective action and distinguishing *Dukes*).

    (d) whether BAE has failed to take prompt and effective action to remedy gender
        discrimination and sex-based harassment in its Norfolk workplace;

    (e) whether BAE has engaged in a pattern or practice of taking adverse action against
        female employees who complain about gender discrimination or harassment; and

    (f) whether BAE's conduct meets the Title VII standard for an award of punitive
        damages.

FAC ¶¶ 104-111, 119, 121, 125. These allegations are more than sufficient to establish that, at

the appropriate time, with the benefit of a fully-developed factual record, Plaintiffs will be able

to demonstrate their class gender discrimination and retaliation claims meet the commonality

requirement set forth in Rule 23(a), as set forth in *Dukes*.

### B.1.a) *Plaintiffs Allege Common Questions as to Their Class Gender Discrimination Claim.*

In moving to strike Plaintiffs' class gender discrimination claim, Defendants misread

*Dukes* and mischaracterize Plaintiffs' claims. *Dukes* does not stand for the proposition that

allegations of policies and practices involving some exercise of discretion or subjective decision-

making are *per se* uncertifiable under Rule 23. Instead, *Dukes* held that plaintiffs may not rely

solely on a "policy" of allowing individual local managers at thousands of locations to exercise

discretion over employment decisions as the basis for establishing commonality under Rule 23(a)

(2). *Dukes*, 131 S. Ct. at 2553-54. Giving discretion to lower-level employees may form the

basis of Title VII liability so long as the plaintiffs identify a "specific employment practice" that

is challenged. *Id.*; *see Scott v. Family Dollar Stores*, 733 F.3d 105, 113 (4th Cir. 2013);

*McReynolds*, 672 F.3d at 489 (finding commonality met where plaintiffs alleged that "the

exercise of [managers'] discretion is influenced by two company-wide policies that "exacerbate

racial discrimination" against members of the class); *Ellis v. Costco Wholesale Corp.*, 285 F.R.D.

492 (N.D. Cal. 2012). And "even in cases where the complaint alleges discretion, if there is also

an allegation of a company-wide policy of discrimination, the putative class may still satisfy the

commonality requirement for certification." *Scott*, 733 F.3d at 114.

Here, unlike in *Dukes*, Plaintiffs identify specific practices and allege a "common mode

of exercising discretion" emanating from and directed by senior managers at BAE's Norfolk

facility and upper levels of the company. FAC ¶¶ 63-67, 76, 105 (alleging senior managers' role

in creating and perpetuating sexually discriminatory conditions for women); ¶¶ 37, 58, 76, 105, 108 (alleging that discriminatory bias, animus, and hostility towards against women comprise the "common mode of exercising discretion" regarding assignment and promotion decisions throughout the production and maintenance department at the Norfolk shipyard); ¶ 121 ("Gender discrimination is standard operating procedure and a top-down policy and/or practice at BAE's Norfolk facility, rather than a sporadic occurrence.")  These allegations of "common direction" from top management and the identification of specific discriminatory practices, rather than the mere general delegation of authority, in addition to the smaller size and scope of the class, clearly distinguish this case from *Dukes*.  *See Ellis*, 285 F.R.D. at 509; *cf. Dukes*, 131 S. Ct. at 2555 ("In a company of Wal-Mart's size and geographical scope, it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction.")

In *Scott*, this Circuit addressed a district court's denial of leave to amend a complaint based on the district court's determination that the plaintiffs' amended complaint, which alleged subjective decisions by local managers, would not satisfy commonality after *Dukes*.  733 F.3d at 110.   The court considered *Dukes* at length, and compared the Seventh Circuit's opinions in *McReynolds* and *Bolden v. Wash. Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012) to define *Dukes'* parameters.  *Id.* at 114.

In *McReynolds*, the Seventh Circuit considered company policies involved the delegation to regional and local managers of discretion regarding decisions that influence compensation. 672 F.3d at 488.  Because that discretion was influenced by two "company-wide policies," the court determined the case involved common questions of law and fact best considered on a class-wide basis.  *Id.* at 489-90; *accord Ellis*, 285 F.R.D. at 509 (Rule 23(a)(2) satisfied where plaintiffs identified "specific practices and a common mode of guided discretion directed from the top levels of the company").

In contrast, *Bolden*, like *Dukes*, involved allegations of multiple local managers exercising independent discretion in a discriminatory manner, with no "relevant company-wide policy" driving that discrimination.  *Scott*, 733 F.3d at 115 (quoting *Bolden*, 688 F.3d at 898)

(internal quotation marks omitted).  Indeed, the plaintiffs in *Bolden* conceded that different work sites had different supervisors with different policies, and that ultimately the various sites had "materially different conditions."  *Id.* (quoting *Bolden*, 688 F.3d at 896) (internal quotation marks omitted).

The court in *Scott* determined that, where subjective decisionmaking is alleged, courts applying *Dukes* must consider: (1) whether "the discretion was exercised in a common way under some common direction, or [whether], despite the discretion alleged, another company-wide policy of discrimination is also alleged;" and (2) whether "the discretionary authority at issue was exercised by high-level managers, as distinct from the low-level type of managers in *Wal-Mart*.  *Scott*, 733 F.3d. at 116.  Observing that the plaintiffs sought to allege both that low-level managers' discretion was guided by company-wide policies *and* that high-level managers were involved in the decision-making, the court remanded the case with instructions for the district court to consider whether the plaintiffs should be permitted to amend their complaint.  *Id.* at 117, 119.

Here, Plaintiffs allege both that supervisors at BAE exercise their discretion in a common way pursuant to discriminatory company-wide policies and practices, *and* that much of the discretionary authority at issue was exercised by high-level managers.  Discriminatory policies and practices permeate putative class members' experience at BAE, beginning at the time they are hired and plaguing them throughout their careers.  When an employee is hired by BAE, Craft Shop Supervisors and/or Craft Managers for the shop into which he or she is hired decide his or her initial job classification and rank.  FAC ¶ 43.  Though Craft Shop Supervisors and Craft Managers technically have "discretion" in assigning initial job classification, that discretion is informed by a company-wide policy and/or practice of "assigning newly hired female employees to lower-level job classifications and ranks than equally or less qualified male employees."  FAC ¶ 35.  *See McReynolds*, 672 F.3d at 489-90.  Moreover, the involvement of Craft Managers—upper management employees within BAE (FAC at ¶ 6)—in this assignment process itself demonstrates commonality.  *See Scott*, 733 F.3d at 115; *Ellis*, 285 F.R.D. at 512 (emphasizing the

importance, for satisfying the commonality requirement, of upper management's involvement in promotion decisions).

Plaintiffs and putative class members here face continuing, systemic discrimination with respect to assignment, promotion, compensation (including access to overtime opportunities) and other terms and conditions of employment, including their work environment, as a result of common policies or practices that go far beyond mere delegation of discretion. For example, BAE has a policy or practice of denying female employees a meaningful opportunity to even apply for available positions in higher paying positions and job grades by failing to post position openings, or by posting them only after decisions about who will get assigned to the position or pay grade have already been made. FAC ¶ 51. BAE also has a companywide policy or practice of requiring women to meet higher or additional standards to obtain assignment or promotion to production and maintenance positions than those required of male employees. FAC ¶ 52. *See McReynolds*, 672 F.3d at 489-90. These employment decisions are not the result of unfettered discretion exercised by low-level employees. Instead, the posting policy is implemented by the company's Human Resources department [FAC ¶ 62], and promotion decisions require the approval of Craft Managers [FAC ¶ 55]. *Cf. Scott*, 733 F.3d at 115; *Ellis*, 285 F.R.D. at 512.

Defendants rely on the facially neutral overtime distribution policy in the collective bargaining agreement ("CBA") to misleadingly suggest that any discriminatory treatment in overtime assignments would necessarily be the result of subjective decision-making unauthorized by company policy. Def. MOL at 19. But as Plaintiffs allege, BAE has an unwritten practice contrary to the policy set forth in the CBA. In reality, the company-wide practice involves providing male production and maintenance employees with access to overtime hours, even when female employees have signed up on volunteer lists. FAC ¶ 48. Even male contractors are given preferential treatment over female employees, notwithstanding a written policy to the contrary. FAC ¶ 48.

Defendants' argument that Plaintiffs lack "standing" with regard to their allegations of discrimination at the time of initial job assignment is a red herring and based on misstatement of

Plaintiffs' gender discrimination claim.  Plaintiffs do not assert a separate "hiring" discrimination claim.  Instead, Plaintiffs allege that discrimination in initial assignment and in access to training and overtime are part of a pattern or practice which causes women, including named plaintiffs, to receive less pay, and fewer, slower promotions.  These policies work together to put putative class members in a position where they can never "catch up" to the seniority of their male coworkers who were not subject to discrimination.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 344 (1977).

Finally, Plaintiffs' central contention in this case—that "[g]ender discrimination is standard operating procedure and a top-down policy and/or practice at BAE's Norfolk facility, rather than a sporadic occurrence," FAC ¶ 121—can *only* be tested and resolved through a classwide proceeding, and specifically, through the two-phase pattern or practice method of proof endorsed by the Supreme Court in *Teamsters* and specifically affirmed by the Court in *Dukes*.  *See Dukes*, 131 S. Ct at 2561-62 (quoting *Teamsters*, 431 U.S. at 361-62).[9]  The bifurcated procedure for litigating Title VII pattern-or-practice discrimination cases set forth in *Teamsters*,[10] which is not available to the "nonclass private plaintiff,"[11] is precisely what

---

9 Although *Teamsters* itself was not a Rule 23 class action, the "pattern or practice" method of proof that it endorsed originated in the class action context.  *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 772 (1976).

10 Under that framework, at the initial liability stage of the case, plaintiffs must establish a prima facie case of discrimination.  *Teamsters*, 431 U.S. at 360.  If the employer fails to defeat the prima facie case by showing that plaintiffs' evidence is inaccurate or insignificant, the court may conclude that a violation has occurred and grant declaratory and injunctive relief.  *Id.* at 361 ("Without any further evidence from the [plaintiff], a court's finding of [liability under Title VII] justifies an award of prospective relief.").  Plaintiffs may then move to the second (remedial) phase of the case with a presumption of discrimination in their favor.  *Id.*  While Defendants are entitled to rebut this presumption with evidence supporting individual defenses, the remedy phase proceedings are made far simpler because the liability question has already been decided. *Id.*; *see also McReynolds v. Merrill Lynch*, 672 F.3d at 491 ("So should the claim of disparate impact prevail in the class-wide proceeding, hundreds of separate trials may be necessary to determine which class members were actually adversely affected by one or both of the practices and if so what loss he sustained… But at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful.")

11 *See Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 147, 150 (2d Cir. 2011) ("Outside the

Plaintiffs propose to follow in this case.  *See* FAC ¶¶ 120, 122.  Where individuals allege harm caused by systemic practices of discrimination that call for statistical evidence, expert analyses and careful descriptions of a pattern or practice of discrimination, as Plaintiffs' claims do here, a class procedure is the only effective mechanism available to address such harm.  The broad systemic remedies intended to address underlying causes of discrimination, of the type Plaintiffs seek here (*see* FAC Prayer for Relief at ¶¶ 5-7), are also not available in non-class cases.

**B.1.b)** ***Plaintiffs' Hostile Work Environment Allegations Raise Questions of Law and Fact That Are Common to the Class.***

Plaintiffs' hostile work environment allegations in this case raise common questions of law and fact as to BAE's systematic perpetration and toleration of a work environment hostile to women.  The implication that such hostile work environment claims can never be certified (Def. MOL at 21) has been flatly rejected by courts within and outside of this Circuit.  *See Holsey v. Armour & Co.*, 743 F.2d 199, 216-17 (4th Cir. 1984) (rejecting argument that "harassment and retaliation claims are not susceptible of class treatment because they are too individualized."); *EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 655 (E.D. Va. 2008) (same); *Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 386-88 (N.D. Ill. 1999) (certifying a sex-based hostile work environment class and dismissing as "quite without merit" the argument that such cases cannot be brought on a class basis); *see also Brown v. Nucor Corp.*, 576 F.3d 149, 160 (4th Cir. 2009) (finding Rule 23(a) and 23(b)(3) requirements satisfied in hostile work environment class action).

Contrary to Defendants' characterization of the hostility faced by women at BAE as "isolated and individualized," (Def. MOL at 22), Plaintiffs allege that common policies and practices within BAE, as well as discriminatory conduct by high-level managers, resulted in a hostile work environment impacting all putative class members.  Plaintiffs clearly describe managers and supervisors throughout BAE, including upper level management, making

---

class context, however, private plaintiffs may not invoke the *Teamsters* method of proof as an independent and distinct method of establishing liability.").

demeaning, gender-based comments on a regular basis.  [FAC 63-67]  Plaintiffs allege that

gender-based insults were made loudly and in public settings by senior managers including the

General Manager and Vice President, where a number of employees were exposed to them.

[FAC 64]  Moreover, shop managers at BAE made a habit of telling women they were out of

place in the shipyard and instead belonged in the kitchen [FAC 65], while managers and

supervisors frequently displayed and shared pornography openly in the workplace and made

disparaging sexualized remarks to and about female employees.  The pervasive harassment to

which Plaintiffs were subjected in many ways mirrors the facts in *Jenson v. Eveleth Taconite Co.*,

139 F.R.D. 657, 662-63 (D. Minn. 1991), a hostile work environment class action in which

female workers faced sexually explicit graffiti, offensive language, unwanted touching,

and "frequent 'generic' comments that women did not belong in the mines, kept jobs from men,

and belonged home with their children."

Female employees at BAE complained about the harassing conduct frequently, both

verbally and in writing, over the course of many years.  [FAC 67, 72]  That BAE did nothing to

effectively address the hostile work environment, and that high-level management continued to

tolerate, condone, and even promote it, indicate the systemic nature of the hostility.[12]  *See Brown*

*v. Yellow Transp., Inc.*, 2011 U.S. Dist. LEXIS 52345 (N.D. Ill. May 11, 2011) (certifying hostile

work environment class where racially hostile incidents were witnessed first-hand by multiple

people and discussed and shared with others, mangers willfully ignored or promoted the hostile

environment, and corporate management failed to ensure enforcement of the company's non-

discrimination policies).  Plaintiffs' allegations of widespread practices that created a work

environment where gender-based hostility was standard operating procedure are clearly

---

12 The case is therefore distinguishable from *Elkins v. American Showa, Inc.*, 219 F.R.D. 414,
424 (S.D. Ohio 2002), relied upon by Defendants [Def. MOL at 21], which found that plaintiffs'
claims lacked commonality in part because plaintiffs could not show that, "as to the class
generally, defendant had a practice of not effectively responding to complaints of sexual
harassment."

sufficient at this early stage of the litigation.  *See Johnson v. Flakeboard Am. Ltd.*, 2012 U.S.

Dist. LEXIS 83702, at *22-23 (D.S.C. Mar. 26, 2012) (denying motion to strike class allegations

in race-based hostile work environment case because "at this pre-discovery stage the court

cannot definitively determine whether a class action can be maintained under Rule 23's

commonality and predominance requirements").

Defendants' arguments about this claim reflect a fundamental misunderstanding of the

nature of hostile work environment gender-based harassment.  BAE's emphasis on to whom

offensive comments were "directed," Def. MOL at 23, for example, ignores well-established

precedent that Title VII may be violated even when an individual is not directly targeted.

*Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331-32 (4th Cir. 2003) (en banc) (jury could

reasonably find that a female employee was the target of sex-based harassment when she

frequently overheard and was present for sex-based comments and jokes shared between male

co-workers); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 811 (11th Cir. 2010) ("It is

enough to hear co-workers on a daily basis refer to female colleagues as 'bitches,' 'whores' and

'cunts,' to understand that they view women negatively, and in a humiliating or degrading way.

The harasser need not close the circle with reference to the plaintiff specifically: and you are a

'bitch,' too."); *Yuknis v. First Student, Inc.*, 481 F.3d 552, 553-54 (7th Cir. 2007) (comments

addressed to the plaintiff's protected group may constitute actionable harassment); *Petrosino v.*

*Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004) ("[T]he depiction of women in the offensive jokes

and graphics was uniformly sexually demeaning and communicated the message that women as

a group were available for sexual exploitation by men.").

The shocking breadth of gender-based hostility and harassment to which Plaintiffs were

subjected, and the vast number of harassers, do not render Plaintiffs' hostile work environment

claim incapable of certification.  *Cf. Jenson*, 139 F.R.D. at 663 (alleging similarly broad gender-

based hostility and harassment).  Instead, that the harassment occurred by employees at every

level of the company, and that it encompassed a range of gender-based disparaging conduct, only

supports Plaintiffs' class claims of systematic, gender-based hostile work environment as BAE's standard operating procedure. Plaintiffs' allegations are therefore more than adequate, at this stage of the litigation, to satisfy Rule 23(b)(3)'s commonality requirement.

**B.1.c)** *Plaintiffs' Retaliation Allegations Satisfy Rule 23(a)(2).*

Notwithstanding BAE's argument to the contrary (Def. MOL at 24), the law undeniably permits Plaintiffs the opportunity to pursue class action retaliation claims under Title VII, and Plaintiffs have adequately alleged commonality as to that claim. Title VII pattern and practice retaliation claims have been certified and successfully prosecuted as class actions. In *Holsey v. Armour and Co.*, 743 F.2d 199, 216-17 (4th Cir. 1984), *cert. denied*, 470 U.S. 1028, the Fourth Circuit affirmed a finding that an employer's pervasive harassment and retaliation against African-American employees who exercised rights protected by Title VII constituted a pattern and practice of retaliation. On appeal, the Fourth Circuit held:

> We cannot accept Armour's contention that harassment and retaliation claims are not susceptible of class treatment because they are too individualized. The plaintiffs established a general practice of retaliation against employees who opposed discriminatory practices or exercised rights protected under Title VII, in violation of § 704(a). Despite the presence of individual factual questions, the commonality criterion of rule 23(a) is satisfied by the common questions of law presented. In this case, the utility of the class action device would be destroyed by requiring the plaintiffs to bring separate claims of retaliation.

*Id.* at 216-17. *See also Wright v. Stern*, 2003 U.S. Dist. LEXIS 11589, (S.D.N.Y. July 9, 2003) (holding that "plaintiffs' hostile environment and retaliation allegations sufficiently target centralized personnel to support a finding of commonality.")

Despite the presence of individual factual questions, the commonality criterion of Rule 23(a) is satisfied by the common questions of law presented. *Holsey v. Armour and Co.* 7 F.2d 199, 217. The fact that class members have suffered different forms of adverse action does not preclude class certification of their retaliation claims. Regardless of which specific retaliatory acts done by BAE, a common question of law is presented as to whether BAE had a pattern or practice of taking retaliatory measures against women who complained about sex discrimination. Plaintiffs have sufficiently alleged that there is a common question of law and fact with regards

to its retaliation claim.  *See, e.g.,* FAC ¶ 104.  Plaintiffs allege that BAE subjected Plaintiffs to "adverse employment actions, including, but not limited to, denying them promotions which they were qualified; subjecting them to disparate terms and conditions of employment, gender discrimination, sexual harassment, a hostile work environment and/or other forms of discrimination in violation of Title VII; disciplining them in response to their complaints; and/or terminating them in response to their complaints," as well as for filing the present action.  FAC ¶¶ 87-93, 300.  The FAC describes specific instances of retaliation.  For example, as to Plaintiff Janet Aviles, the FAC alleges that "in retaliation for her complaints, in or about late 2012 to early 203, Ms. Aviles' car tires were deflated, and a second car she drove to work was keyed."  FAC ¶ 153.  In addition, following several complaints made by Plaintiff Janet Aviles in 2013 (FAC ¶¶ 139-161), her co-worker Kenneth "Sam" Adams "repeatedly vandalized her work area by cutting down her lines."  FAC ¶ 156.

As discussed above, and further outlined in the FAC, Plaintiffs properly allege facts sufficient to assert a retaliation class claim under Title VII against BAE.  Defendants' attempt to strike Plaintiffs' retaliation claim prior to any discovery and before Plaintiffs seek to certify the class is premature and contravenes case law which clearly provides Plaintiffs the opportunity to plead and pursue their retaliation claim on behalf of the class.

**B.2.**  **Plaintiffs May Seek Certification on Liability for Their Class Claims Under Rule 23(b)(2) and/or Rule 23(c)(4) While Also Seeking Certification of Their Claims for Monetary Damages Under Rule 23(b)(3).**

In addition to meeting the requirements of Rule 23(a) (including commonality, discussed above), Plaintiffs seeking to certify a class normally must satisfy at least one of the provisions of Federal Rule of Civil Procedure 23(b).  Under Rule 23(b)(2), a plaintiff must show that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Under Rule 23(b)(3), a plaintiff must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Plaintiffs may also maintain a class action "with respect to particular issues" under Federal Rule of Civil Procedure 23(c)(4).

In this case, Plaintiffs will seek to certify their class claims by following the framework for litigating Title VII pattern-or-practice cases set forth in *Teamsters*, 431 U.S. 324, which *Dukes* endorsed.[13]  *Dukes*, 131 S. Ct. at 2561.  Under this approach, Plaintiffs will seek to certify injunctive and declaratory relief claims, or specific issues arising within those claims, under Rule 23(b)(2) and/or Rule 23(c)(4).  FAC ¶¶ 121, 125.  Plaintiffs will seek to certify their claims for damages under Rule 23(b)(3).  FAC ¶ 123.  Defendants' arguments that Plaintiffs cannot rely upon Rules 23(c)(4) and 23(b)(3) are premature, misleading, and ultimately unavailing.

> ### (a)   *Plaintiffs May Seek Classwide Injunctive and Declaratory Relief Under Rules 23(b)(2) and/or 23(c)(4).*

Defendants do not challenge Plaintiffs' right to seek classwide injunctive and declaratory relief under Rule 23(b)(2).  They do assert, however, that Plaintiffs cannot seek to certify issues under Rule 23(c)(4) unless those issues also satisfy the predominance requirement of Rule 23(b)(3).  That is incorrect.  The Fourth Circuit in *Gunnels v. Healthplan Servs.*, 348 F.3d 417 (4th Cir. 2013)—the case on which Defendants primarily rely (Def. MOL at 29)—"flatly rejects" Defendants' "sequential interpretation of Rule 23," explaining that such an approach would render Rule 23(c)(4) superfluous.  *Id.* at 449.  Instead, the Fourth Circuit requires a "broad *issue*-specific predominance analysis of Rule 23" that permits courts to separately certify claims or parts of claims for injunctive relief under Rule 23(b)(2) and 23(c)(4), while still allowing plaintiffs to seek certification of claims for monetary relief under Rule 23(b)(3).  *Id.* at 441.  That is precisely the approach Plaintiffs intend to pursue in this case.

> ### (b)  *The Presence of Individual Damages Questions Does Not Preclude Plaintiffs from Satisfying Rule 23(b)(3)'s Predominance Requirement.*

---

13 *See supra*, Section ____ n.____.

Defendants ask this court to strike Plaintiffs' entire class sex discrimination claim[14] for failure to meet Rule 23(b)(3)'s predominance requirement based on the contention that Plaintiff's hostile work environment allegations may require individual damages assessments.  [Def. MOL at 26.]  As the Supreme Court has made abundantly clear, Rule 23(b)(3), "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof' [just] that common questions '*predominate* over any questions affecting only individual [class] members.'"  *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2012) (quoting Rule 23(b)(3)).  The potential need for individualized damages assessments on one aspect of one of Plaintiffs' claims (compensatory damages flowing from a hostile work environment) does not preclude class certification of that claim under Rule 23(b)(3). *See Butler v. Sears, Roebuck, & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."); *see also Healy v. IBEW, Local Union No. 134*, 2013 U.S. Dist. LEXIS 119102, at *29 (N.D. Ill. Aug. 22, 2013) (individual damages determinations do not require denial of certification since "district court judges can devise alternative solutions to deal with varying damages among class members so long as substantial common issues predominate." (citation omitted)).

As discussed above, Plaintiffs have not yet sought class certification, and have not even begun to conduct discovery.  It is inappropriate to pre-litigate the presence or absence of predominance at this early stage.  Nonetheless, Plaintiffs' Complaint plausibly asserts a number

---

14 Though Defendants' primary "predominance" argument relates to Plaintiffs' hostile work environment allegations, they also argue in a footnote "all of Plaintiffs' claims fail to satisfy the predominance requirement of Rule 23(b)(3)."  [Def. MOL at 26, n.17.]  This argument ignores the fact that Plaintiffs are not seeking certification of "all of [their] claims" under Rule 23(b)(3), but only those claims that seek monetary relief which is "not incidental to the injunctive or declaratory relief," in accordance with *Dukes*, 131 S. Ct. at 2557.

of common questions regarding BAE's liability under Title VII, which may predominate over the potentially individualized questions relating to compensatory damages resulting from a hostile work environment.  As discussed above, BAE's liability with regard to the hostile work environment raises a number of such common questions.[15]

Defendants contend that reading *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) together with *Dukes*, 131 S. Ct. 2541, compels a finding that Plaintiffs must present a way of measuring damages "for every member of the putative class that is attributable to [every] common policy or practice that they are challenging."  (Def. MOL at 27.)  There is simply no support for such an argument in *Comcast*, *Dukes*, or any other case cited by Defendants.  It would be impossible and improper to require Plaintiffs to make such a showing, especially at the pleading stage, before Plaintiffs have identified all members of the proposed class; obtained classwide discovery and statistical evidence on common policies and practices; or even decided for which claims they will seek monetary relief, and in which form they will seek such relief.

Defendants' interpretation of *Comcast* has been rejected by a number of courts.  Indeed, *Jacob v. Duane Reade*, 293 F.R.D. 578, 589 (S.D. N.Y. 2013), upon which Defendants rely, makes clear that *Comcast* did not impair the "long standing principle … that courts may certify a class as to liability, but not damages, utilizing Rule 23(c)(4), so long as the proposed liability class meets the requirements of Rule 23(a) and (b)."  *See also In re: Deepwater Horizon*, 2014 U.S. App. LEXIS 575, at *69-70 (5th Cir. Jan. 10, 2014) (*Comcast* is largely irrelevant "[w]here determinations on liability and damages have been bifurcated" in accordance with Rule 23(c)(4); even after *Comcast*, the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish liability on a class-wide basis, with separate hearings to determine the damages of individual class members); *Whitlock v. FSL Mgmt.*, 2013 U.S. Dist. LEXIS 148747, at *12 (W.D. Ky. Oct. 16, 2013) (rejecting defendants' argument that, after *Comcast*, the presence of individualized damages defeats certification under Rule 23(b)(3));

---

15 Plaintiffs have also raised a number of common questions as to BAE's other Title VII violations, as well.  *See    __*

*Wallace v. Powell*, 2013 U.S. Dist. LEXIS 69001, *86-87 (M.D. Pa. May 14, 2013) (same).

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that BAE's motion to strike all class allegations be denied.


Dated:  March 4, 2014                           Respectfully submitted,


                                    By:  _____/s/ James H. Shoemaker, Jr.
                                         James H. Shoemaker, Jr., VSB No. 33148
                                         **Patten, Wornom, Hatten & Diamonstein, L.C.**
                                         12350 Jefferson Avenue, Suite 300
                                         Newport News, Virginia 23602
                                         Telephone: (757) 223-4500
                                         Facsimile: (757) 223-4518

                                    By:  _____/s/ Joshua Friedman
                                         Joshua Friedman, Esq.
                                         *Admitted Pro Hac Vice*
                                         Rebecca Houlding, Esq.
                                         *Admitted Pro Hac Vice*
                                         Giselle Schuetz, Esq.
                                         *Admitted Pro Hac Vice*
                                         **Law Offices of Joshua Friedman, P.C.**
                                         1050 Seven Oaks Lane
                                         Mamaroneck, New York 10543
                                         Telephone: (212) 308-4338 x8
                                         Facsimile: (866) 731-5553
                                         Email: josh@joshuafriedmanesq.com

                                    By:  _____/s/ Jennifer Reisch
                                         Jennifer Reisch, Esq.
                                         *Admitted Pro Hac Vice*
                                         Keasara Williams, Esq.
                                         *Admitted Pro Hac Vice*
                                         **Equal Rights Advocates**
                                         180 Howard Street, Suite 300
                                         San Francisco, CA 94105
                                         Telephone: (415) 621-0672
                                         Facsimile: (415) 621-6744
                                         Email: jreisch@equalrights.org

                                    **ATTORNEYS FOR PLAINTIFFS**

**AND THE PUTATIVE CLASS**