**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| **JANET AVILES, JAMIEKA BROWN, STEPHANIE JACKSON, and KEL SHARPE Individually and on behalf of others similarly situated,** ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| ) | **Case No.: 2:13-cv-00418-AWA-TEM** |
| **v.** ) ) | |
| **BAE Systems Norfolk Ship Repair, Inc., and BAE Systems Ship Repair, Inc.,** ) ) ) | |
| **Defendants.** ) | |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE CLASS ALLEGATIONS**

Defendants' Motion to Strike Class Allegations presents a simple issue – are Plaintiffs entitled to embark on broad class discovery and class certification proceedings that consume time and resources based solely on generalized contentions and rhetoric or must they actually allege specific facts that – if true – would warrant class certification of their claims?  Plaintiffs' Opposition to Defendants' Motion to Strike Class Allegations ("Pls.' Opp.") claims that the mere articulation of vague theories of class injury suffices to justify moving forward with all the burden and expense that a putative class action entails.  Pls.' Opp. at 7.  More is required.  The "common policies" that Plaintiffs recite are nothing more than examples of the clever phrasing that has been regularly rejected by courts since *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011).  As the Court in *Dukes* specifically held, it is not enough for Plaintiffs and their counsel to cleverly craft purported common questions – those questions must be amenable to common answers as well.  *Id.* at 2551.  Plaintiffs do not identify any purportedly common questions to which

common answers could possibly be provided.  They merely assure the Court that with a massive amount of discovery they will figure it out.

Contrary to the rhetoric in Plaintiffs' Opposition, Defendants are not attempting to prematurely litigate class certification, nor are they asking the Court to assume facts not in evidence.  The facts as pled by Plaintiffs demonstrate definitively that class treatment would not be possible even if all of Plaintiffs' allegations were proven true with later-developed evidence.  Under those circumstances it is entirely appropriate to refuse to permit those claims to proceed on a class basis.  Although the deficiencies in Plaintiffs' factual allegations are discussed at length in Defendants' Opening Brief (*see* Docket No. 23), numerous additional examples show why the class claims should be stricken at the outset.  For example, though Plaintiffs' Opposition claims that all female production and maintenance employees are hired into lower positions than male employees and that this harms their pay and advancement throughout their careers at BAE Norfolk Ship Repair, *not a single one of the Named Plaintiffs claims that this was her personal experience*.  Plaintiffs' Opposition claims that all female production and maintenance employees at BAE Norfolk Ship Repair are subject to gender discrimination in overtime assignments; yet only one of the Named Plaintiffs (Aviles) claims that this was her personal experience.  Plaintiffs' Opposition claims that all female employees are subject to a common actionable hostile work environment, but an examination of their individual allegations (and those of the former Plaintiffs they have dropped from the First Amended Complaint, presumably in order to bolster the purported similarity of their class claims) reveals that there are extreme differences in the source, frequency, and type of alleged harassing behavior they experienced.  These variations and differences demonstrate that even if all of the pled facts are true, they do not raise questions that can properly yield collective answers at either the liability or the damages phase of the case.

Discovery is not necessary for the Court to look at the face of Plaintiffs' First Amended Complaint and conclude at this juncture that its factual allegations and the ostensible common questions it raises cannot support class treatment under Fed. R. Civ. P. 23.

## I.   ARGUMENT

### A.   <u>Defendants' Motion To Strike Is Not Premature</u>.

Defendants filed this Motion pursuant to Fed. R. Civ. P. 23(D)(1)(d), which authorizes[1] the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  It is undisputed that Rule 23(D)(1)(d) empowers this Court to strike Plaintiffs' class allegations.  Plaintiffs' Opposition cites a number of cases, primarily district court decisions from the Second and Ninth Circuits, in which courts declined to exercise this authority.  The decisions are, however, far from monolithic, and numerous other courts have considered and rejected class claims based solely on the allegations in a complaint.  As the Sixth Circuit noted when granting a motion to strike class allegations prior to any discovery:

> That the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature.  Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time" in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs.

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

Dismissal of class allegations on the pleadings has been endorsed by other district courts in the Fourth Circuit and by the Fourth Circuit itself.  In *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013), which Plaintiffs cite in their Opposition, the Fourth Circuit affirmed the

---

[1] Plaintiffs correctly note that motions filed pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) are interpreted in a light most favorable to the pleader and that, primarily in *dicta*, some courts have stated that 12(f) motions are disfavored.  This Motion, however, is not filed under either of those sub-sections of Rule 12.

dismissal of class allegations asserted in a complaint because those allegations failed to satisfy the requirements of *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011).  *Scott*, 733 F.3d at 116. Although the court in *Scott* permitted the plaintiffs to amend their complaint to assert theories that might prove consistent with *Dukes*, it clearly espoused the view that class allegations can be rejected at the pleadings stage.  *Id.*[2]  Similarly, in *Ross-Randolph v. Allstate Ins. Co.*, No. 99-3344, 2001 WL 36042162 (D. Md. May 11, 2001), the district court granted the defendant's motion to strike class allegations before the commencement of discovery because the theories and facts alleged did not satisfy the requirements of Rule 23, including 23(a)(2)'s commonality requirement.  In reaching this conclusion, the court concluded that "certification is appropriate only when a determinative critical issue overshadows all others.  *Id.* at *6 (*citing Stott v. Haworth*, 916 F.2d 134,145 (4th Cir. 1990)).

The cases cited by Plaintiffs do not support the assertion that motions to strike class allegations are inherently inappropriate.  To the contrary, in *Calibuso v. Bank of America Corp.*, 893 F. Supp. 2d 374, 389 (S.D.N.Y. 2012), which Plaintiffs cite repeatedly, the court concluded that the class allegations should not be stricken at the pleadings stage because the class theories advanced by the plaintiffs were not violative of the principles adopted in *Dukes*.  The *Calibuso* plaintiffs alleged that specific Bank of America policies used to assign credit for business generation had a disparate impact on female employees that was not justified because the specific criteria were purportedly not validated.[3]  *Id.*  Although there was a discretionary element in the way these criteria were applied, the plaintiffs' theories were not based at their core on

---

[2] As discussed at length in Defendants' Opening Brief, the theories accepted by the court in *Scott* as possibly satisfying commonality, if the facts were as alleged, are easily distinguishable from those asserted in this case.  Docket No. 23 at p. 17.

[3] The disparate impact theory of Title VII requires that selection procedures be validated pursuant to the Uniform Guidelines on Employee Selection Procedures if they have a disparate impact statistically on a protected class.

alleged managerial discretion, as is the case here.  *Id.*  Indeed, disparate impact claims have long been recognized as often more amenable to class treatment if the common employment practice alleged to have an adverse impact on the protected class does not require an individualized analysis of discretionary employment decisions by low-level managers.  131 S. Ct. at 2555-56.[4]

### B.   Plaintiffs Conveniently Ignore Standing Requirements.

Plaintiffs disingenuously claim that there are no standing issues associated with their hiring/initial job assignment claim (or any of the other allegations for which they do not plead specific factual support).  Pls.' Opp. at 13-14.  This ignores one of the most fundamental requirements for a class action – that the claims of the Named Plaintiffs *must* be representative of the claims of the class.  *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) ("even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Tresvant v. Oliver*, No. 12–0406, 2013 WL 598333, at *4 (D. Md. Feb. 15, 2013) ("[i]t simply is not enough for Plaintiff to stand in the shoes of his fellow Union members and to assert their legal rights. . . . Indeed, in any litigation, including a purported class action, the named plaintiff must allege and prove standing in his own right to bring the suit.") (internal citations omitted).

---

[4] Plaintiffs question Defendants' citation of *Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06 Civ. 6198, 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008).  *Rahman* did express some skepticism (albeit in *dicta*) about the right of a defendant to usurp the plaintiff's supposed unilateral "right" to put the class issue before the court.  2008 WL 161230, at *3 (*citing, inter alia, Beauperthuy v. 24 Hour Fitness USA Inc.*, No. 06-0715, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006)).  *Beauperthuy*, which Plaintiffs also rely upon in their Opposition, was subsequently overruled on this issue by *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-41 (9th Cir. 2009) ("Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification . . . . Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question. The only requirement is that the certification question be resolved '[a]t an early practicable time.' The plain language of Rule 23(c)(1)(A) alone defeats Plaintiffs' argument that there is some sort of 'per se rule' that precludes defense motions to deny certification.").

Plaintiffs claim that all of their class allegations interact such that female employees can never "catch up" to male seniority, and that this supposed theory gives them a pass on satisfying standing requirements. Plaintiffs do not cite any authority to support such an argument, but more fundamentally, there are no allegations that seniority plays any role in Plaintiffs' employment opportunities. To the contrary, under the collective bargaining agreement seniority plays no role in pay or promotion issues. Am. Compl. ¶ 61. Furthermore, all employees in a particular job classification are paid at the same rate no matter how long they have held that position. Am. Compl. ¶ 27, 30; Orig. Compl., Ex. 34 at Appendix 1(a).

For the reasons set forth in Defendants' Partial Motion to Dismiss, Plaintiffs cannot assert initial assignment claims in this case, either on an individual or class basis. Even if they had standing to assert these types of claims, they would be untimely, and Plaintiffs could not represent a class in this case as a result.[5]

### C. Plaintiffs' Gender Discrimination Claim Is Based On Abstractions That Cannot Satisfy Rule 23(a)'s Commonality Requirement.

In discussing the commonality standard, Plaintiffs acknowledge that *Dukes* sets a high bar for proving the existence of common questions of law or fact. They seek to defer scrutiny of whether they can meet this standard by reiterating at length their arguments regarding the inappropriateness of early motions. As discussed above, there is no special exemption from scrutiny under *Dukes* at the pleadings stage. To the contrary, if Plaintiffs have not alleged *facts* that raise questions that can be resolved collectively or in one stroke, there is no reason to await a later moment at which they would attempt to prove their allegations. *Dukes*, 131 S. Ct. at 2551.[6]

---

[5] *See* Defendants' Partial Motion to Dismiss and Reply in support thereof.
[6] Although *Dukes* is not a blanket immunity to class certification, it is undisputed that *Dukes* has raised the bar for certifying class actions.

All of the supposedly common practices and "policies" that Plaintiffs identify as purportedly directed by biased direction from senior managers of BAE Norfolk Ship Repair (Pls.' Opp. at 11) demonstrate the observation in *Dukes* that "any competently crafted class complaint literally raises common questions."[7] 131 S. Ct. at 2550. It is not common questions, "even in droves," that warrant class treatment; however, it is the possibility of common *answers* to those questions that justifies trying the claims together. In the context of the claims that Plaintiffs assert, where an individual's claim turns on "the reason for a particular employment decision," the potential for common answers as to the *reasons* for the decisions are crucial. *Id.* at 2552. "Without some glue holding the *reasons* for all those [employment] decisions together, it will be impossible to say that examination of all class members' claims for relief will produce a common answer to the crucial question: *why was I disfavored." Id.* Plaintiffs' Complaint fails this test.

Although Plaintiffs' Opposition is replete with examples of supposed common policies, they could not yield common answers in light of Plaintiffs' own allegations about the level of management at which decisions are made and the absence of common criteria that drive them. Under those circumstances, discovery cannot cure the fatal flaws in Plaintiffs' theories. For example, the First Amended Complaint cites the following allegedly common questions:

- BAE has a policy and/or practice of assigning newly hired female employees to lower-level job classifications. Am. Compl. ¶ 35;

- BAE has a policy and/or practice of permitting subject discretionary decisions to be made about initial assignments, and discriminatory bias against women is the common mode of exercising discretion. Am. Compl. ¶ 37; and

---

[7] Plaintiffs also try to characterize *Dukes* as somehow limited to the particular facts of that case – the nationwide certification of individuals at over 3,000 locations. Although the facts of *Dukes* certainly attracted substantial media attention, nothing on the face of Dukes suggests that its holding is in any way limited or driven by the facts presented. Other courts have denied class certification even in single location cases. *See, e.g., Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011) (denying class certification of hostile environment and disparate treatment claims at single industrial facility).

- Gender discrimination is standard operating procedure and a top-down policy and/or practice at BAE's Norfolk facility, rather than a sporadic occurrence.  Am. Compl. ¶ 121.

These are not specific factual allegations; they are buzz words and conclusory phrases that are belied by the specifics that are alleged, such as the absence of specific criteria for low-level managers to use when making union promotions (Am. Compl. ¶ 61, 76), the lack of specific criteria for initial job assignments (Am. Compl. ¶ 36) and Plaintiffs' contention that these selections are based solely on manager discretion.  This is insufficient to meet the threshold requirement to allege "common questions" that could have "common answers."[8]  *See Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 898 (7th Cir. 2012) (rejecting class certification of purportedly common issues such as "1) Policy/Practice of allowing foremen and superintendents to assign work hours and overtime **without reference to any objective criteria**.  2) Policy/Practice of allowing foremen and supervisors to make promotion decisions **without reference to any objective criteria** . . . .").  Plaintiffs' more specific and factual allegations completely undermine their facile assertion of allegedly common issues for resolution.

Indeed, Plaintiffs do not identify a single promotion decision or criterion that was made or set by a "senior manager" in an allegedly discriminatory way.  To the contrary, all of the promotion decisions that they challenge are made by Craft Supervisors in one of the 22 completely separate shops at BAE Norfolk Ship Repair.  For example, Plaintiff Jackson claims that she was denied an Apprentice Instructor position by Electric Shop Craft Supervisor Frank Bazemore.  Am. Compl. ¶ 206.  Plaintiff Brown also claims that she was denied a promotion by

---

[8] To the extent that Plaintiff identify any actual policies they are neutral policies that only purportedly result in discrimination due to the discretion that low-level managers utilize in applying them.  As discussed above, because these decisions are made by low-level managers without central direction or criteria, there is no way that they pose common questions that may be resolved with common answers. They are at best individual disparate treatment claims that can only be determined by an examination of each situation.

Pipe Shop Craft Supervisor Eric Mallet.  Am. Compl. ¶ 251.  Many of the purportedly discriminatory actions that Plaintiffs challenge are failures or refusals to provide recommendations by union lead persons and other "quasi-supervisors."  For example, Plaintiff Aviles claims that she was denied the opportunity to apply for a lead person position by Billy Wilkins – a union quasi-supervisor.  Am. Compl. ¶ 184.  Although Plaintiffs make numerous sweeping generalizations about purported discriminatory attitudes that govern the actions of all of BAE Norfolk Ship Repair's managers – including its senior managers – they do not identify any specific basis for these claims other than stating a single senior manager purportedly made several unprofessional or inappropriate comments to a few female employees.  Even if those allegations are true, they do not prove that personnel decisions were motivated by gender or that every manager has a negative view of women or applies otherwise neutral policies in a discriminatory fashion – in contradiction of company policy that expressly prohibits them from doing so.  Indeed, Plaintiffs' own allegations contradict this assertion.  *See*, *e.g.*, Am. Compl ¶ 240 (Plaintiff Brown admits that her supervisor, Mr. Baker, used his discretion to request a raise for her and that she was thereafter promoted to Second Class Handyperson.).

Plaintiffs claim that their allegations are akin to those present in *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013) and *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012).  In both of those cases, the plaintiffs alleged that particular neutral company policies were implemented in a discriminatory fashion.  *McReynolds* was a disparate impact case in which the policies being challenged included a common rule that drove the distribution of accounts of departing brokers – a far cry from the allegations of disparate treatment here.  *Scott* involved allegations of bias by regional and higher level managers in applying neutral criteria – also a far cry from the shop-level decisions at issue in this

case.  Although their original Complaint lacked this nuance, the First Amended Complaint seeks to shoehorn this case into the paradigm presented by these two cases.  Those efforts are an attempt to obscure the true nature of the allegations here.  Despite an additional gloss, the First Amended Complaint is challenging decisions to promote employees or make initial job assignments that even Plaintiffs claim are based on criteria that can vary from shop to shop and manager to manager.  For example, Plaintiffs' Opposition claims that there is a policy of "assigning newly hired female employees to lower level job classifications and ranks than equally or less qualified male employees."  Pls.' Opp. at 12.  This is not a policy.  It is just a means of cleverly describing a set of  employment decisions made at the shop level that Plaintiffs specifically contend is made based on no set of common criteria at all beyond than the exercise of individual discretion and purported gender animosity.  *See* Am. Compl. ¶ 36.  No Plaintiff asserts that she was hired at a lower level than male employees or cites any specific instance when this has occurred.

Finally, Plaintiffs assert the circular argument that they must be allowed to pursue their claims as a class action because that is the only way that they can utilize a pattern or practice method of proof to establish their claims.  Plaintiffs, however, have no right to the use of a pattern or practice proof paradigm.  *Chin v. Port Auth. of N.Y. & N.J.,* No. 10-1904-cv(L), 2012 U.S. App. LEXIS 14088 (2d Cir. July 10, 2012); *Parisi v. Goldman Sachs & Co.*, No. 11–5229–cv, 2013 WL 1149751 (2d Cir. Mar. 21, 2013).  It is simply a method of proof used by the courts in class actions to order the proof.  It is not a claim in its own right.  *See Celestine v. Petroleos de Venezuella S.A.*, 266 F.3d 343, 355 (5th Cir. 2001) (a pattern-or practice claim is not a "separate and free-standing cause of action") (internal quotation and citation omitted); *Velez v. Marriott PR Mgmt., Inc.*, 590 F. Supp. 2d 235, 241 (D.P.R. 2008) ("pattern-or-practice discrimination

does not constitute an independent cause of action but rather an additional procedural vehicle

available for establishing disparate discriminatory treatment").  Moreover, there is no basis for

Plaintiffs' claim that the class procedure is the only way to address the alleged harms in this case.

Female employees at BAE Norfolk Ship Repair who believe they have been subject to

discrimination can certainly bring claims for monetary damages and injunctive relief.  42 U.S.C.

§ 2000e-5(g)(1) ("If the court finds that the respondent has intentionally engaged in or is

intentionally engaging in an unlawful employment practice charged in the complaint, the court

may enjoin the respondent from engaging in such unlawful employment practice, and order such

affirmative action as may be appropriate . . . .") (2006).  Injunctive relief for individual employee

claims can include changes to company policy as well as individual relief.

> **D.**     **Plaintiffs' Hostile Environment & Retaliation Claims Are Not Subject To Collective Resolution.**

As discussed at length in Defendants' Opening Brief, the legal elements of hostile work

environment and retaliation claims are by definition highly individualized.  *See* Docket No. 23 at

pp. 21, 24.  For example, the standard for a hostile environment claim is partly objective and

partly subjective; it depends on the individual's subjective reaction to the comments and the

impact they have on her.  That reaction cannot be generalized to a group, certainly not with the

type of comments by peers and low-level supervisors that make up the bulk of Plaintiffs'

allegations.  An employer's liability for such alleged environmental harassment depends on

whether there is a complaint process and how it was utilized, individualized inquiries that go to

the heart of such a claim.  As a result, it was rare for courts to certify these claims prior to *Dukes;*

the standard they must meet post-*Dukes* is even higher.  In fact, all of the cases that Plaintiffs cite

in favor of the proposition that hostile work environment cases are susceptible to class

certification were decided before *Dukes* – some of them decades ago.  Cases decided since *Dukes*

have made it clear that class hostile environment claims are not tenable in circumstances like those alleged here – individual acts of verbal harassment that are supposedly committed by different individuals, in different locations and not part of common group experiences.  *See, e.g., Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).[9] Much like the Plaintiffs in this case, the plaintiffs in *Bennett* worked in a limited number of departments in a large production facility.  *Id*. at 816.  They alleged that racial graffiti, racist language and Confederate symbolism were present throughout the facility and that the company willingly tolerated this behavior.  *Id*.  They also alleged that racial language was used on company radios and email to broadcast racist communications that were heard by numerous black employees.  *Id*.  The court rejected their class hostile environment claims because these alleged events were limited to a particular department, and plaintiffs could not show that this experience was common among the other employees at the plant.  *Id*.  The court concluded that this did not and could not meet the demanding standard for commonality established by *Dukes*. *Id*.[10]

Plaintiffs' Opposition claims that "common policies and practices, as well as discriminatory conduct by high-level managers, resulted in a hostile work environment impacting all putative class members."  Pls.' Opp. at 16.  Plaintiffs do not identify any

---

[9] The plaintiffs in *Bennett* and *Brown v. Nucor*, 576 F.3d 149 (4th Cir. 2009), which is cited by Plaintiffs, were originally part of the same case until their claims were severed.  *Brown* was decided several months prior to *Dukes* and *Bennett* afterward.  The factual allegations in the two cases are very similar.  Even though the *Bennett* plaintiffs were successful in asserting individual claims at trial, their claims were still not appropriate for class certification.

[10] The *Bennett* decision also undermines Plaintiffs' citation to *Jenson v. Eveleth Taconite, Co.*, 139 F.R.D. 657, 662-63 (D. Minn. 1991).  The Eighth Circuit adopted a more stringent standard than applied by the trial court in *Jenson* and in doing so arguably overrules that twenty-year old case. For example, *Jenson* certified a hiring class based solely on the under-representation of female employees in the workforce and the company's subjective hiring process.  The court also certified the harassment class on the purported common question of "whether a reasonable woman would find the work environment hostile."  *Id*. at 665. This clearly does not pass muster under *Dukes* or *Bennett*.

supposedly common policies or practices that created this hostile work environment.  To the contrary, the portions of the First Amended Complaint that they cite refer to instances where a single named management employee allegedly made several inappropriate comments to a few individuals.  Although BAE Norfolk Ship Repair certainly does not condone this behavior, should it be proven, even if all of the alleged statements were made they do not rise to the level of actionable sexual harassment by any measure.  *See, e.g., Dwyer v. Smith*, 867 F.2d 184, 188 (4th Cir. 1989) (affirming judgment as a matter of law where pornography was placed in plaintiff's mailbox; plaintiff was accused of having sex with other employees; and co-workers engaged in graphic sexual conversations in plaintiff's presence); *Naylor v. City of Bowie*, 78 F. Supp. 2d 469 (D. Md. 1999) (summary judgment granted where supervisor touched plaintiff; made comments about taking her home; gave plaintiff money and other gifts; and touched her on numerous occasions); *see also Jenkins v. City of Charlotte*, 2005 WL 1861728, at *10, *13 (W.D.N.C. July 26, 2005) (threats to terminate plaintiff, threats of physical violence, and use of racial slurs did not satisfy the severe and pervasive element of a hostile work environment claim).

The other allegations in the paragraphs of the First Amended Complaint that are cited in Plaintiffs' Opposition are nothing more than generalized claims that "other managers and supervisors" purportedly make sexual comments in the workplace or share "sexual photographs." Am. Compl. ¶ 65-67.  Although the First Amended Complaint does not identify any of these so-called managers and supervisors, the exact quotes used in those paragraphs were in the original Complaint and were attributed to union members – not members of "upper management."  For example, the First Amended Complaint states that "supervisors" stated that "women should be home cooking my dinner while I'm out working" and "you don't look like a pipefitter, you look

like a secretary."  Am. Compl. ¶ 65.  The original Complaint alleged that the first statement was made by Albert White, a "weld supervisor," and the latter by Apprentice Instructor Tom Ehret. Compl. ¶ 104, 239.  Both of these are union jobs.  Compl., Ex. 34 at Appendix 1(a).  The First Amended Complaint does not identify a single sexist or sexual comment made by a Craft Manager and only one comment purportedly made by a Craft Supervisor.  That does not support the rhetorical allegations that all managers operate under a "common policy" of harassment that is directed by upper management.

Plaintiffs claim that the Court cannot consider any of the factual averments in the original Complaint because it is no longer the operative pleading in this case.  Although that Complaint is not the operative pleading, it is a pleading that was filed by counsel pursuant to their Fed. R. Civ. P. 11 obligations.  They cannot and should not be allowed to misrepresent the alleged facts in this case via their First Amended Complaint.  Where, for example, they have previously attributed a quote to a specific individual in the prior Complaint they cannot now pretend that the quote comes from someone else entirely or misrepresent the status of that individual.  Plaintiffs cite *Young v. City of Mt. Ranier*, 238 F.3d 567 (4th Cir. 2001) for the proposition that the Court cannot consider the statements that Plaintiffs now try to hide or obfuscate from their original Complaint.  *Young* addressed whether a *plaintiff* can rely on allegations from a prior complaint that he or she eliminated in an amended complaint.  It did not hold that plaintiffs may misrepresent or run from facts pled in their original complaint absent some explanation.  To the contrary, the Court may properly consider matters in the public record and it is undisputed that the original Complaint is part of the public record.  *See Norfolk Federation of Business Districts v. Dep't. of Housing and Urban Development*, 932 F. Supp. 730, 736-737 (E.D.Va. 1996) (considering public filings utilized in motion to dismiss); *Norfolk Southern Ry. Co. v. Shulimson*

14

*Bros. Co., Inc.*, 1 F. Supp. 2d. 553, 555 n.1 (W.D.N.C. 1998) (relying on dates of death found in public record even though not pled in complaint).

Plaintiffs also claim that Defendants' arguments reflect a "fundamental misunderstanding of the nature of hostile work environment gender-based harassment." Pls.' Opp. at 17. This entire argument is incorrect. Defendants do not argue that Plaintiffs can only be harassed by conduct that is "directed" at them. To the contrary, Defendants argue that even a cursory examination of the *facts alleged by the Plaintiffs* show that there is so much variation in the alleged comments that each Plaintiff allegedly heard or overheard that it is impossible to conclude that all the female employees of BAE Norfolk Ship Repair – including "office workers" – has experienced an identical gender-based or sexual hostile work environment.[11] *See* Opening Br. at p. 23. Each person's experience and reaction would have to be explored, and class treatment of the claims would quickly unravel. Although Plaintiffs seek to make much of the idea that this is a putative class of only 100 individuals,[12] they conveniently ignore the fact that these individuals work in widely dispersed and disparate work environments in dozens of buildings and ships across BAE Norfolk Ship Repair's property (as well as on some U.S. Navy properties). Am. Compl. ¶ 19, 22. They also fail to mention that the named Plaintiffs have only worked in four of the 22 shops at BAE Norfolk Ship Repair and that they have no direct knowledge of the circumstances of the female employees in other shops, nor do they have knowledge of the working conditions of the "office workers," as these named Plaintiffs have never worked in the office. Am. Compl. ¶ 25. All of these factors demonstrate why these kinds

---

[11] Notably, Plaintiffs do not even attempt to justify the inclusion of "office workers" in this putative class, as none of the Plaintiffs has ever worked in the office buildings at BAE Norfolk Ship Repair. This is yet another standing issue that Plaintiffs cannot ignore.

[12] This is a misleading allegation. The First Amended Complaint alleges that there are approximately 100 current female production and maintenance employees at BAE Norfolk Ship Repair. Am. Compl. 101, 103. There are no allegations about how many additional female employees may have worked for BAE Norfolk Ship Repair during the class period.

of claims cannot satisfy the *Dukes* standard that class treatment would permit resolution of all the claims in one stroke. *See Bennett*, 656 F.3d at 816 (affirming denial of certification of harassment claims at a single plant because plaintiffs' evidence was limited to one department).

Plaintiffs' retaliation claims suffer the same flaws as their harassment ones – an effort to turn individual claims with elements that demand a person-by-person look into a claim that could be tried collectively. Plaintiffs apparently claim that it is simply enough for them to say "all women have experienced a common policy of retaliation" even if they have pled no facts to support that broad generalization. There is no allegation concerning the complaint process or any alleged policy that would have broad applicability to the putative class. As discussed at length in Defendants' Opening Brief at pp. 25-26, only one of the Named Plaintiffs even alleges that she experienced retaliation – illustrating that this is far from a common experience for female employees. Moreover, the single example of alleged retaliation cited in Plaintiffs' Opposition demonstrates why these claims are at most individually ill-suited for any sort of collective treatment. Specifically, Named Plaintiff Aviles purportedly had her car tires deflated and another car "keyed" in 2012. Pls.' Opp.at 19. Aviles admits that she does not know who perpetrated these actions or whether that person was even aware of her alleged complaints. Aviles' other allegation is that a co-worker vandalized her work area. Although she claims this happened in "Spring 2013" following a "January 15, 2013" written complaint, she does not allege that the alleged perpetrator  knew about her complaint, that his actions were even related to that complaint, or that a high level policy motivated him. Am. Compl. ¶ 155-56. These allegations do not even constitute an individual claim of retaliation – let alone support a class claim.[13]

---

[13] The sole case that Plaintiffs rely upon for the proposition that retaliation claims may be certified is the 30-year-old decision in *Holsey v. Armour & Co.*, 743 F.2d 199 (4th Cir. 1984). The *Holsey* decision

### E. "Hybrid" Certification Under Rule 23(b)(2) And/or Rule 23(c)(4) Does Not Remedy The Faults In Plaintiffs' Class Theories.

Although Defendants' Motion to Strike did not specifically address the availability of "hybrid" certification under Rule 23(b)(2) and (b)(3), Plaintiffs argue that they will seek a "hybrid" certification following discovery. This theory does not solve the problems presented by Plaintiffs' attempt to present claims with an individual focus in a collective proceeding. Even a "hybrid" certification must satisfy all of the requirements of Rule 23(a), including commonality. Because Plaintiffs' theories do not meet this prerequisite to any consideration of Rule 23(b), it is unnecessary to reach the issue.

Plaintiffs also misstate Defendants' arguments regarding the applicability of Rule 23(c)(4). Plaintiffs' First Amended Complaint states "[a]lternatively, class-wide liability on the Title VII claims and punitive damages liability under the theories advance in this action are properly certified under Rule 23(c)(4) because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner." Am. Compl. ¶ 125. Rule 23(c)(4) does not permit certification of class issues without any reference to the requirements of Rules 23(a) or 23(b) as to those issues. As *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003) makes clear, particular claims within a case may be certified using Rule 23(c)(4) only if those claims satisfy *all* of the requirements of Rule 23(a) and Rule 23(b). This provision is of no use to Plaintiffs in this case, because as described above and

---

contains a minimal analysis of the commonality requirements of Rule 23(a) as they relate to hostile work environment or retaliation claims and the conclusory analysis that it contains is inconsistent with *Dukes*. The court concluded that just because there was a generalized "common question" of retaliation that was enough to meet the Rule 23(a) requirement. As discussed at length above, *Dukes* makes clear that commonality requires far more than that. *Dukes*, 131 S. Ct. at 2551.

in Defendants' Opening Brief none of their claims meets the rigorous requirements of Rule

23(a).[14]

**F.      Plaintiffs' Hostile Work Environment Claims Do Not Satisfy Rule 23(b)(3)'s Predominance Requirement.**

Plaintiffs also seek to obscure the inability of their hostile work environment claim to

satisfy Rule 23(b)(3)'s predominance requirement by citing boilerplate statements from cases

arising in far different factual contexts.  It is true that individual damages issues do not

necessarily preclude a finding of predominance; however, predominance is not satisfied when

the individual issues overwhelm any purported common issues.  *See Berndt v. California Dep't*

*of Corr.*, No. C 03-3174, 2012 WL 950625, at *13 (9th Cir. Mar. 20, 2012) ("While it is often

true that damages calculations alone cannot defeat certification, that principle may not be

applicable here, where the emotional distress damages as to every class member depend on the

individual incidents, and on the kind and extent of [harassing] behavior they were exposed to, as

well as the promptness and efficacy, or lack of efficacy, of defendants' response to any

complaints they may have made.") (internal citation omitted); *Thompson v. Merck*, No. C.A. 01-

1004, 2004 WL 62710, at *4 (E.D. Pa. Jan. 6, 2004) (denying class certification under 23(b)(2)

and 23(b)(3) in part because harassment plaintiffs' claims for mental anguish and pain and

suffering are "uniquely dependent on the subjective and intangible differences of each class

member's individual circumstances.").  That is most certainly the case here.

Plaintiffs also dispute Defendants' argument that *Comcast* and *Dukes* require Plaintiffs to

present a damages model that is susceptible of class-wide proof without vitiating the employer's

---

[14] Plaintiffs apparently do not understand Defendants' argument and assert that Defendants' interpretation of Rule 23(c)(4) is incorrect.  Even if, as Plaintiffs now claim, they only intend to utilize Rule 23(c)(4) certification of common issues in conjunction with the request of injunctive or declaratory (i.e., non-monetary) relief under Rule 23(b)(2), those claims must still meet all of the requirements of Rule 23(a) and 23(b)(2).  Rule 23(c)(4) does not provide an independent basis for certification.

right to individualized hearings for damages.  They further claim that no other courts have adopted this position.  This is not true.  *See Roach v. T.L. Cannon Corp.*, No. 3:10-Civ-0591, 2013 WL 1316452, at *3 (N.D.N.Y. Mar. 29, 2013) (denying certification of wage and hour claims because plaintiffs must offer "a damages model susceptible to measurement across the entire class"); *Cowden v. Parker & Assocs., Inc.*, Civ. A. No. 5:09-323, 2013 WL 2285163, at * 7 (E.D. Ky. May 22, 2013) (denying class certification because damages were too individualized and "individual analyses will overwhelm any common issues in this matter").[15]

As discussed at length above and in Defendants' Memorandum, there are no common facts or issues that could be adjudicated with respect to the damages in a hostile work environment claim in this case – let alone a predominance of those issues over the individual ones.  *See Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003) (individual issues predominate over class issues in alleged hostile work environment class action).  Any hostile work environment damages proceeding would require testimony not only from the putative class member, but also her co-workers and supervisors regarding any comments or actions that

---

[15] Plaintiffs also cite *Jacob v. Duane Reade, Inc*., 293 F.R.D. 578 (S.D.N.Y. 2013) as inapposite.  *Jacob* concluded:

> Comcast requires that a putative class seeking Rule 23(b)(3) certification demonstrate a linkage between its theory of liability and its theory of damages.  The Court must examine this relationship at the class certification stage, even where the inquiry overlaps with, or is 'pertinent to[,] the merits determination.'  After establishing this linkage, certification of both liability and damages together may nevertheless prove untenable in light of *Dukes*, as due process concerns imbue defendants with the right to defend each claim when damages are too individualized.

*Id*. at 588-89.  The *Jacob* court went on to conclude that *Comcast* does not prohibit a liability-only certification and a decertification for damages purposes.  The court warned, however, that "Rule 23(c)(4) cannot cure every ill that troubles a putative class."  *Id*.

occurred, her reaction to them, and the impact on her working conditions. The due process concerns preclude any certification of these types of claims.

## II.    CONCLUSION

Plaintiffs' counsel has sought to make this a class case by stuffing the First Amended Complaint with alleged common questions and common policies. As *Dukes*, *Bolden* and numerous other courts have recognized, it is not difficult to craft common-sounding questions. In order to meet the requirements of Fed. R. Civ. P. 23(a), however, those common questions must have common answers that are susceptible to common proof. As set forth time and again in the Opening Brief and above, the claims and the facts in this case – as pled by Plaintiffs – do not meet this core requirement. As such, the Court should strike the class claims from this case, obviate the enormous waste of resources that futile class proceedings would entail, and move forward with discovery as to Plaintiffs' individual claims.

For all of these reasons, and those set forth in Defendants' Opening Brief, Defendants respectfully request that its Motion to Strike Class Allegations be granted. Defendants also respectfully request oral argument on the instant motion.


Date:  March 10, 2014                              Respectfully submitted,


                                                   /s/  *Carson H. Sullivan*
                                                   Carson H. Sullivan (Va. Bar. No. 45466)
                                                   Barbara Berish Brown (admitted *pro hac vice*)
                                                   PAUL HASTINGS LLP
                                                   875 15th Street, N.W.
                                                   Washington, D.C. 20005
                                                   Telephone: (202) 551-1700
                                                   Facsimile: (202) 551-1705
                                                   carsonsullivan@paulhastings.com
                                                   barbarabrown@paulhastings.com

William C. Barker (admitted *pro hac vice*)
PAUL HASTINGS LLP
1170 Peachtree Street N.E.
Suite 100
Atlanta, GA 30309
Telephone: (404) 815-2400
Facsimile: (404) 815-2424
corybarker@paulhastings.com

*Counsel for Defendants BAE Systems Norfolk Ship, Inc. and BAE Systems Ship Repair, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of March, 2014, I electronically filed this Reply in Support of Defendants' Motion to Strike with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jennifer Abby Reisch
Keasara Maree Williams
Equal Rights Advocates
180 Howard Street
Suite 300
San Francisco, CA  94105
Telephone:  (415) 621-0672
Fax:  (415) 621-6744
jreisch@equalrights.org
kwilliams@equalrights.org

Joshua Friedman
Giselle Brianceschi Schuetz
Rebecca Houlding
Law Offices of Joshua Friedman PC
1050 Seven Oaks Lane
Mamaroneck, NY 10543
Telephone:  (888) 369-1119
Fax:  (866) 731-5553
josh@joshuafriedmanesq.com
giselle@joshuafriedmanesq.com
rebecca@joshuafriedmanesq.com

James Harrell Shoemaker, Jr.
Jason Eric Messersmith
Patricia Ann Melochick
Patten Wornom Hatten & Diamonstein LC
12350 Jefferson Ave
Suite 300
Newport News, VA 23602
Telephone:  (757) 223-4500
Fax:  (888) 664-1784
jshoemaker@pwhd.com
jmessersmith@pwhd.com
tmelochick@pwhd.com

/s/ *Carson H. Sullivan*
Counsel for Defendants