IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| JANET AVILES, JAMIEKA BROWN, STEPHANIE JACKSON, and KEL SHARPE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.: 2:13-cv-00418-AWA-TEM |
| v. | ) ) | |
| BAE SYSTEMS NORFOLK SHIP REPAIR, INC. and BAE SYSTEMS SHIP REPAIR, INC., | ) ) ) | |
| Defendants. | ) ) | |

**SETTLEMENT AGREEMENT AND JOINT STIPULATION**

I.      INTRODUCTION .................................................................................................1

II.     DEFINITIONS.....................................................................................................2

III.    NATURE AND RESOLUTION OF THIS CASE .............................................5

IV.     CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT ONLY ........7

V.      TERMS OF SETTLEMENT ...............................................................................9

        A.     Injunctive Relief Provisions........................................................................9

        B.     Administration of Settlement Fund.........................................................16

        C.     Notice Procedures ....................................................................................18

        D.     Verification Process for Sub-Class B/Monetary Relief Class Members.................21

        E.     Resolution of Verification Disputes .........................................................24

        F.     Requests for Exclusion by Sub-Class B/Monetary Relief Class Members ...........24

        G.     Rescission of Sub-Class B/Monetary Relief Class Member Exclusion
               Statements.................................................................................................26

        H.     Allocation and Distribution of Individual Back Pay Awards to Participating
               Sub-Class B/Monetary Relief Class Members .......................................27

        I.     Cy Pres Donation of Undistributed Funds and Final Accounting...........................30

        J.     Service Payments to Named Plaintiffs and Former Named Plaintiffs .................31

        K.     Class Counsel's Attorneys' Fees and Costs ............................................33

        L.     Dispute Resolution Provisions .................................................................35

        M.     Duties of the Parties Prior to Court Approval ........................................35

        N.     Objections to the Settlement ...................................................................37

        O.     BAE's Right of Revocation........................................................................37

        P.     Duties of the Parties in Connection with Final Approval .......................38

        Q.     Release of Claims .....................................................................................39

        R.     Payment to the Settlement Administrator ...............................................40

        S.     Additional Provisions.................................................................................40

## I.     **INTRODUCTION**

Subject to approval by the United States District Court for the Eastern District of Virginia (the "Court"), this Settlement Agreement and Joint Stipulation ("Settlement Agreement," "Settlement," or "Agreement") sets forth the full and final terms by which the Named Plaintiffs Janet Aviles, Jamieka Brown, Stephanie Jackson, and Kel Sharpe (collectively, "Plaintiffs" or "Class Representatives"), on behalf of a settlement class of themselves and other current and former non-management female employees of BAE Systems Norfolk Ship Repair, Inc. ("BAE," "Defendant," or "Company") (collectively, "the Settlement Class"), represented by their attorneys, the Law Offices of Joshua Friedman, PC and Equal Rights Advocates (collectively, "Class Counsel"), and Defendants BAE Norfolk Ship Repair and BAE Systems, Inc. ("BAE Systems"), represented by their attorneys, Paul Hastings LLP ("Counsel for BAE" or "Counsel for Defendants"), have settled and resolved all claims that have been raised or could have been raised in the litigation captioned, *Janet Aviles et al. v. BAE Systems Norfolk Ship Repair*, Civil Action No. 2:13-cv-00418-AWA-TEM, before District Judge Arenda L. Wright Allen (the "Action").

The Civil Action was instituted on July 29, 2013 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended ("Title VII"). On December 17, 2013, Plaintiffs filed the operative First Amended Complaint alleging violations of Title VII ("Amended Complaint"), and the Defendants filed an Answer denying those allegations. The Class Representatives and Defendants (collectively, "the Parties") desire to enter into this Settlement Agreement to resolve this matter without the burden and expense of further litigation. The Parties agree that this Settlement Agreement and the Court's approval of it shall not constitute a finding of liability. The Settlement Agreement was negotiated at arm's length by experienced counsel, and, in the opinion of the Parties and their counsel, fairly and adequately addresses the claims raised by the Amended Complaint.

## II.   **DEFINITIONS**

The terms described below shall have the meanings defined in this Section wherever used in this Agreement and for the purposes of this Agreement only, including in all of its Exhibits and the Notice of Class Action Settlement.

1.   "Action" means the civil action entitled *Janet Aviles et al. v. BAE Systems Norfolk Ship Repair, Inc. et al.*, Case No. 2:13-cv-00418-AWA-TEM, pending before the United States District Court for the Eastern District of Virginia.

2.   "Agreement" or "Settlement" or "Settlement Agreement" means this Agreement and Joint Stipulation, including all Exhibits attached hereto.

3.   "Bargaining Unit Position" means any Non-Management Position at the Company covered by the terms of any Collective Bargaining Agreement.

4.   "Class," "Proposed Settlement Class" or "Settlement Class" means a class certified by the Court for settlement purposes pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) consisting of all women who currently hold, or who have held, a Non-Management Position at BAE Systems Norfolk Ship Repair, Inc. at any time from the start of the Settlement Class Period, October 5, 2007 through December 31, 2014 (the "Settlement Class Period") (each individual together, the "Proposed Settlement Class Members" or "Settlement Class Members" and each a "Proposed Settlement Class Member" or "Settlement Class Member"), excluding those individuals who previously entered into releases of claims as part of individual agreements with BAE that did not carve out an exception for this Action at any time prior to the Preliminary Approval Date.  The names of the Settlement Class Members will be provided to Class Counsel and the Settlement Administrator on a Confidential basis.

5.   "Class Counsel" means the Law Offices of Joshua Friedman PC and Equal Rights Advocates.

6.   "Class Monetary Relief" means the Three Million Dollars ($3,000,000.00) to be paid by the Company on behalf of itself and all Defendants pursuant to this Settlement from which the Settlement Administrator will pay all individual Settlement Share (backpay) payments to

2

Participating Sub-Class B/Monetary Relief Class Members (including the Employer Payroll Taxes due on such payments), all Service Payments to Former Named Plaintiffs, and all Settlement Administrator fees and expenses.

       7.   "Collective Bargaining Agreement" means any collective bargaining agreement between the Company and Local 684 of the International Brotherhood of Boilermakers, AFL-CIO (the "Union") that is in effect at any time during the term of this Agreement.

       8.   "Company" means BAE Systems Norfolk Ship Repair, Inc.

       9.   "Counsel for Defendants" or "Defense Counsel" means the law firm of Paul Hastings LLP.

      10. "Court" means the United States District Court for the Eastern District of Virginia.

      11. "Defendants" means BAE Systems Norfolk Ship Repair, Inc. and BAE Systems Ship Repair, Inc.

      12. "Employer Payroll Taxes" means the legally required employer contributions to Social Security, Medicare, Federal unemployment taxes and State unemployment taxes.

      13. "Exclusion Statement" means the statement contained in the form attached hereto as Exhibit 3 that a Sub-Class B/Monetary Relief Class Member must submit to exclude herself from the monetary relief provisions and Release of Claims pursuant to this Settlement.

      14. "Effective Date" means the Final Approval Date, provided that Defendants have not exercised their right to rescind the Settlement pursuant to Paragraph 97, unless a Class Member timely objects to the Settlement, in which case "Effective Date" means the last of the following dates, as applicable: (i) the applicable date for seeking appellate review of the Court's final approval of the Settlement has passed without a timely appeal or request for review having been made; or, if appellate review is sought, (ii) the date on which the United States Court of Appeals for the Fourth Circuit has rendered a final judgment affirming the District Court's final approval of Settlement without material modification, and either the time for any further review or further request for rehearing has expired; or (iii) if a petition for review by the United States

Supreme Court is timely filed, the date that the Supreme Court declines to grant the petition or renders its final decision affirming approval of the Settlement.

15. "Final Approval Date" or "Final Approval" means the date of entry by the Court of the Final Approval Order for this Settlement.

16. "Final Fairness Hearing" means the hearing to be conducted by the Court to determine whether to finally approve and implement the terms of this Settlement.

17. "Former Named Plaintiffs" means Ann Marie Cutrell, Kimberly Davis, Alfreda Dupree, Sheila Fields, and Rita Hobbs, who were named as plaintiffs in the initial complaint filed in this Action on July 29, 2013, but who are not Named Plaintiffs in the Amended Complaint.

18. "Named Plaintiffs" or "Class Representatives" means Janet Aviles, Jamieka Brown, Stephanie Jackson and Kel Sharpe, who are named as plaintiffs in the Amended Complaint.

19. "Non-Management Position" means a Bargaining Unit Position, as well as any other non-supervisory, non-exempt position outside of the Bargaining Unit or any non-managerial exempt position outside of the Bargaining Unit.

20. "Notice of Class Action Settlement" means the Notice of Pendency of Class Action Settlement substantively in the form of the document attached hereto as Exhibit 1, as approved by the Court, which the Settlement Administrator will mail to proposed Sub-Class B/Monetary Relief Class Members in accordance with Paragraph 48(c) of this Agreement.

21. "Notice Packet" means the Notice of Class Action Settlement, the Verification Form and instructions, and the Exclusion Statement form and instructions to be sent to all Sub-Class B/Monetary Relief Class Members once the Court grants preliminary approval of the Settlement.

22. "Participating Sub-Class B/Monetary Relief Class Member" means any eligible Settlement Class Member who held a Bargaining Unit Position during the Settlement Class Period and is deemed eligible to receive a portion of the monetary relief from the Settlement Fund Account by completing the verification process as described in Paragraph 50 of this Agreement.

23. "Parties" means the Named Plaintiffs and Defendants.

24. "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

25. "Preliminary Approval Order" means the order entered by the Court preliminarily approving the terms of the Settlement, certifying the Settlement Class, scheduling a Final Fairness Hearing, and directing the mailing to proposed Sub-Class B/Monetary Relief Class members of the Notice of Class Action Settlement, including the Verification Form and Exclusion Statement attached hereto.

26. "Settlement Administrator" means Settlement Services, Inc. (SSI) (or an administrator mutually agreed to by the Parties and approved by the Court if SSI for some reason cannot serve).

27. "Settlement Fund Account" means the interest-bearing account into which the Settlement Administrator shall deposit the Class Monetary Relief.

28. "Verification Form" means a document substantively in the form attached hereto as Exhibit 2, which shall be included in the Notice Packets mailed to proposed Sub-Class B/Monetary Relief Class members.  Sub-Class B/Monetary Relief Class Members must submit the Verification Form or otherwise complete the verification process described in Paragraph 50 of this Agreement in order to receive individual Settlement Share (backpay) payments from the Settlement Fund Account.

III.     **NATURE AND RESOLUTION OF THIS CASE**

29. This Settlement resolves the class action Complaint against Defendants, captioned Janet Aviles et al. v. BAE Systems Norfolk Ship Repair, Inc. et al., in the United States District Court for the Eastern District of Virginia, Case No. 2:13-cv-00418-AWA-TEM.  The original Complaint was filed on July 29, 2013 and the First Amended Complaint was filed on December 17, 2013.  In their First Amended Complaint, Plaintiffs Janet Aviles, Jamieka Brown, Stephanie Jackson and Kel Sharpe brought claims on behalf of themselves and a proposed class of women employed at BAE's Norfolk shipyard under Title VII, alleging that female employees in production and maintenance (Bargaining Unit) positions at the Company were subject to policies

5

and/or practices that discriminated against women with respect to pay, promotions, and assignments, and that all non-management female employees at the Company's Norfolk shipyard were subject to a sexually hostile work environment and a policy or practice of retaliating against female employees for raising complaints of gender-based discrimination and/or harassment.

30. Plaintiffs believe their allegations are meritorious, and that the Action is appropriate for class action treatment under Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4).

31. Defendants deny any liability or wrongdoing of any kind associated with the claims alleged and contend that, for any purpose other than this Settlement, this Action is not appropriate for class action treatment. Defendants further contend that they have not violated Title VII or any other law or regulation.

32. The Parties exchanged disclosures required by Federal Rule of Civil Procedure 26, and during the course of the litigation, engaged in extensive discovery and investigation of Plaintiffs' claims and Defendants' defenses. Defendants took the depositions of each of the Named Plaintiffs, obtained written discovery responses from the Named Plaintiffs, and reviewed thousands of pages of documents produced by Plaintiffs in response to requests for production. Plaintiffs served seven sets of document requests and interrogatories on Defendants, took depositions of corporate witnesses pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and obtained over 20,000 pages of data and documents from Defendants. The Parties also each retained expert witnesses to analyze and prepare reports regarding alleged gender differences in compensation and initial placement at hire, promotion and other issues relevant to potential liability and damages.

33. After good-faith, arm's-length negotiations over many months, the Parties reached an agreement to settle the Action pursuant to the terms and conditions set forth below. The Parties agree that the Settlement described in this Agreement is fair, reasonable, and adequate. Counsel for all Parties have decades of experience litigating employment discrimination actions. Based on their own independent investigation and evaluation, Class Counsel believe that the Settlement set forth in this Agreement is in the best interests of the Proposed Settlement Class in light of all

known facts and circumstances, including the risk of significant delay, because it provides certain, prompt, and extensive relief for the Proposed Settlement Class and avoids the risk of future litigation. Defendants and Defendants' Counsel also agree that the Settlement is fair, reasonable, and adequate.

## IV. CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT ONLY

34. In the Amended Complaint in this Action, Named Plaintiffs alleged that BAE engaged in a pattern or practice of systemic sex discrimination, hostile work environment harassment based on sex, and retaliation against female employees who complained about discrimination, in violation of Title VII. The Named Plaintiffs sought to certify the case as a class action under Federal Rules of Civil Procedure 23(b)(2) and/or (b)(3), and prayed for declaratory and injunctive relief (as well as punitive damages) for the class hostile work environment and retaliation claims on behalf of all female employees in Non-Management Positions at the Company's Norfolk facility. Named Plaintiffs also sought monetary relief in the form of back pay for the class claim of systemic sex discrimination in assignments, pay, and promotions on behalf of women employed in Bargaining Unit Positions.

35. This Agreement provides for substantial reforms to, and the augmentation of, the process through which all employees at the Company's Norfolk facility may complain of discrimination or harassment and the manner in which those complaints will be investigated and resolved. It is a dominant purpose of this Agreement that all members of the Proposed Settlement Class benefit from these changes to the Company's policies, practices, and procedures, regardless of whether they hold or have held a Non-Management Position that is or is not a Bargaining Unit Position.

36. Sub-Class A/Injunctive Relief Class: For purposes of ensuring that all female employees in Non-Management Positions are entitled to the benefit of the Injunctive Relief Provisions set forth in Section V.A. of this Agreement, the Parties seek Rule 23(b)(2) certification of an injunctive-relief-only Sub-Class A, which would be comprised of all female individuals who worked at BAE Systems Norfolk Ship Repair, Inc. in a Non-Management Position or Bargaining

Unit Position during the Settlement Class Period.  This sub-class is limited to the injunctive relief provided by the Settlement because the monetary relief under this Settlement is being provided solely to benefit those advancing claims of discrimination in pay, promotions, and assignments — a claim that was not advanced by or on behalf of those women who have not been employed in a Bargaining Unit position during the Settlement Class Period.

37. As to Sub-Class A, the provisions of this Agreement resolve fully and finally any claim made with respect to class-wide injury arising from alleged sexual harassment or retaliation by Defendants as alleged in the Amended Complaint.  However, notwithstanding any other provision of this Agreement, or any application of the doctrines of res judicata or collateral estoppel, each individual member of Sub-Class A shall retain any rights that she may otherwise have had in the absence of this Agreement to bring an action alleging that she was the victim of discrimination, and to obtain whatever individualized economic or non-economic relief for such alleged injury as the evidence may support.  Such rights shall be unaffected by this Agreement.

38. Sub-Class B/Monetary Relief Class:  In addition to the non-economic programmatic and injunctive relief set forth in the Injunctive Relief Provisions in Section V.A., which is applicable to all members of the Proposed Settlement Class, this Agreement provides for monetary relief applicable only to those Class Members who worked in a Bargaining Unit Position during the Settlement Class Period.  The Parties agree that a Sub-Class composed exclusively of these Bargaining Unit Class Members, denominated Sub-Class B, should be certified for settlement purposes only pursuant to Rule 23(b)(3), with the rights and responsibilities described herein.

39. Standards for Certification of Settlement Class(es):  The Parties agree that the Court shall certify the Settlement Class(es) described herein solely for the purpose of approving and implementing the terms of this Settlement.  The Parties agree that courts have applied modified standards to the certification of classes for settlement purposes.  The Parties agree that, to the extent this Agreement is deemed void, or the Effective Date does not occur, Defendants do not waive, but rather expressly retain and reserve all rights to challenge any and all claims and

allegations asserted by the Class Representatives in the Amended Complaint on procedural and substantive grounds, including, without limitation, the ability to challenge or oppose class action treatment on any grounds and to assert any and all potential defenses or privileges. The Parties further agree that, if the Action were to proceed, they will not present any argument based on this Settlement Agreement, or any exhibit thereto or any document executed pursuant to this Agreement. Additionally, neither the Settlement Agreement itself nor any act performed or document executed pursuant to or in furtherance of the Agreement is or may be used as evidence regarding the appropriateness of class certification or as evidence of the validity of any claim or defense asserted by any party in the Action.

V.    **TERMS OF SETTLEMENT**

A. **Injunctive Relief Provisions**

40. Notice of External Hiring

(a)    It is the current practice of the Company to include in each external job posting for open Bargaining Unit positions the required and preferred skills necessary for each such position. Each posting states the shop, position and classification level or levels (if a specific classification level or levels is sought) of the open job. The Company agrees to continue this practice.

(b)    Within twenty-four (24) hours of the posting, job announcements will be provided via email to the National Center for Women's Employment Equity (NCWEE), a project of the non-profit organization Wider Opportunities for Women, (see http://www.wowonline.org/women-and-work-project/), for distribution to relevant tradeswomen's organizations. This practice will begin within fourteen (14) days after the Effective Date.

(c)    Advertisements for open jobs at the Company, regardless of the advertising medium, will not state or otherwise imply that women are excluded from opportunities.

(d)    Wherever possible (considering space or other constraints in the advertising medium), the Company will emphasize through images that women are encouraged to apply.

41. Bargaining Unit Promotions

(a)     The Parties agree to the following good faith methods to be adopted with the aim of achieving the goals set forth in the Affirmative Action Plan ("AAP") for female representation in Bargaining Unit Positions that is in effect or may be in effect during the time period the injunctive relief provisions of this Agreement are in place.

(b)     Promotion decisions for all Bargaining Unit Positions will be based on job-related, non-discriminatory criteria to be determined by the Company (the "Relevant Criteria for Promotion") and shared with Plaintiffs for review, input and proposed changes.  Though the Company has the ultimate authority over the Relevant Criteria for Promotion in each shop, the Relevant Criteria for Promotion for each particular shop will be provided to a panel from each shop for review, input and proposed changes.  The panels will consist of the individuals who currently make up the Craft Evaluation Committees for each shop.

(c)     The Relevant Criteria for Promotion shall be established within 120 days of the date of the Effective Date. Within seven (7) days thereafter, the Relevant Criteria for Promotion will be made available in writing to all employees of the Company by publication on the Company's internal intranet.

(i)     "Promotion" as used herein, means a change in job title (e.g., Helper to Handyperson), as well as step progressions (e.g., Third to Second Class Boilermaker), under the Collective Bargaining Agreement.

(ii)     To the extent it is practicable in light of the particular trade and/or classification change, objective tests to determine demonstrated skill and trade knowledge (practical theory) will be made part of the Relevant Criteria for Promotion to be determined pursuant to Paragraph 41(b) above.  For example, moving from Welder Third Class to Welder Second Class may require a welding certification test (demonstrated skill) and trade knowledge test (practical theory).

       (iii)    To the extent it is practicable in light of the particular trade and/or classification change, written examinations will be made part of the Relevant Criteria for Promotion to be determined pursuant to Paragraph 41(b) above.

       (iv)    To the extent that certain positions require leadership skills, teaching skills, or both, those skills will be set forth with as much specificity as possible (with examples of desired behaviors, where feasible) in the Relevant Criteria for Promotion.

       (v)    For the tests and examinations detailed in Paragraphs 41(c)(ii) and 41(c)(iii), the passing grades and/or standards will be included in the Relevant Criteria for Promotion.  The results of the tests and examinations shall be preserved for no less than two (2) years from the date of the test or examination.

       (vi)    For all Bargaining Unit Positions, promotion time benchmarks will also be included in the Relevant Criteria for Promotion to be determined pursuant to Paragraph 41(b) above.  Promotion time benchmarks are informational benchmarks and not time in grade requirements.  However, if a bargaining unit employee has not been promoted within ninety (90) days of any particular promotion time benchmark, after the promotion time benchmark has passed the employee may request to be assessed pursuant to the Relevant Criteria for Promotion.  The assessment will be performed as soon as practicable after the employee's request, but no later than ninety (90) days after such request.  If the assessment is performed and the employee is not promoted, or if the employee does not ask to be assessed after the promotion time benchmark has passed, at the employee's request, the employee's Craft Supervisor II will explain to the employee why the employee has not been promoted, and must set out in writing what the employee must accomplish in order to progress.

       (d)    Supervisors will not be allowed to impose additional subjective requirements beyond the provisions of the Collective Bargaining Agreement and the Relevant Criteria for Promotion.  Candidates for promotion will not be required to obtain written recommendations as a prerequisite for promotion.

(e)      The Relevant Criteria for Promotion can be amended from time to time based on business needs, subject to review by the panels described in Paragraph 41(b) above.

(f)      Crew Leader, Lead Person, Labor Coordinator and Apprentice Instructor openings will be posted in all shops when there is a business need to fill such a position in accordance with the process specified in the Collective Bargaining Agreement.  The required qualifications, preferred skills and other relevant criteria will be set forth in the posting. Candidates will not be pre-selected for these openings.

42. Promotions to Non-Bargaining Unit Positions

(a)      The Parties agree to the following good faith methods to be adopted with the aim of achieving the goals set forth in the Company's current Affirmative Action Plan (AAP) for female representation in non-union supervisory and management positions in or over the production and maintenance shops:

(b)      Open Craft Supervisor and Craft Manager positions will continue to be posted.

(c)      Job announcements will be provided via email within twenty-four (24) hours of the posting to the National Center for Women's Employment Equity, for distribution to relevant tradeswomen's organizations.

(d)      Diverse panels of interviewers with at least one female representative will be utilized to the extent feasible in selecting Craft Supervisors and Craft Managers.

(e)      Information regarding Craft Supervisor and Craft Manager positions and what is required to obtain them will be made available to employees via the Company's intranet within ninety (90) days after the Effective Date of the Settlement.

(f)      The Company will establish a mentorship program for female employees interested in these management positions within 120 days after the Effective Date of the Settlement.

(g)      Senior Management will support all initiatives developed as part of this Paragraph 41.

43. Training and Apprenticeship

    (a)    The Company will continue to offer women the opportunity to apply for the Apprentice Program.  Due to economic and other conditions, Apprentice classes are not open for application every year; however, when they are open for application, the Company agrees to provide written notice on its intranet and in the shops of the requirements for entry into the Program and to allow at least fourteen (14) days for submission of applications prior to selecting candidates.

    (i)    The Company will foster application by women by providing informational sessions at least one week prior to the posting.

    (ii)    The Company will take steps to ensure that during the Apprentice Program, women are offered work hours on ships proportionately to their presence in the Program whenever feasible.

    (iii)    Graduates of the Apprentice Program will be rated in accordance with and as negotiated in the Collective Bargaining Agreement (currently First Class Journeyman Mechanic).

    (b)    To the extent the Pipe Shop Trainee Program continues to exist or other trainee programs are developed in response to business needs, the Company will continue to offer women the opportunity to apply for these programs.  Eligibility criteria are contained in the Collective Bargaining Agreement, but will be posted in the shops at least two (2) weeks in advance of the time that applications to any such programs are to be submitted.

    (c)    The Company will educate women in the Labor Shop about the opportunity to apply for positions outside the Labor Shop.  Special efforts will be made to educate women in the Labor Shop about the Apprentice Program and any existing Trainee Programs through educational sessions to be provided on a semi-annual basis.

44. Accountability

    (a)    Top Company management will be tasked with making Craft Managers and Craft Supervisors familiar with the injunctive relief provisions of this Settlement and will

communicate its support for the requirements and goals of the injunctive relief provisions of the Settlement in writing within fourteen (14) days after the Effective Date of the Settlement.

(b)     The Company will devise and implement a system of reward for compliance and/or negative consequences for not complying with the obligations under the injunctive relief provision of this Agreement.

(c)     The Company will educate all supervisors and managers about the changes to processes that are mandated by this Agreement within thirty (30) days after the Effective Date of the Settlement.

(d)     Training for all employees will be conducted on an annual basis[1] and will include a review of the Company's policies prohibiting gender discrimination, sexual harassment and retaliation against anyone who has made or makes a complaint.  This training will also include a review of the Company's complaint procedures and information regarding to whom complaints may be made.

(e)     The Human Resources function will be run in such a way that it will be credible and effective, and come to decisions that will be accepted as well-founded.  Trained personnel will be the avenues for complaint and conflict resolution for employees.

(i)     All human resources professionals at the Company will receive specialized training in documenting, investigating and remediating claims of gender discrimination, harassment, and retaliation.  Such training shall include guidance regarding the assessment of credibility.

(ii)     The Company will document complaints (including maintaining any written complaints provided by complainants), and findings so that repeat problems can be identified, including a log of the date, allegations, witnesses interviewed, findings, and remedy for each complaint.  Summaries of information on the log, without names for privacy purposes, and

---

[1] The Parties acknowledge and agree that training that took place in March 2015 prior to this Agreement being signed but well after this provision was agreed to counts as part of the annual training required under this subparagraph.

including number of witnesses interviewed, will be reported periodically to Class Counsel as set forth in Paragraph 45 below.

(iii)    Investigative findings will be reported to complainants, orally or in writing as the Company chooses in its sole discretion, after the investigations are completed.  Any such summary of the investigative findings may be limited in details as necessary to protect the confidentiality and privacy of employees, thus maintaining the integrity of the investigative process.

(f)    The Parties further agree to the following steps and/or actions related to the complaint and investigation procedure:

(i)    Internal complainants will be advised that they have a right to name witnesses whom they believe should be interviewed.

(ii)    Progressive discipline will be imposed for violations of the Company's anti-harassment policy, the nature of that discipline to depend on the circumstances, including whether the comment/conduct is aimed at an individual or is "environmental," e.g., overheard remarks.

(iii)    Supervisors who are found to have engaged in quid pro quo sexual harassment will not make personnel decisions affecting female employees, and will be disciplined, up to and including termination, depending on the circumstances.

(iv)    If evidence concerning prior quid pro quo sexual harassment allegedly committed by supervisors within the past twelve (12) months is provided by Class Counsel within thirty (30) days after the date the Effective Date of the Settlement, the Company will review such evidence and review the alleged harassers' personnel files, and if such evidence and review suggests that the supervisor may have engaged in quid pro quo sexual harassment, will undertake a thorough investigation.

45. Reporting

(a)    Two reports will be made by the Company to Class Counsel. The first report shall be made one year following finalization of the Relevant Criteria for Promotion. The second

report shall be made thirty (30) days prior to the expiration of the Term of this Agreement. The reports shall contain the following information:

(b)     Number of gender discrimination and sexual harassment complaints made by bargaining unit employees and non-managerial office (i.e., non-bargaining unit) employees, and their resolution as described in Paragraph 44(e) above.

(c)     Total number of transfers out of the Labor Shop by gender and shop to which the person is transferred.

(d)     Total number of placements of Apprentice program graduates, by gender, job title, class, shop and date.

(e)     The same data provided in Bates 12090, which shall cover a one year period. The following explanatory information will be provided: (i) what codes in what fields should be used to identify people (male as well as female) in the relevant population;(ii) what codes in what fields should be used to identify a Promotion as defined above; (iii) what codes in what fields should be used to define a hire, a rehire, and a termination (including not just the fact of such events, but also the date on which each occurred).

46. No retaliation. There will be an additional level of scrutiny if management proposes to terminate or demote any named Plaintiff or former named Plaintiff during the term of this Agreement.

### B. Administration of Settlement Fund

47. Establishment of a Settlement Fund

(a)     No later than twenty (20) business days after the Preliminary Approval Date, the Company, on behalf of both Defendants, shall transmit to the Settlement Administrator three million dollars ($3,000,000.00) of Class Monetary Relief for the formation of a Settlement Fund Account.

(b)     Within five (5) business days after the Company transmits the payment of Class Monetary Relief, the Settlement Administrator shall deposit the entire amount into an interest-bearing account approved by Class Counsel with a unique Taxpayer Identification Number

(the "Settlement Fund Account").  Except in the event that Final Approval is not granted by the Court, any interest accrued in the Settlement Fund Account prior to the distribution of individual Settlement Shares shall be included for distribution to Participating Sub-Class B/Monetary Relief Class Members as part of their backpay awards, as described in Paragraph 76 below and distributed according to the procedures set forth therein.

(c)     The Settlement Fund Account will constitute a qualified settlement fund pursuant to Internal Revenue Code Section 1.468B-1.  Upon opening of the account, the Company shall execute an election statement provided by the Settlement Administrator which shall be affixed to the initial tax return of the Settlement Fund Account in order to establish the state date of the Settlement Fund Account.  The Settlement Fund Account will be created, managed, and disbursed by the Settlement Administrator under the supervision of Class Counsel and Counsel for Defendants.  The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Settlement Fund Account.  The Company will have no responsibilities or liabilities with respect to the administration of the Settlement Fund Account, including any distribution therefrom and the reporting for such distribution.

(d)     Upon receipt of the Class Monetary Relief by the Settlement Administrator, the Company shall have no further monetary obligations with respect to the Settlement Class Members pursuant to the Settlement (including Former Named Plaintiffs and Sub-Class B/Monetary Relief Class Members who do not file timely and valid Exclusion Statements), or to the Settlement Administrator pursuant to this Settlement.

(e)     The Settlement Fund Account shall be used for the sole purpose of paying (i) the Settlement Shares of eligible Participating Sub-Class B/Monetary Relief Class Members, including the Employer Payroll Taxes associated with those payments, (ii) service payments to Former Named Plaintiffs, and (iii) all settlement administration fees and expenses incurred by the Settlement Administrator in accordance with the provisions of this Settlement Agreement.  The Settlement Administrator shall distribute the Class Monetary Relief (including any interest

generated by the Settlement Fund Account) pursuant to the provisions below and on the time schedule described herein and pursuant to the orders of the Court.

(f)     In the event of revocation of this Settlement pursuant to Paragraph 97 below, or this Settlement Agreement is not granted final approval by the Court, or the Settlement Agreement is reversed on appeal, or is otherwise rendered null and void for any reason, the Settlement Administrator shall have the obligation to return to the Company the entire Class Monetary Relief (including all income and/or interest generated by the Settlement Fund Account), minus the Settlement Administrator's reasonable and documented incurred fees and costs of administering the Settlement up to the date it receives notice that the Settlement will not take effect, within five (5) business days of receiving such notice.

C.  **Notice Procedures**

48. Class Member Information and Notice Packets

(a)     Within twenty (20) calendar days after the Preliminary Approval Date, the Company shall provide to the Settlement Administrator a list of all Proposed Settlement Class Members that includes the following information for each individual: (i) name, (ii) last known address, (iii) last known telephone number (if any), (iv) Social Security number, (v) the date of hire and, if applicable, most recent date of rehire by the Company, (vi) the date of termination from the Company (if applicable) and (vii) current or last known job title, position, or classification at BAE.  The Settlement Administrator will maintain this list and the information contained therein in strict confidence and shall not disclose it to anyone except that the Settlement Administrator may disclose the above information for proposed Sub-Class B/Monetary Relief Class Members to the extent necessary for purposes of administering this Settlement. Class Counsel may provide updates on any addresses or contact information provided by proposed Sub-Class B/Monetary Relief Class members to the Settlement Administrator, and such updates shall be incorporated into the list.

(b)     Within twenty calendar (20) days after entry of the Preliminary Approval Order, the Settlement Administrator shall set up a web page to provide Class Members with

18

information regarding the Settlement, including the date and location of the Final Fairness Hearing, the deadline for Sub-Class B/Monetary Relief Class Members to complete the verification process described in Paragraph 50 below or submit an Exclusion Statement, and the deadline for filing any objections to the Settlement with the Court.  Class Counsel and Counsel for Defendants shall approve the contents of the web page before it goes live.  The Settlement Administrator shall ensure that the web page is set up to allow Sub-Class B/Monetary Relief Class Members to complete the verification process online pursuant to Paragraph 50(b).  The Settlement Administrator will also establish a toll-free number for purposes of administering the Settlement and communicating with Class Members.

(c)     Within thirty (30) calendar days after receipt of the Proposed Class Member list information described above, the Settlement Administrator shall perform reasonably diligent skip tracing and mail the Notice of Class Action Settlement, in substantively the form attached hereto as Exhibit 1, and as approved by the Court, to all proposed Sub-Class B/Monetary Relief Class members, by regular first class mail, postage prepaid with a postmark date stamped on the envelope of the Notice.  At the same time, the Settlement Administrator shall mail to all Sub-Class B/Monetary Relief Class Members, by regular first-class U.S. mail, the Notice of Class Action Settlement, the Verification Form and instructions, the Exclusion Statement, and a pre-addressed, postage-paid envelope ("the Notice Packet").  The Verification Form and Exclusion Statement shall be provided in substantively the same form as Exhibits 2 and 3, respectively, attached hereto and subject to the Court's approval.  These documents shall be placed in an envelope which states on the front:  "IMPORTANT: DO NOT DISCARD.  Please review the enclosed materials.  You may be eligible for payment under a proposed settlement."

(d)     The Parties intend to provide notice of the Settlement to all Proposed Sub-Class B/Monetary Relief Class Members, to the extent practicable.  In order to provide the best notice practicable, the Settlement Administrator will do the following before mailing the Notice Packets: (1) run the list of all Proposed Settlement Class Members through the U.S. Postal Service's National Change of Address database (NCOA); and (2) perform address searches using

19

public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

(e)     If envelopes from the mailing of the Notice Packets are returned with forwarding addresses, the Settlement Administrator will re-mail the Notice of Class Action Settlement (and Verification form and Exclusion Statement form, if applicable) to the new address within three (3) business days of receiving the returned envelope.

(f)     In the event that a Notice Packet is returned to the Settlement Administrator by the U.S. Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked Return to Sender, the Settlement Administrator will perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Proposed Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Notice Packet within three (3) business days of receiving the newly ascertained address; if no updated address is obtained for that Proposed Settlement Class Member, the Settlement Administrator shall attempt to reach the non-responders by telephone.

(g)     With respect to Notice Packet envelopes returned undeliverable, the Settlement Administrator will also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Proposed Settlement Class Members to obtain their current addresses.

(h)     The Settlement Administrator shall provide to Class Counsel and Counsel for BAE at least ten (10) business days prior to the date of the Final Fairness Hearing, a list of Proposed Settlement Class Members whose notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

**D.  Verification Process for Sub-Class B/Monetary Relief Class Members**

49. Only those Sub-Class B/Monetary Relief Class Members who complete the verification process described herein shall be eligible to receive individual Settlement Share

payments from the Settlement Fund Account (the "Participating Sub-Class B/Monetary Relief Class Members").

50. Participating Sub-Class B/Monetary Relief Class Members may complete the verification process in any of the following alternative ways:

(a)     By submitting to the Settlement Administrator a completed and signed Verification Form (attached as Exhibit 2) by the postmark deadline indicated in the Notice of Class Action Settlement and Verification Form;

(b)     By logging onto the website created by the Settlement Administrator as provided in Paragraph 48(b), and responding to questions verifying the information provided in the Verification Form; or

(c)     Verifying the same information provided in the Verification Form via telephone with the Settlement Administrator.

51. The Settlement Administrator shall make Verification Forms available to any Sub-Class B/Monetary Relief Class Members who submit oral, e-mail or written requests for an additional copy of the Verification Form.  The Settlement Administrator shall mail the requested Verification Form via first-class U.S. mail within two (2) business days after receiving any such request.

52. If the Company, or its Counsel, receives requests for Verification Forms or for information regarding the Settlement from any Proposed Settlement Class Member, it shall refer such requestors to the toll-free number and website address established by the Settlement Administrator for the purpose of administering this Settlement and inform the requestors that any requests for Verification Forms or information should be directed to the Settlement Administrator.

53. Sub-Class B/Monetary Relief Class Members shall have fifty (50) calendar days from the initial mailing of the Notice Packets to mail their Verification Form to the Settlement Administrator.  After that time, the verification process will be open for an additional ten (10) days, during which time Sub-Class B/Monetary Relief Members may complete the verification process via the two other methods detailed in Paragraph 50 above.  In all events, the required

verification must be completed within sixty (60) calendar days from the initial mailing of the Notice Packets, including any corrections to deficient Verification Forms.

54. The Settlement Administrator shall send a postcard reminder to Sub-Class B/Monetary Relief Class Members who have not completed the verification process within twenty-five (25) days after the Settlement Administrator initially mails the Notice Packets.

55. After the date on which Verification Forms are due to be submitted, and for an additional ten (10) days, the Settlement Administrator will attempt to call individuals in the Monetary Relief Class who have not completed the verification process through one of the three alternative ways provided in Paragraph 50.  Upon reaching these individuals directly, the Settlement Administrator will inform them that they may complete the verification process orally on the phone call or online by logging onto the webpage created by the Settlement Administrator.

56. All Verification Forms must be signed under penalty of perjury and Verifications made via the website or phone call with the Settlement Administrator must also be made or stated under penalty of perjury.  Failure to complete the verification process shall bar the Sub-Class B/Monetary Relief Class Member from receiving monetary compensation from the Settlement Fund Account.

57. Verifications may be made on behalf of deceased Sub-Class B/Monetary Relief Class Members through representatives of their estates if legally sufficient documentation is provided.  Any claims paid to a deceased Sub-Class B/Monetary Relief Class Member shall be made payable to the estate of the deceased Class Member.

58. The Settlement Administrator shall be available through its toll-free line and via e-mail through the website it will establish to provide information on the Settlement and respond to requests from Sub-Class B/Monetary Relief Class Members for assistance in completing the verification process.

59. The Settlement Administrator will keep written records of all Sub-Class B/Monetary Relief Class Members who complete the verification process which shall include the manner and the date on which each verification was made or received.  All telephonic and online

verifications must be completed within ten (10) days of the deadline for completing the verification process that is provided in the Notice of Class Action Settlement.

60. The Settlement Administrator shall provide Class Counsel and Counsel for BAE with a weekly report showing the number of Verification Forms and Exclusion Statements received.

61. The Settlement Administrator shall retain copies of all written requests for Verification Forms and all records of oral or e-mail requests for Verification Forms until such time as it has completed its duties and responsibilities under this Settlement Agreement.

E. **Resolution of Verification Disputes**

62. Each Verification Form shall list: (i) the time period during the Settlement Class Period that the Company's records show that the Class Member worked in a Bargaining Unit Position; and (ii) the Sub-Class B/Monetary Relief Class Member's total number of years employed in a Bargaining Unit Position during the Settlement Class Period. If a Class Member who receives a Verification Form wishes to dispute the time period(s) listed on the Verification Form and/or her total number of Years in a Bargaining Unit position, she may notify the Settlement Administrator and produce evidence to the Settlement Administrator indicating the dates and/or number of years she contends she worked in a Bargaining Unit Position during the Settlement Class Period. The Company shall review its records and provide information to the Settlement Administrator in response to any such disputed verifications. The Company's records shall be presumed to be accurate. The Settlement Administrator shall evaluate the evidence submitted by the Sub-Class B/Monetary Relief Class Member and make the final decision as to which dates and/or number of years employed in each Bargaining Unit Position should be applied. The determination by the Settlement Administrator shall be final and non-appealable.

63. The dispute resolution procedure described in the preceding Paragraph shall also apply in cases, if any, in which a person believes that she was wrongly excluded from the list of Proposed Settlement Class Members described in Paragraph 48.

**F.** **Requests for Exclusion by Sub-Class B/Monetary Relief Class Members**

64. Proposed Sub-Class B/Monetary Relief Class Members who wish to exclude themselves from ("opt out" of) the monetary relief portion of the Settlement and the Release of Claims in Paragraph 104 must submit to the Settlement Administrator a written, signed, dated "Exclusion Statement," in the form substantively like Exhibit 3 attached hereto, subject to Court approval, by no later than fifty (50) days after the date that the Settlement Administrator first mails the Notice Packets.

65. Exclusion Statements must be made in writing and contain the name, address, and telephone number of the person requesting exclusion. To be valid, an Exclusion Statement must be personally signed by the proposed Sub-Class B/Monetary Relief Class member who seeks to opt out or the authorized representative of her estate (if the Class member is deceased). No opt-out request may be made on behalf of a group of proposed Sub-Class B/Monetary Relief Class members or on behalf of Proposed Class Members who are not members of the proposed Sub-Class B/Monetary Relief Class.

66. An Exclusion Statement must contain the statements described in the Notice of Class Action Settlement and must be submitted to the Settlement Administrator via U.S. Mail or courier so that it is postmarked (or received) within fifty (50) days after the date that Settlement Administrator initially mails the Notice Packets.

67. Named Plaintiffs may not submit an Exclusion Statement.

68. A Sub-Class B/Monetary Relief Class Member who does not complete and submit a timely Exclusion Statement in the manner and by the deadline specified above shall, upon Final Approval of the Settlement, be bound by all terms and conditions of the Settlement, regardless of whether she completes the Verification process described in Paragraphs 50-57. A Sub-Class B/Monetary Relief Member who timely submits an Exclusion Statement shall not participate in, or be bound by, the monetary relief portion of the Settlement in any respect. Persons who submit an Exclusion Statement shall not be permitted to file objections to the Settlement or appear at the Final Fairness Hearing to voice any objections to the Settlement.

69. The Settlement Administrator shall date stamp the original of any Exclusion Statement and serve copies on both the Company's counsel and Class Counsel within two (2) business days of receipt of such statement.  Class Counsel shall file with the Court all timely and valid Exclusion Statements no later than five (5) calendar days prior to the date of the Final Fairness Hearing.  The Settlement Administrator shall retain original copies of all Exclusion Statements until such time as it has completed its duties and responsibilities under this Settlement Agreement.

70. If a Sub-Class B/Monetary Relief Class Member completes and submits both a Verification Form and an Exclusion Statement, the Settlement Administrator shall contact the Sub-Class B/Monetary Relief Class Member to obtain clarification of the Class Member's intent.  In the event that the Settlement Administrator is unable to obtain clarification of the Sub-Class B/Monetary Relief Class Member's intent by the time of the Final Fairness Hearing, it shall be presumed that the Verification Form controls, and such Sub-Class B/Monetary Relief Member shall remain a member of the Class, be paid a settlement payment pursuant to the Verification Form, and be bound by the terms of the Settlement.

71. Eligible Sub-Class B/Monetary Relief Class Members who neither complete the verification process set forth in Paragraphs 50-57 nor submit a valid and timely Exclusion Statement shall be bound by all of the terms of the Settlement and the Release of Claims set forth herein but shall receive no monetary payment under this Settlement.

**G. Rescission of Sub-Class B/Monetary Relief Class Member Exclusion Statements**

72. The Parties recognize that some Sub-Class B/Monetary Relief Class Members who initially submit an Exclusion Statement may, upon further reflection, wish to withdraw or rescind such Exclusion Statement.  The Parties agree that Sub-Class B/Monetary Relief Class Members shall be permitted to withdraw or rescind their Exclusion Statements by submitting a "Rescission of Exclusion Statement" to the Settlement Administrator.  The Rescission of Exclusion Statement shall include language similar to the following:

> I PREVIOUSLY SUBMITTED A STATEMENT SEEKING EXCLUSION FROM
> THE CLASS SETTLEMENT.  I HAVE RECONSIDERED AND WISH TO
> WITHDRAW MY REQUEST FOR EXCLUSION.  I UNDERSTAND THAT BY
> RESCINDING MY REQUEST FOR EXCLUSION, I MAY BE ELIGIBLE TO
> RECEIVE AN AWARD FROM THE SETTLEMENT FUND AND MAY NOT
> BRING A SEPARATE LEGAL ACTION AGAINST BAE SYSTEMS OR THE
> RELEASED PARTIES SEEKING DAMAGES OR OTHER INDIVIDUAL
> RELIEF.

73. A Sub-Class B/Monetary Relief Class Member submitting such a Rescission of Exclusion Statement shall sign and date the Statement and cause it to be delivered, along with a Verification Form, to the Settlement Administrator no later than sixty (60) days after the Settlement Administrator initially mails the Notice Packets.  The Settlement Administrator shall date-stamp the original of any Rescission of Exclusion Statement and serve copies on Counsel for the Company and Class Counsel no later than (2) business days after receipt thereof.  Class Counsel shall file all timely and valid Exclusion Statements with the Clerk of the Court no later than five (5) calendar days prior to the date of the Final Fairness Hearing.  The Settlement Administrator shall retain the original copies of all Rescissions of Exclusion Statements until such time as the Settlement Administrator is relieved of its duties and responsibilities under this Settlement Agreement.

### H. Allocation and Distribution of Individual Back Pay Awards to Participating Sub-Class B/Monetary Relief Class Members

74. Individual Settlement Shares payable from the Settlement Fund Account to Participating Sub-Class B/Monetary Relief Class Members will be allocated in settlement of their claims for back pay or lost wages ("back pay awards") and are subject to all applicable tax withholdings.

75. The disbursement of individual Settlement Shares to eligible Participating Sub-Class B/Monetary Relief Class Members shall follow the allocation plan described below in Paragraph 76 of this Agreement.

76. Payments made to Participating Sub-Class B/Monetary Relief Class Members under this Agreement are not intended to and will not: (1) form the basis for additional contributions to, benefits under, or any other monetary entitlement under; or (2) be considered to apply to, or be applied for purposes of, any of the Company's pension, 401(k) and/or other retirement, savings or benefit plans.

(a)     The $3,000,000 Class Monetary Relief (which includes the employer's share of federal and state payroll taxes and any additional monies, or less any deductions pursuant to Paragraphs 82(b) and 105 of this Agreement) will be allocated to and apportioned among the Class Representatives and Participating Sub-Class B/Monetary Relief Class Members (who do not opt out of the Settlement) as follows:  Eligible Sub-Class B/Monetary Relief Class Members who worked in a Bargaining Unit Position during the period October 5, 2007 to September 30, 2010 (and not during the period October 1, 2010 to December 31, 2014) ("The First Charge Group"), will receive a five thousand dollar ($5,000) Settlement Share, less applicable payroll tax withholdings and deductions. These individuals will not receive any additional settlement distribution as described in Paragraph 76(b) below.

(b)     After subtracting the $5,000 payments described in Paragraph 76(a), including Employer Payroll Taxes on such payments, the payment to the Settlement Administrator as described in paragraph 105, and the Service Payments to Former Named Plaintiffs as described in paragraph 82(b), the remaining portion of the Settlement Fund will be divided among Eligible Sub-Class B/Monetary Relief Class Members who worked at all during the period from October 1, 2010 to December 31, 2014 ("The Second Charge Group") as follows:

(i)     Each eligible member of The Second Charge Group shall receive five thousand dollars ($5,000), less applicable payroll tax withholdings and deductions.

27

(ii)    Each eligible woman in the Second Charge Group shall receive a pro-rated portion of ten thousand dollars ($10,000) based on the fraction of the period October 1, 2010 to December 31, 2014 that she was employed (less applicable payroll tax withholdings and deductions).

(iii)    Each eligible woman in the Second Charge Group who also worked during the period October 1, 1990 through September 30, 2010, shall receive a pro-rated portion of fifteen thousand dollars ($15,000), based on the fraction of this period they were employed (less applicable payroll tax withholdings and deductions).

(iv)    The $5,000, $10,000 and $15,000 amounts in (i), (ii), and (iii) above are subject to the amount remaining in the Settlement Fund Account after distribution of the $5,000 payments described in Paragraph 76(a), including Employer Payroll Taxes on such payments, the payment to the Settlement Administrator as described in paragraph 105, and the Service Payments to Former Named Plaintiffs as described in paragraph 82(b).  To the extent the amount remaining in the Settlement Fund Account after such distributions is insufficient to make the distributions described in Subparagraphs (i), (ii) and (iii), the Settlement Administrator shall make necessary adjustments to reflect the decreased distributions.  Likewise, if the amount remaining in the Settlement Fund Account after the distributions described in Paragraphs 76(a), 105 and 82(b) will not be entirely distributed using the amounts in Subparagraphs (i), (ii) and (iii), the Settlement Administrator shall adjust these amounts until the gross distributions pursuant to Subparagraphs (i), (ii) and (iii) exhaust the remaining Settlement Fund Account.  Class counsel will provide a formula to Counsel for the Company and the Settlement Administrator.

(c)    All final determinations of the Settlement Administrator shall be binding and non-appealable.

(d)    The Settlement Administrator shall keep its determinations of Settlement Share payments confidential and shall not disclose the identities of Participating Sub-Class B/Monetary Relief Class Members or the value of their individual Settlement Shares except as provided under this Settlement Agreement.

77. The Settlement Administrator will be responsible for calculating and withholding all required state and federal taxes and for all tax reporting on payments made under the Settlement. The Settlement Administrator will report all payments for back pay to Participating Sub-Class B/Monetary Relief Class Members as settlement of claims for wages and shall issue and mail to Participating Sub-Class B/Monetary Relief Class Members IRS Forms W-2 for the amounts from the Qualified Settlement Fund reportable on each Form. The Settlement Administrator shall withhold from each Participating Sub-Class B/Monetary Relief Class Member's back pay award both the employee's and the employer's share of applicable income and payroll taxes under federal, state, and/or local laws, and shall be responsible for remitting all monies withheld to the appropriate taxing authorities. No later than fifteen (15) days before the Final Fairness Hearing, the Settlement Administrator shall provide Class Counsel and Counsel for Defendant with a list of the names and social security numbers of all Participating Sub-Class B/Monetary Relief Class Members to whom an individual Settlement Share payment is due and the amount of backpay each Participating Sub-Class B/Monetary Relief Class Member is to be paid under Paragraph 76 of this Agreement.

78. No later than twenty-five (25) calendar days after the Effective Date, the Settlement Administrator shall send the individual Settlement Share payments to the Participating Sub-Class B/Monetary Relief Class Members via first class mail with return receipt requested, and shall make the payments due to the federal, state and local taxing authorities. The Settlement Administrator shall issue the checks in the name of the Participating Sub-Class B/Monetary Relief Class Members or their estates, if applicable. The Settlement Administrator shall include with each check a statement showing the gross amount of the payment and an itemized statement of all withholdings and deductions, including those for federal and state income taxes, the employee's share of unemployment, Social Security and Medicare tax, and any local income or payroll tax that applies.

79. If a Participating Sub-Class B/Monetary Relief Class Member's check is returned to the Settlement Administrator, the Settlement Administrator shall make a reasonable effort to re-

29

mail it to the Participating Sub-Class B/Monetary Relief Class Member at her correct address. It is expressly understood and agreed that the checks for the individual Settlement Share payments for backpay shall become void if not cashed within ninety (90) days after the initial mailing, and in such an eventuality, the payee-Participating Sub-Class B/Monetary Relief Class Member's claim to any proceeds of the Class Monetary Relief shall expire at that time.

    I.   **Cy Pres Donation of Undistributed Funds and Final Accounting**

       80. The Parties intend to completely distribute the funds in the Settlement Fund Account to the maximum extent feasible. However, if, on the one hundredth and twentieth (120th) day following the last date that a Settlement Share payment check is mailed, the Settlement Administrator has accounted for and deducted all of its fees and expenses, and there are funds remaining in the Settlement Fund Account due to uncashed checks, unspent settlement administration fees, and/or accrued interest on such amounts, then the Settlement Administrator shall issue two checks, each in the amount of half the total amount remaining in the Settlement Fund Account, which shall be donated to two charitable organizations, the National Center for Women's Employment Equity of the non-profit organization, Wider Opportunities for Women (www.wowonline.org) and the Southside Boys and Girls Club of Norfolk, Virginia.

       81. Within thirty (30) calendar days of the final distribution of all monies from the Settlement Fund Account, the Settlement Administrator shall furnish an accounting of all distributions from the Settlement Fund Account to Class Counsel, with copies to Counsel for the Company.

    J.   **Service Payments to Named Plaintiffs and Former Named Plaintiffs**

       82. The Parties agree that Plaintiffs will seek, and Defendants will not oppose Court approval for the payment of service payments to the Named Plaintiffs and the Former Named Plaintiffs for the time and energy that they have devoted to and the risk they have incurred in litigating this lawsuit and in exchange for executing a General Release of Claims in the form attached as Exhibit 4, provided that the Former Named Plaintiffs do not opt out of (exclude themselves from) the Settlement. All individuals receiving payments under these paragraphs who

are also Sub-Class B/Monetary Relief Class members, as defined above, are eligible to receive a backpay award pursuant to Paragraph 76, in addition to their service payments.

    (a)    *Class Representatives' Service Payments.*  Subject to Court approval, the Company will pay One Hundred and Twenty Thousand Dollars ($120,000) to each of the four Named Plaintiffs (for a total maximum amount of $480,000), or such lesser amounts which may be approved by the Court, to compensate each individual Named Plaintiff for compensatory damages and for their dedicated service in litigating this matter and bringing about this Settlement ("Class Representatives' Service Payments"). The Company will pay these Class Representative Service Payments, or the lesser amounts approved by the Court, in addition to the Class Monetary Relief amount. The Class Representatives' Service Payments will paid by the Company directly to the Named Plaintiffs (via Class Counsel) and will not be deducted from the Settlement Fund.

    (i)    The Parties agree that a reduction by the Court in the amount of Class Representative Service Payments is not a basis for revocation or withdrawal from the Settlement Agreement by any Party, and shall not render the entire Settlement voidable or unenforceable.

    (ii)    No later than fifteen (15) calendar days after the Effective Date, the Company shall make the Class Representative Service Payments in the amounts approved by the Court to each of the Named Plaintiffs, without any withholdings or deductions, and shall issue IRS Forms 1099-MISC to Named Plaintiffs reflecting these payments.

    (b)    *Former Named Plaintiff Service Payments.*  Subject to Court approval, service payments in the amounts described in subparagraphs (i) and (ii) shall be made to the Former Named Plaintiffs for their dedicated service in bringing this matter to litigation and contributing to the efforts that led to this and in exchange for their execution of a General Release of Claims as described in Paragraph 104(d) ("Former Named Plaintiff Service Payments"). The Settlement Administrator shall deduct the total sum of the Former Named Plaintiff Service Payments approved by the Court from the Settlement Fund Account prior to calculating the

31

allocation of individual backpay awards to Sub-Class B/Monetary Relief Class Members in accordance with Paragraph 76 of this Settlement.

(i)     Former Named Plaintiffs Ann Marie Cutrell, Alfreda Dupree and Sheila Fields each shall receive a Former Named Plaintiff Service Payment in the amount of ten thousand dollars ($10,000).

(ii)    Former Named Plaintiffs Kimberly Davis and Rita Hobbs each shall receive a Former Named Plaintiff Service Payment in the amount of twenty thousand dollars ($20,000).

(iii)   No later than fifteen (15) calendar days after the Effective Date, the Settlement Administrator shall issue and mail the Former Named Plaintiff Service Payments to the Former Named Plaintiffs, provided the Former Named Plaintiffs have executed a General Release of Claims substantially in the form of Exhibit 5.  However, the Former Named Plaintiff Service Payments shall not be treated as lost wages and therefore will be reported on an IRS Form 1099 and not subject to withholdings or deductions for payroll and income taxes.  The Settlement Administrator shall issue and mail to each Former Named Plaintiff an IRS Form 1099-MISC for the amount of her individual service payment that is reportable on such Form.

(iv)    If the Court awards service payments to the Former Named Plaintiffs in amounts less than the amount reported above, the difference will not revert to the Company but instead remain in the Settlement Fund Account to be allocated and distributed to Participating Sub-Class B/Monetary Relief Class Members in accordance with the formula and procedures set forth in Paragraph 76.

### K. Class Counsel's Attorneys' Fees and Costs

83. Pursuant to Fed. R. Civ. P. 23(h), Plaintiffs and Class Counsel, in connection with seeking Court approval of the Settlement, shall apply for reasonable attorneys' fees and expenses incurred by Class Counsel, including the fees and expenses in connection with overseeing the notice and settlement administration process and monitoring the implementation of this Settlement Agreement.

32

84. Defendants will not object to or oppose a motion for attorneys' fees by Class Counsel of up to One Million Dollars ($1,000,000.00).  Defendants will not object to or oppose a motion for costs and expenses by Class Counsel up to One Hundred Twenty-Five Thousand Dollars ($125,000.00) or such other lower amounts as ordered by the Court.  These amounts are intended to compensate Class Counsel for all work performed in this Action to investigate, prepare, litigate and settle this Action, as well as all work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, monitoring Defendants' performance under the Settlement Agreement, and obtaining dismissal of the Action.

85. Class Counsel will file with the Court their motion for an award of reasonable attorneys' fees and expenses consistent with this Agreement no later than ten (10) calendar days prior to the Final Fairness Hearing and at least ten (10) calendar days prior to the deadline for eligible Class Members to submit any written objections to the Settlement to the Court.  Upon filing, the motion shall be posted on the website established by the Settlement Administrator designed to provide information and communications with Class Members as provided in Paragraph 48(b) in order to permit eligible Class Members to timely object to Class Counsel's application for attorneys' fees and costs.

86. In the event that the Court approves an award of attorneys' fees to Class Counsel in an amount less than One Million Dollars ($1,000,000), or approves an award of expenses to Class Counsel in an amount of less than One Hundred and Twenty-Five Thousand Dollars ($125,000), then the lesser amounts shall be paid by the Company.

87. The Parties agree that a reduction by the Court in the attorneys' fees and/or costs awarded Class Counsel is not a basis for rendering the entire Settlement voidable or unenforceable.  Class Counsel agree to give written notification within fifteen (15) calendar days of approval by the Court if they will appeal a reduction in fees and/or costs awarded.  An appeal of a reduction in the amount of attorneys' fees and/or costs awarded to Class Counsel will not affect the Effective Date of the Settlement pursuant to Paragraph 14.

88. Within fifteen (15) calendar days after the Effective Date unless Class Counsel appeals a reduction in attorneys' fees and/or costs ordered by the Court, Class Counsel will provide Counsel for Defendants with Taxpayer Identification Number(s) for Class Counsel and executed IRS Form(s) W-9. If Class Counsel files a timely appeal of the attorneys' fees and/or costs ordered by the Court, Class Counsel will provide Counsel for Defendants with Taxpayer Identification Number(s) for Class Counsel and executed IRS Form(s) W-9 within fifteen (15) calendar days after the last date on which an order setting the amount of attorneys' fees and costs may timely be appealed and no timely appeal is filed. Within five (5) business days after the deadline for Class Counsel to provide the Company with Class Counsel's W-9 form(s) pursuant to the timeframe described earlier in this Paragraph (and only after the Company has received Class Counsel's W-9 form(s)), the Company shall submit to Class Counsel the amount of attorneys' fees and costs awarded, up to a maximum of One Million Dollars ($1,000,000.00) in fees and One Hundred and Twenty-five Thousand Dollars ($125,000) in costs, and issue Class Counsel an IRS Form 1099-MISC to reflect the fees payment.  Class Counsel agree that any allocation of fees or costs between or among Class Counsel shall be the sole responsibility of Class Counsel. At the request of Class Counsel, BAE will issues separate checks for fees to Law Offices of Joshua Friedman and ERA, and separate IRS Forms 1099.

### L.   **Dispute Resolution Provisions**

89. The Parties are committed to working cooperatively to resolve disputes under the Agreement.  In the event that any dispute arises under the Agreement, counsel for the Party alleging the violation will give notice in writing to counsel for the other Party or Parties, specifically identifying the alleged violation.  The responding Party will have thirty (30) days in which to investigate and respond to the allegation.  Thereafter, the Parties will have a period of thirty (30) days, or such additional period as may be agreed upon by them, in which to negotiate and confer regarding informal resolution of such allegation.

## M. **Duties of the Parties Prior to Court Approval**

90. Promptly upon the execution of this Settlement Agreement, Class Counsel shall apply to the Court for the entry of an Order granting preliminary approval of the Settlement ("Preliminary Approval Order"):

(a)      Preliminarily approving the Settlement Agreement, as well as the payment of Class Monetary Relief and Service Payments described in this Agreement;

(b)      Certifying the Settlement Class, as well as Sub-Class A/Injunctive Relief Class and Sub-Class B/Monetary Relief Class;

(c)      Scheduling a Final Fairness Hearing as soon as practicable on the question whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Settlement Class;

(d)      Approving as to form and content the proposed Notice of Class Action Settlement;

(e)      Approving as to form and content the proposed Verification Form, Exclusion Statement, and instructions for Sub-Class B/Monetary Relief Class Members;

(f)      Directing the mailing of the Notice to Sub-Class B/Monetary Relief Class Members and the mailing of Notice Packets containing the Notice of Class Action Settlement, the Verification Form, and the Exclusion Statement form by first-class mail to the Sub-Class B/ Monetary Relief Class Members;

(g)      Appointing the Law Offices of Joshua Friedman PC and Equal Rights Advocates as Class Counsel;

(h)      Approving Janet Aviles, Jamieka Brown, Stephanie Jackson and Kel Sharpe as Class Representatives; and

(i)      Appointing Settlement Services, Inc. as the Settlement Administrator.

(j)      In applying for the entry of the Preliminary Approval Order, Class Counsel and Counsel for Defendants will jointly submit to the Court for its approval this Settlement Agreement, exhibits, and supporting papers, which shall describe the terms of this Settlement and

will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

91. In computing any period of time prescribed or allowed by this Settlement Agreement, unless otherwise noted, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a).

### N. <u>Objections to the Settlement</u>

92. Proposed Settlement Class Members who wish to object to the Settlement must submit objections in writing, and must include a detailed description of the grounds for any objection. Objections must also include a statement indicating whether the Proposed Settlement Class Member intends to appear and object to the Settlement at the Final Fairness Hearing.

93. Objections must be filed with the Court, with copies served on the Settlement Administrator, Class Counsel, and Counsel for Defendants, no later than fifty (50) calendar days after the date that the Settlement Administrator first mails the Notice Packets.

94. Proposed Settlement Class Members who fail to make objections in the manner and by the deadline specified above shall be deemed to have waived all objections and shall be foreclosed from making any objection to the Settlement, whether by appeal or otherwise, absent a contrary order of the Court.

95. The same requirements, procedures, and deadlines apply to any Proposed Settlement Class Members who wish to object to Class Counsel's application for attorneys' fees and costs.

96. No one may appear at the Final Fairness Hearing for the purpose of objecting to the Settlement or to Class Counsel's application for attorneys' fees and costs without first having filed and served her written objections within fifty (50) days after the Notice was mailed to proposed Sub-Class B/Monetary Relief Class members.

### O. <u>BAE's Right of Revocation</u>

97. If eighty (80) percent or more of the Sub-Class B/Monetary Relief Class Members submit timely and valid Exclusion Statements, Defendants shall have the right to rescind the

36

Settlement and all actions taken in its furtherance will be null and void. Defendants must exercise this right within ten (10) business days after the Settlement Administrator notifies the Parties of the final number of timely, valid Exclusion Statements received, which the Settlement Administrator shall do within ten (10) calendar days after the deadline for submission of the Exclusion Statements.

**P. Duties of the Parties in Connection with Final Approval**

98. In connection with the Final Approval by the Court of the Settlement Agreement, Class Counsel shall file with the Court, and Defendants shall not oppose, a motion for final approval of the Settlement and a memorandum in support of their motion. The motion shall be filed no later than ten (10) calendar days before the Final Fairness Hearing. Class Counsel shall prepare the motion for final approval and provide Defendants' Counsel the opportunity to review and comment on the motion before it is filed.

99. At the time that the motion for final approval of the Settlement is filed, Class Counsel shall provide the Court with a declaration executed by the Settlement Administrator, specifying the due diligence the Settlement Administrator has undertaken with regard to the mailing of the Notice; verifying its settlement administration costs; and reporting on the number of timely Verifications, disputes (and status), and Exclusion Statements submitted.

100. Not later than five (5) court days before the Final Fairness Hearing, the Parties may file, jointly or separately, a reply in support of the motion for final approval of the Settlement, in the event any objection to the Settlement has been filed. Likewise, Class Counsel may file a supplemental memorandum in support of their application for an award of attorneys' fees and costs in the event that any objection to their application for fees and costs has been filed.

101. At or before the Final Fairness Hearing, the parties shall submit a proposed final order and judgment for the Court's entry in accordance with the terms of the Settlement.

102. In connection with filing the motion for final approval of the Settlement, Class Counsel and Defendants will jointly submit a proposed final order and judgment:

(a) Granting final approval to the Settlement Agreement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing implementation of its terms and provisions;

(b) Approving Class Counsel's application for an award of attorneys' fees and expenses;

(c) Dismissing the Action with prejudice and permanently barring all Named Plaintiffs, Former Named Plaintiffs and Participating Sub-Class B/Monetary Relief Class Members from prosecuting against the Released Parties any of the Released Claims as defined in Paragraph 104 below.

103. After entry of the Judgment, the Court will have continuing jurisdiction over the Action and the Settlement during the Term of this Agreement solely for purposes of enforcing the Settlement, addressing settlement administration matters, and addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

## Q. **Release of Claims**

104. <u>Claims Released by Named Plaintiffs, Former Named Plaintiffs and Participating Sub-Class B/Monetary Relief Class Members</u>:

(a) The Named Plaintiffs and Former Named Plaintiffs hereby release and discharge all known and unknown "Released Claims" against the "Released Parties" that existed or may have existed as of the date of execution of this Agreement. Upon the Court's final approval of the Settlement, and except as to such rights or claims as may be created by the Settlement, the Participating Sub-Class B/Monetary Relief Class Members hereby release and discharge all known and unknown "Released Claims" against the "Released Parties."

(b) The "Released Parties" are: (i) the Defendants, (ii) all of their former and present parents, subsidiaries, and affiliates, and (iii) the current and former officers, directors, employees, partners, shareholders, agents, insurers, predecessors, successors, assigns, and legal representatives of all entities and individuals listed in (i) and (ii).

38

(c)     The "Released Claims" are any and all claims that are asserted in or could

have been asserted in Plaintiffs' First Amended Complaint, to the fullest extent permitted by law

through the date of the Judgment approving the Settlement, including those based on, arising from

or related to: (i) allegations of discrimination against female bargaining unit employees based on

gender and/or sex with respect to promotions, assignments, compensation, initial placement,

selection, overtime, and other terms and conditions of employment; (ii) allegations of sexual

harassment; and/or (iii) allegations of retaliation against female bargaining unit employees for

opposition to discrimination or harassment based on gender or sex.  The Released Claims include

claims for damages and equitable relief of every nature, including but not limited to back pay,

front pay, reinstatement, instatement, benefits, emotional distress and other compensatory

damages, liquidated damages, penalties, interest, and punitive damages.  The Released Claims

may have arisen under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and all other

federal, state, and local laws.

(d)     In addition to the Released Claims described in sub-paragraph (c) above,

the Named Plaintiffs and Former Named Plaintiffs will also execute a separate general release of

all claims that may be released by law that existed or may have existed as of the date of execution

of this Agreement by the Named Plaintiffs.  The separate general release becomes effective after

Final Approval of the Settlement.  As consideration for this separate general release of all claims,

Named Plaintiffs and Former Named Plaintiffs will receive additional consideration in the form of

Class Representative Service Payments and Former Named Plaintiff Service Payments,

respectively, in the amounts approved by the Court, as described in Paragraphs 82(a) and 82(b),

and separate and apart from the payment of individual Settlement Shares, as set forth in Paragraph

76, above.

**R.  Payment to the Settlement Administrator**

105.     The Settlement Administrator has estimated that the costs and expenses of

administering the Settlement pursuant to the terms of this Agreement are approximately $15,000.

To the extent that the costs and expenses exceed this amount, the Settlement Administrator will

39

provide reasonable notice and explanation to the Parties. Any additional costs and expenses will also be paid out of the Settlement Fund Account.

**S. Additional Provisions**

106.     If the Court does not grant final approval of the Settlement, or if the Court's final approval of the Settlement is reversed or materially modified on appellate review, then this Settlement will become null and void, and the parties shall retain the claims and defenses otherwise waived in the settlement.  In such case, the Settlement shall not be used or be admissible in any subsequent proceedings, either in this Court or in any other Court or forum.

107.     The respective signatories to the Settlement represent that they are fully authorized to enter into this Settlement and bind the respective Parties and the Proposed Settlement Class Members to its terms and conditions.

108.     The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of the Settlement.

109.     If Class Counsel initiates any direct contact with any public media, i.e., traditional television or print media, or electronic media, or issues an informational statement on their web sites, their communications will be positive in nature, and any description of the claims will be limited to a general description of the types of claims alleged.  In responding to any inquiries from the public media concerning this Settlement or its terms, Class Counsel may make statements within the same contours as what is set forth in this Paragraph 109, and will also respond that "the matter has been settled to the satisfaction of all Parties."  Nothing in this Paragraph shall limit the parties from making such public disclosures about the Action and Settlement as any applicable laws require.  All Parties agree to support the Settlement and agree

that it was the product of extensive litigation, arms-length negotiations, expert analysis, discovery and investigation, and that the Settlement resolved numerous contested facts and legal issues.

110.     The Parties agree that they will not discourage Sub-Class B/Monetary Relief Class Members from submitting Verification Forms or encourage or solicit Sub-Class B/Monetary Relief Class Members to submit Exclusion Statements or to file objections to the Settlement.

111.     The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

112.     Nothing contained in this Settlement shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants.  All of the Parties entered into this Settlement with the intent to avoid further disputes and litigation, and the attendant inconvenience and expense.  This Settlement shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

113.     In the event that one or more of the Parties institute any legal action or arbitration (not including the dispute resolution process described in Paragraph 89 against any other Party or Parties to enforce the provisions of this Settlement, or to declare rights and/or obligations under this Settlement, the successful Party or Parties shall be entitled to seek an order providing that the unsuccessful Party or Parties pay the successful Party or Parties' reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions, on the basis that the enforcement action is objectively frivolous, unreasonable, or without foundation.

114.     Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing, via email, addressed as follows:

       <u>To the Class:</u>      Joshua Friedman at josh@joshuafriedmanesq.com

                                 Jennifer Reisch at jreisch@equalrights.org

<u>To Defendants:</u>       Barbara B. Brown at barbarabrown@paulhastings.com

Carson H. Sullivan at carsonsullivan@paulhasings.com

115.     The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or her or its Counsel participated in its drafting.

116.     Paragraph titles or captions contained in this Agreement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision.

117.     This Agreement may not be changed, altered, or modified, except in a subsequent writing signed by the Parties, and approved by the Court.

118.     Except for the separate general release of all claims to be executed by the Named Plaintiffs and Former Named Plaintiffs, this Agreement contains the entire agreement between the Parties relating to the resolution of the Action.  All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement.  No rights under this Agreement may be waived except in writing.

119.     This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

120.     The Notice of Class Action Settlement, Exhibit 1 to this Agreement, shall advise all Participating Sub-Class B/Monetary Relief Class Members of the binding nature of the Release of Claims set forth herein.

121.     This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

122.     The Parties agree to waive all appeals from the Court's final approval of this Settlement, unless the Court materially modifies the Settlement Agreement; provided, however, that Class Counsel may appeal any reduction in the attorneys' fee or costs award, and Named Plaintiffs may appeal a reduction in the amounts of class representative service payments. Any reduction in the amounts of class representative service payments or the award of attorney's fees or costs will not constitute a material modification of the Settlement Agreement and will not be grounds to void the Settlement.

123.     Neither Class Counsel nor Counsel for Defendants intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such.

124.     Before the date on which the Named Plaintiffs file their motion for preliminary approval of the Settlement, the Parties and their Counsel shall not initiate any contact with Class Members about the Settlement, except that Class Counsel, if contacted by a Class Member, may respond that a settlement has been reached and that the details shall be communicated in a forthcoming Court-approved notice. This Paragraph does not apply to communications between Class Counsel and the Named Plaintiffs or other individuals with whom they have an attorney-client relationship.

125.     The Term of the Settlement Agreement shall be two (2) years from the Effective Date.

126.     The Settlement Agreement shall be entered as an order of the Court. The Court shall retain jurisdiction during the term of the Settlement Agreement to enforce its provisions and to resolve disputes under the Settlement Agreement.

127.     Class Counsel shall file with the Court a notice of satisfaction of judgment in a form acceptable to Defendants within ten (10) days after the Settlement Administrator submits its final accounting to the parties reflecting that checks were issued and mailed to all Participating Sub-Class B/ Monetary Relief Class Members who submitted timely and valid Verification Forms pursuant to this Settlement.

**EXECUTED BY NAMED PLAINTIFFS AND CLASS REPRESENTATIVES**:

DATED:  May _12_, 2015          By: _____
                                          JANET AVILES

                                By: _____
                                          JAMIEKA BROWN

                                By: _____
                                          STEPHANIE JACKSON

                                By: _____
                                          KEL SHARPE


**EXECUTED ON BEHALF OF DEFENDANTS**:

DATED:  May _19_, 2015          By: _____
                                          MARCIE CORNFIELD
                                ON BEHALF OF BAE NORFOLK SHIP REPAIR, INC.
                                          AND BAE SHIP REPAIR, INC.

44

DATED:  May  18  , 2015

JOSHUA FRIEDMAN
REBECCA HOULDING
LAW OFFICES OF JOSHUA FRIEDMAN PC

By: _____
　　　　JOSHUA FRIEDMAN

JENNIFER A. REISCH
EQUAL RIGHTS ADVOCATES

By: _____
　　　　JENNIFER A. REISCH

Attorneys for Named Plaintiffs and the Proposed Class


DATED:  May  20 , 2015

BARBARA B. BROWN
CARSON H. SULLIVAN
PAUL HASTINGS LLP

By: _____
　　　　BARBARA B. BROWN

Attorneys for Defendants